FILED

FEB 2 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**
333 Constitution Avenue, N.W.
Washington, D.C. 20001

---

Susan E. Johnson
5902 Mt. Eagle Drive, # 1601
Alexandria, Virginia 22303
Phone number: 703-329-8650

     **Plaintiff**

     **v.**

Margaret Spellings, Secretary
U.S. Department of Education
400 Maryland Avenue, S.W.
Washington, D.C. 20202

     **Defendant**

CASE NUMBER   1:06CV00321

JUDGE: Gladys Kessler

DECK TYPE: Employment Discrimination

DATE STAMP: 02/23/2006

**COMPLAINT**

1. <u>Allegation of Jurisdiction.</u> Section 107(a) of the Rehabilitation Act of 1973, as amended (42 U.S.C. §12117(a)), authorizes persons alleging discrimination on the basis of disability in violation of such Act to have the powers, remedies, and procedures available under section 706 of the Civil Rights of 1964, as amended (42 U.S.C. §2000e-5(f)(1)), which authorizes persons whose claims to be aggrieved have been dismissed by the Equal Employment Opportunity Commission (EEOC) to bring civil actions in the appropriate United States district courts. As a Federal employee, Susan E. Johnson's claim was submitted to the EEOC under section 501 of the Rehabilitation Act of 1973, as amended (29 U.S.C. §791 et seq.) which prohibits Federal agencies from

RECEIVED

FEB 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

discriminating in employment against individuals with disabilities. On November 10,

2005, the EEOC dismissed the Plaintiff's appeal in the case of *Susan E. Johnson,*

*Complainant, v. Department of Education, Agency*; and provided the notice required by

the law and regulation that the Plaintiff is entitled to file a civil action in United States

District Court within 90 days of the receipt date of the notice of the Commission's final

decision *(EEOC Appeal No. 01A45737)*. November 15, 2005, was the receipt date of the

EEOC's decision on the appeal. Accordingly, this complaint appealing such decision is

being filed within 90 days of such receipt date.

2. Discrimination Complaint Filed Against Federal Agency by the Plaintiff. On

September 27, 2002, the Plaintiff in this case, Susan E. Johnson, filed a formal complaint

of discrimination with the United States Department of Education (hereinafter referred to

as the "Agency"), charging unlawful employment discrimination and reprisals in

violation of Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791 et

seq. *(Agency Case No. ED-2002-29-00)*.

3. EEOC Consideration of the Plaintiff's Discrimination Complaint and Appeal.

The Plaintiff, Susan E. Johnson, on June 3, 2003, submitted to the Equal Employment

Opportunity Commission (EEOC) a request for a hearing before an EEOC

Administrative Judge *(EEOC OFA Docket No. 01A457370)*. On July 14, 2004, the

EEOC Administrative Judge issued an order, pursuant to the Department's motion for

summary judgment, entering judgment for the Department. On July 27, 2004, the

Department issued its final agency decision accepting the decision of the EEOC

Administrative Judge and dismissed the Complaint. On August 26, 2004, the Plaintiff

Susan E. Johnson filed with the Office of Federal Operations of the Equal Employment

Opportunity Commission an appeal from the final agency decision *(EEOC Appeal No. 01A45737)*. On November 10, 2005, the Equal Employment Opportunity Commission dismissed the appeal, and provided the notice required by law and regulation that the Plaintiff is entitled to file a civil action in United States District Court within 90 days of the receipt date (November 15, 2005) of the notice of the Commission's final decision.

4. <u>The Plaintiff was a qualified employee for her positions at the Department of Education.</u> The Plaintiff was qualified to perform the essential functions of her positions in the Department of Education, including her last GS-11 accountant position. The Plaintiff was employed by the Department of Education in the Office of the Chief Financial Officer (OCFO) from October 18, 1993, until her termination by the Agency on August 6, 2004. She was promoted through the years from a GS-5 grade level to the GS-11 grade level that she held as an accountant at the time of her termination by the Agency. She was qualified to perform the job functions that were essential (whether with or without reasonable accommodations) that her positions otherwise required. She never received less than fully satisfactory job performance ratings.

5. <u>The Plaintiff qualified as an individual with disabilities under section 501 of the Rehabilitation Act.</u> The Plaintiff qualified as a protected individual as an individual with disabilities under the Rehabilitation Act of 1973, as amended, applying the standards of the Americans With Disabilities Act, which apply to the Rehabilitation Act. As described by her long-term psychiatrist with whom she had frequent psychiatric sessions while she was employed at the Department of Education, the Plaintiff has the disabilities of Major Depression (with a history of recurrent episodes of Depression) and Generalized Anxiety Disorder, both of which conditions are chronic. Her Major

Depression and Anxiety Disorder were first diagnosed psychiatrically in her last undergraduate year prior to her college graduation from the University of Connecticut.

6. The Plaintiff's disabilities substantially limited her major life activities. The Plaintiff's recurring Major Depression and chronic Generalized Anxiety Disorder symptoms interfered with her work and social life. Her anxiety symptoms restrict her substantially in her everyday life. Her symptoms have included medication side effects, gastro-intestinal problems (nausea, stomach cramps), and fatigue; and her anxiety symptoms have included difficulty with social interactions, and difficulties going shopping and dining out. These symptoms interfered with her work and with her personal and social life. Her symptoms of social and generalized anxiety have been chronic and her symptoms of depression have been recurring and episodic. Her Anxiety Disorder was resistant to medications and was primarily addressed with psychotherapy.

7. The Agency knew of the Plaintiff's disabilities. The Plaintiff's mental illness disabilities of Major Depression and Anxiety Disorder were known to her Department of Education supervisory officials from the first year of her employment in 1993. Furthermore, they were aware of her frequent appointments with her psychiatrist and her psychotherapist, which required many hours of leave from work. Reasonable accommodations at work were recommended to help her with her chronic anxiety symptoms. Her psychiatrist recommended a flexible work schedule as providing the best situation to help her stay productive.

8. <u>The Plaintiff was discriminated against because of her disabilities when she</u> <u>was denied a career-ladder promotion from GS-11 to GS-12.</u> She was denied the opportunity for promotion because of her disabilities, and because these disabilities necessitated reasonable accommodations involving flexibility and variability in working hours. The Plaintiff held a GS-11 to GS-12 career ladder series position, which was subject to specific provisions in the Department of Education Collective Bargaining Agreement that an employee was entitled to promotion after meeting the time-in-grade requirement (one year from GS-11 to GS-12), if job performance has been fully successful. Plaintiff had received her GS-11 grade level on November 19, 2000, and under the one-year time-in-grade condition became eligible one year later for promotion to GS-12 on November 19, 2001. She presented a written request to her immediate supervisor, Mack Lawrence, for a determination of her promotion rights.

9. <u>The Plaintiff's supervisor ignored her request for career ladder promotion</u> <u>determination.</u> Article 18 of the Collective Bargaining Agreement provides that, if an employee has completed time-in-grade and qualifications requirements for a career ladder promotion, the employee may request a determination from the supervisor as to whether the supervisor is prepared to recommend promotion. The supervisor must inform the employee within thirty calendar days after the employee has requested such determination. If the determination is not to recommend a promotion, the supervisor must promptly communicate to the employee the reasons for non-promotion. The Plaintiff never received a response to her letter for a determination. Treating the Plaintiff differently because of her disabilities, as compared to how other employees in the Agency were treated in compliance with the collective bargaining agreement, constitutes

disparate treatment of an individual with disabilities.

10. **The Plaintiff's supervisor discriminated against the Plaintiff because of her disabilities.** In response to questioning by the Equal Employment Opportunity (EEO) Investigator at the Investigative Hearing in the Department, the Plaintiff's first line supervisor, Mack Lawrence, answered that he had not specifically discussed a career ladder promotion, and what the plaintiff needed to do, during evaluation meetings with the Plaintiff because he was aware of her disability and her sensitivity.

11. **The Plaintiff was aggrieved by her supervisor's discriminatory refusal to approve her promotion to GS-12.** The Plaintiff was deprived of additional pay and benefits that she would have received upon promotion to the GS-12 grade level. She was aggrieved to the extent of the difference in compensation, including pay and benefits, between the compensation that she actually received and the compensation that she would have received based on GS-12 grade level pay rates, from the time she became eligible for the GS-12 career-ladder promotion going forward into the future.

12. **The Plaintiff's supervisor discriminated against her by denying reasonable accommodations for needed flexibility in work hours.** The Plaintiff was denied reasonable accommodations to allow her to work credit hours as replacement for hours when she was unable to work due to symptoms resulting from her recurring Major Depression and chronic Anxiety Disorder. In the earlier years of her employment by the Department, the Plaintiff's reasonable accommodation needs were generally addressed through oral communications dealing with requested leave, flexibility in work hours, and use of credit hours as replacement to make up for missed hours during regular workday hours. Letters from her psychiatrist, regarding the Plaintiff's disabilities and needs for

6

reasonable accommodations, were provided when requested. Before and after Mack Lawrence became the Plaintiff's immediate supervisor in March 2000, he knew that she was an individual with disabilities. Mr. Lawrence's predecessor, Keith Cole, who was the Plaintiff's immediate supervisor from April 1999 through February 2000, set forth in an e-mail message to Mack Lawrence and other managerial staff on February 12, 2000, the applicable arrangements for reasonable accommodations to "make it perfectly clear as to what we have agreed upon for Susan to work credit hours". Because Susan had difficulty staying on a daily routine, consistent schedule, she was authorized to work credit hours when it was possible for her to do so just as long as she had work to do. The agreement was that there was no "requirement that she clock in and out with her team leader or supervisor. This is to accommodate her disability and work being done needs to be measurable and at her grade level just as would be expected of any other employee." Mack Lawrence became her first-line supervisor in March 2000. Within the first month of his taking over supervision of the Plaintiff, he moved to change the reasonable accommodations arrangement of flexible hours for her. The Plaintiff's supervisor arbitrarily changed the previous credit hours arrangement to a new unilaterally-imposed mandated arrangement, which was never agreed to by the Plaintiff and did not afford the Plaintiff the accommodations that she needed to work as many hours as she could do so productively. Because of the variability in the hours when she could work, the imposition by her supervisor of the requirement that she must get his prior permission to use replacement credit hours on each occasion, precluded her from working many productive hours, when and as her condition permitted. Her psychiatrist provided several letters to the Department of Education from 1995 to 2003 concerning her need

7

for flexible hours of work.

13. The Plaintiff was aggrieved by her supervisor's discrimination in refusing to approve the flexibility in work hours which the Plaintiff needed as reasonable accommodations for her disabilities. The discrimination by her supervisor deprived the Plaintiff of compensation for hours of work beyond regular hours that reasonable accommodations for flexible work hours would have enabled her to earn. Such deprivation of compensation consists of loss of pay and of benefits based on pay and of benefits based on hours worked, including earned annual and sick leave credits for a larger number of hours when she could have worked.

14. The Plaintiff was discriminated against, as an individual with disabilities, by her supervisor's refusal to approve 72 hours of leave-without-pay (LWOP). The Plaintiff requested her supervisor Mack Lawrence to provide prior approval of leave-without-pay totaling 72 hours (nine days) for a trip for relaxation and recovery from stress and anxiety that necessarily involved specific reservations and a travel schedule. At such time, she had no remaining leave-with-pay available for her to use, as her earned annual and sick leave balances were depleted -- a circumstance resulting from her supervisor's continuous policy of denial of reasonable accommodations for flexible work hours that could have enabled her to work more hours when she was able to do so, and thereby accumulate earned annual and sick leave credit. She sent requests for her supervisor's approval of her leave-without-pay request on February 28, March 4, and March 12, 2003. The arbitrary refusal to pre-approve the Plaintiff's request for authorization of 72 hours of LWOP constituted disparate treatment of the Plaintiff as compared with many Federal employees who have been authorized LWOP (for a variety of reasons and periods of

8

time) in the exercise of administrative discretion for many years. Disparate treatment of an individual with disabilities is discriminatory.

15.  The Plaintiff was discriminated against, as an individual with disabilities, when she was denied approval of 72 hours of LWOP as a reasonable accommodation. The trip from March 18, 2003, to March 28, 2003, necessarily involved specific reservations and a travel schedule, and was planned for relaxation and recuperation from severe stress and anxiety. Her supervisor discriminated against the Plaintiff by ignoring her request for such reasonable accommodation for her needs as an individual with disabilities. The Agency demanded that the Plaintiff provide medical documentation under the Family and Medical Leave Act (FMLA), as if the Plaintiff has requested leave-without-pay under the FMLA. The Plaintiff never requested leave-without-pay under FMLA. As medical documentation supporting the Plaintiff's reasonable accommodation request, her psychiatrist did provide a letter on March 11, 2003, supporting her plans to obtain leave for the trip for the relief of her symptoms of anxiety. Her supervisor continued to ignore her request for approval of leave-without-pay (LWOP) as a reasonable accommodation. The Agency's action in demanding that she apply for and provide FMLA medical documentation, ignoring her request for the reasonable accommodation, violated the applicable Federal procedures pursuant to law providing that requests for leave without pay under FMLA shall be voluntarily requested by the employee and shall not be presumptively forced upon an individual with disabilities in lieu of providing reasonable accommodations.

9

16. <u>The Plaintiff was aggrieved by the refusal of her supervisor to approve the</u>
<u>72-hour LWOP requested by the Plaintiff because of her Depression and Anxiety</u>
<u>Disorder.</u> The Plaintiff suffered severe mental anguish and trauma, and pain and
suffering, as a result of the discriminatory actions of her supervisor in refusing to give his
pre-approval of her request for leave-without-pay authorization prior to a trip planned for
her recuperation and relief of anxiety.

17. <u>Because of the Plaintiff's EEO complaint and testimony in investigative</u>
<u>hearings, her supervisor retaliated against her in his actions regarding her request for 72</u>
<u>hours of LWOP.</u> Section 503(a) of the Americans With Disabilities Act (ADA) provides:
"(a) Retaliation. No person shall discriminate against any individual because such
individual has opposed any act or practice made unlawful by this Act or because such
individual made a charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under this Act." (ADA Section 503(a),
42 U.S.C. §12203(a)) After receiving her request for 72-hours of LWOP, the Plaintiff's
supervisor Mack Lawrence immediately undertook to retaliate against her because she
had submitted an EEO complaint setting forth charges of discrimination by him against
her as an individual with disabilities, and because she participated in EEO proceedings,
including hearings, investigating such charges. His retaliatory actions started on
March 4, 2003, less than a month after Mr. Lawrence faced the Plaintiff's discrimination
charges at the EEO investigative hearing on February 5, 2003, which was part of the
Agency's internal EEO consideration of the Plaintiff's complaint within the Agency. Mr.
Lawrence enlisted the disciplinary function of the personnel office in sending registered
mail to the Plaintiff's home address while she was sick, demanding medical

10

documentation under the Family and Medical Leave Act (FMLA), but ignoring her request for a reasonable accommodation based on her needs as an individual with disabilities.

18. The Plaintiff was severely damaged by the Agency's retaliatory actions. The personnel disciplinary letter sent to the Plaintiff by her supervisor (working with the personnel office) caused the Plaintiff very severe damage, as she knew that her supervisor was retaliating for the charges that she had made in her EEO complaint and her participation in proceedings on those charges in the investigative hearings that occurred less than a month before this retaliation began. The refusal to ever pre-approve her leave-without-pay (LWOP) request, left her threatened with absence-without-leave (AWOL) adverse action.

19. Agency officials with supervisory and management authority over the Plaintiff retaliated against her by acting to coerce, intimidate, and threaten her into relinquishing her claims and leaving her job as an accountant. Section 503(b) of the Americans With Disabilities Act (ADA) provides: "(b) Interference, Coercion, or Intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act." (ADA Section 503, 42 U.S.C. §12203(b)). Such protected rights include rights under the Rehabilitation Act, because section 501(g) of such Act (29 U.S.C. §791(g)) applies ADA standards to the Rehabilitation Act. The Plaintiff's supervisor, Mack Lawrence, retaliated against the Plaintiff in violation of ADA Section 503 by unlawful actions to

11

coerce, intimidate, threaten, and interfere with the Plaintiff in the exercise of her rights under section 501 of the Rehabilitation Act and with the Plaintiff's pursuit of her rights in proceedings under her EEO anti-discrimination case. These coercive threats attempted to compel the Plaintiff to apply for disability retirement under the Federal Employees Retirement System (although she still desired to continue her employment status as an accountant in the Agency), or else to find lateral or lower-level employment in another job or to accept demotion to a lower grade level than her existing grade level at that time, under the threat of the termination of her employment in her position as a GS-11 accountant. Specific retaliatory incidents included a letter to the Plaintiff signed by Mack Lawrence dated March 25, 2004, following a series of escalating retaliatory threats and actions set forth in Mr. Lawrence's letters dated January 16, 2004, and March 3, 2004. Charges of retaliation regarding these incidents were timely filed by the Plaintiff with the EEOC Administrative Law Judge where the case had been pending for some time.

20. Agency officials having supervisory, executive, management, and personnel responsibilities participated jointly in undermining the Plaintiff's pursuit of remedies under the law. Agency officials approving and joining in the retaliatory actions of Mack Lawrence, who was the immediate supervisor over the Plaintiff, included Terry Bowie, who as the immediate supervisor of Mack Lawrence was the second-level supervisor of the Plaintiff; Mark Carney, who was the Deputy Chief of the Office of the Chief Financial Officer (OCFO); Jack Martin, who was the Chief Financial Officer (and head of OCFO); and Geraldine Wright, a management analyst in personnel matters in the executive office of OCFO, who advised and assisted Mr. Lawrence in the preparation of letters to retaliate against the Plaintiff.

12

21. <u>Plaintiff was subjected to a hostile work environment and harassment in the Agency because of her disabilities.</u> The Plaintiff was discriminated against based on disabilities (recurring Major Depression and Anxiety Disorder) and reprisal (prior EEO activity), as she was subjected to a hostile work environment and harassment. The Plaintiff's symptoms of Major Depression and chronic Anxiety Disorder were exacerbated as a result of harassment by her supervisor and other management personnel in the Agency. When the Plaintiff reminded them of her disabilities, her promotion rights, and her needs for reasonable accommodations involving flexible work hours, their responses were to harass her more aggressively. The Plaintiff's psychiatrist and the Plaintiff's certified nurse psychotherapist described the stressful impacts upon the Plaintiff in their statements to the Agency and to the EEOC. The retaliatory incidents set forth in the charges in this complaint continued the pattern of harassment since the Plaintiff initiated proceedings in her anti-discrimination case in the EEO process starting in the Agency.

22. <u>The Agency discriminated against the Plaintiff by terminating her employment because of her disabilities.</u> The Department of Education terminated the Plaintiff from her employment as an accountant, because of the Plaintiff's mental illness disabilities of recurring Major Depression and chronic Anxiety Disorder, pursuant to her supervisor's determination to deny reasonable accommodations that would meet her needs for flexible work hours as a qualified individual with disabilities.

23. <u>The Agency retaliated against the Plaintiff in violation of ADA Section 503(a) by terminating the Plaintiff's employment because of her prior EEO activity.</u> Section 503(a) of the Americans With Disabilities Act (42 U.S.C. §12203(a)) provides

that no person shall discriminate against any individual because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under applicable law protecting individuals with disabilities from discrimination. The Agency's termination of the employment of the plaintiff was the ultimate adverse employment action retaliating against the plaintiff because of the charges that she brought to vindicate her rights as an individual with disabilities.

24. The Plaintiff was aggrieved by the Agency's adverse action terminating her. As a consequence of the Agency's final termination of the Plaintiff's employment on August 6, 2004, her mental illnesses of Major Depression and chronic Anxiety Disorder were exacerbated. Following her termination and while her appeal to EEOC was still pending, she experienced steady deterioration in her depression and anxiety conditions, leading to a life-threatening suicide attempt several months later on January 5, 2005. This attempt was followed by urgent Medivac helicopter transportation to Fairfax Inova Hospital in Virginia, where she was hospitalized on an emergency basis and was in critical condition for a substantial period of time. Traumatic impacts on her mental health have persisted since that time.

25. Relief Requested. The court is requested to provide monetary damages to the Plaintiff, including (but not limited to) general and compensatory damages, for injuries, pain, suffering, mental anguish, and loss of pay and other losses as inflicted on her by violations of section 501 of the Rehabilitation Act (42 U.S.C. §791) and section 503 of the Americans With Disabilities Act of 1990 (42 U.S.C. §12203).

14

26. <u>Demand for Damages.</u>  The Plaintiff demands monetary damages amounting to $2,800,000.  Such damages are demanded in accordance with all applicable provisions of law.

27. <u>Jury Trial Demanded.</u>  The Plaintiff demands trial by jury on all issues in this case.

Respectfully submitted,


*Susan E. Johnson*

Susan E. Johnson, Plaintiff
5902 Mt. Eagle Drive, # 1601
Alexandria, Virginia 22303
Phone number: 703-329-8650




Respectively submitted,


*Richard E. Johnson*

Richard E. Johnson
District of Columbia Bar Member No. 86686
3522 Majestic Lane
Bowie, Maryland 20715-1604
Phone and fax number: 301-262-9658
E-mail: richard-johnson@verizon.net

Counsel for the Plaintiff (pro bono without compensation)

*16*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### 333 Constitution Avenue, N.W.
### Washington, D.C. 20001

## CERTIFICATE OF REPRESENTATION AS COUNSEL FOR PLAINTIFF
## PRO BONO WITHOUT COMPENSATION

This is to certify that I, Richard E. Johnson, am an attorney in good standing of the District of Columbia Bar, and that I am providing representation pro bono without compensation to Susan E. Johnson, the Plaintiff in the United States District Court for the District of Columbia, in the civil action in the case of *Susan E. Johnson, Plaintiff, v. Margaret Spellings, Secretary, U.S. Department of Education,* filed on February 13, 2006.

I am providing such representation pursuant to Rule LCvR 83.2g of the Local Civil Rules of the United States District Court for the District of Columbia.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 13, 2006.

Richard E. Johnson
District of Columbia Bar Member No. 86686
3522 Majestic Lane
Bowie, Maryland 20715-1604
Phone and fax number: 301-262-9658
E-mail: richard-johnson@verizon.net

Counsel for the Plaintiff (pro bono without compensation)
In the following case:

Susan E. Johnson
5902 Mt. Eagle Drive, # 1601
Alexandria, Virginia 22303
Phone number: 703-329-8650
    Plaintiff
      v.
Margaret Spellings, Secretary
U.S. Department of Education
400 Maryland Avenue, S.W.
Washington, D.C. 20202
    Defendant

**06 0321**
**FILED**

FEB 2 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 19848
Washington, D.C. 20036

Susan E. Johnson,
Complainant,

v.

Department of Education
Agency.

Appeal No. 01A45737

Agency No. ED-2002-29-00

Hearing No. 100-2003-08283X

<u>DECISION</u>

Complainant timely initiated an appeal from the agency's final order concerning her equal employment opportunity (EEO) complaint of unlawful employment discrimination in violation of Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 *et seq.* The appeal is accepted pursuant to 29 C.F.R. § 1614.405.

The record reveals that complainant, an Accountant, Office of the Chief Financial Officer at the agency's Washington, D.C. facility, filed a formal EEO complaint dated September 27, 2002, alleging that the agency discriminated against her on the basis of disability (recurring depression) when:

(1)  Complainant was denied a promotion to the GS-12 level;

(2)  Complainant was denied a reasonable accommodation to work credit hours;

(3)  Complainant did not receive a cash award equal to that received by other employees doing similar work;

(4)  On November 1, 2002, complainant was placed on Leave Without Pay (LWOP) on the Columbus holiday;

(5)  On February 28, 2003, complainant was denied 72 hours LWOP as a reasonable accommodation; and

(6)  Complainant was subjected to a hostile work environment.

2                                    01A45737

Complainant requested a hearing before an EEOC Administrative Judge (AJ) on her complaint. On July 14, 2004, the AJ issued a decision without a hearing, finding no discrimination.

The AJ concluded that the agency articulated legitimate, nondiscriminatory reasons for its actions.[1] Specifically, the AJ noted that the agency indicated that complainant was not promoted to the GS-12 level because of her frequent absences from the office, stated that she was not at work a sufficient amount of time to merit consideration for promotion, could not be assigned a GS-12 level of duties and noted that her then current workload had to be regularly reassigned to others to ensure its completion. The AJ noted that agency officials indicated that they granted complainant the opportunity to work at home, they simply did not do it in the exact manner that complainant thought it should have been done. Further, the AJ stated that the agency officials indicated that complainant consistently received cash awards that are within $5.00 - $10.00 of the award sums received by similarly situated employees. The AJ noted that the agency explained that the manner in which complainant's Columbus Day time and attendance was handled had no relationship to her disability, but rather was determined by guidance provided by the agency's Denver payroll personnel. The AJ noted that the agency also indicated that complainant ultimately received the 72 hours of LWOP that she requested, although once again, not in the exact manner or time frame that she expected. Finally, the AJ found that the agency actions in this case do not rise to a level that supports a claim of harassment. The AJ concluded that complainant failed to set forth adequate material evidentiary facts that support her allegations of discrimination.

The agency's July 27, 2004 final order fully implemented the AJ's decision.

On appeal, complainant contends that she was a qualified individual with a disability. Complainant states that her disability and her need for reasonable accommodation were known to her supervisors from her first year of employment at the agency. Complainant claims that she was denied reasonable accommodation to work credit hours as replacement for missing certain regular hours when she was unable to work due to her disability. Complainant states that when Supervisor A became her first-line supervisor in March 2000, he changed the reasonable accommodation arrangement of flexible hours for her by stating that although she may continue to work credit hours, she must first receive approval from her team leader prior to performing the work. Complainant disputes the agency's assertion that she agreed to Supervisor A's provision that she seek approval prior to working credit hours.

Complainant also states that on November 19, 2001, she became eligible for a career-ladder promotion opportunity from GS-11 to GS-12. She states that Supervisor A and Supervisor B, her

---

[1]The AJ also noted that on May 6, 2004, and July 9, 2004, complainant filed motions postured as "complaints" charging retaliation under section 503 of the Americans with Disabilities Act and requesting that the Commission take direct jurisdiction of these "complaints." The AJ denied complainant's motions.

3                                    01A45737

second-level supervisor, denied her the opportunity for promotion to a GS-12 because of her disability.

Complainant states that in response to her request for 72 hours LWOP, Supervisor A requested that she meet with him when she gets into work. Complainant stated that since she was having difficulty getting into work, she requested that Supervisor A not condition his response to her leave request on her having to come to the office. When complainant did not receive a reply from Supervisor A for over a week, she states that she brought the matter to the attention of the EEO Investigator. Complainant explains that Supervisor A then requested Person 1 of the Human Resources Unit prepare a letter in response to complainant's LWOP request requesting documentation of complainant's medical condition. Complainant states the letter caused her harm and she perceived it as a threat and in retaliation for earlier charges.

With regard to her claim that she was denied an equitable cash award, complainant stated that the record shows that there was a "secret" grade level award module at the agency. Complainant states that her written performance ratings had been very good and excellent and she states that her award should not have been based on the lowest performance factor of "good."

With regard to her claim that she was discriminated against when she was placed on LWOP on Columbus Day, complainant states that the Denver Payroll cited 25-year old Comptroller-General Opinions which pre-date the Americans with Disabilities Act.

In support of her hostile work environment claim, complainant cites her psychiatrist and psychotherapist's letters describing the impact of her job on her medical condition. Complainant claims that she has missed more work in the same time frame that the agency has denied her request for reasonable accommodation. She notes that her attendance percentages at work have repeatedly gone down which she claims supports a reasonable inference that her attendance was related to the discrimination perpetrated by the agency.

In response to complainant's appeal, the agency argues that complainant failed to timely raise her claim that she was denied a career ladder promotion to a GS-12. Additionally, the agency argues that complainant has not shown that she was qualified to do work at the GS-12 level.

The agency also argues that complainant's claim that she was denied the opportunity to work credit hours was untimely raised. Further, the agency notes that complainant never pointed to an actual request for credit hours that was denied by Supervisor A.

With regard to complainant's claim that she was denied an equitable cash award, the agency notes it is undisputed that complainant received a $220.00 award for her "good" rating during the relevant time frame. The agency states that the only other person under Supervisor A's supervision who was a GS-11 and who received a "good" rating for the same rating period was Employee X who received a $225.00 award. The agency claims it is undisputed that complainant

missed more time than any other employee in her unit and argued that given the totality of the circumstances complainant cannot prove disparate treatment.

With regard to her claim that she was placed on LWOP on Columbus Day, the agency noted there is no dispute that complainant did not work on the paid holiday or before or after the paid holiday. Thus, the agency claims that complainant was not being denied any benefit.

With regard to complainant's claim that she was denied 72 hours of LWOP, the agency notes that Supervisor A stated that complainant had used over 600 hours of LWOP prior to her request and merely asked that she discuss the request with him. Supervisor A stated that he then worked with the Office of Human Relations to issue complainant a letter requesting a doctor's statement for what she was listing as a "serious medical condition." The agency states that complainant never met with Supervisor A and left for her trip. The agency stated complainant was never charged AWOL but granted the 72 hours of LWOP.

We note that complainant submitted an October 22, 2004 "Complainant-Appellant's Reply to Agency Statement of Opposition to Filed Appeal" which we find was untimely filed, as it was not filed within thirty days of the date of the filing of complainant's appeal. In the October 22, 2004 Reply, complainant states that she did not receive notice of the "Agency's Tendering of Appeal File for [complainant's] Appeal" until after her appeal brief was filed. She states that at this time she realized that the agency failed to submit the complete complaint files to the Commission. Complainant submits a short statement and attaches a series of documents to her Reply. Specifically, in her Reply, complainant requests drawing an adverse inference against the agency for its alleged failure to comply in submitting all relevant documents to the Commission. Complainant also states that her removal from the agency on August 6, 2004, should be considered in the present case. Finally, complainant claims that the AJ erred when he stated that the agency indicated that it granted the opportunity to work from home.

In response to complainant's October 22, 2004 Reply, the agency submitted an "Addendum to: Notice: Tendering of Appeal File for [complainant]" dated October 26, 2004. The agency stated that it submitted all agency appeal files and related case files, including the summary judgment binder, to the Commission on September 27, 2004.

The Commission's regulations allow an AJ to issue a decision without a hearing when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence but rather to determine whether there are genuine issues for trial. *Id.* at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. *Id.* at 255. An issue of fact

5                                                01A45737

is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Celotex v. Catrett*, 477 U.S. 317, 322-23 (1986); *Oliver v. Digital Equip. Corp.*, 846 F.2D 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. If a case can only be resolved by weighing conflicting evidence, summary judgment is not appropriate. In the context of an administrative proceeding, an AJ may properly consider summary judgment only upon a determination that the record has been adequately developed for summary disposition.

After a careful review of the record, the Commission finds that grant of summary judgment was appropriate, as no genuine dispute of material fact exists. We note that complainant does not challenge the definition of the issues defined by the AJ. Additionally, we find that complainant failed to show that the AJ improperly excluded her two retaliation "complaints" dated May 6, 2004, and July 9, 2004.

In the present case, we find with regard to issues (1) and (3) - (6) that the AJ's decision properly summarized the relevant facts and referenced the appropriate regulations, policies, and laws. We note in discussing issue (2), the AJ stated that the agency afforded complainant the opportunity to work from home as an accommodation but not in the manner she requested. We note, however, that there is no evidence in the record that the agency afforded complainant an opportunity to work from home. Nor is there evidence that complainant requested to work from home as a reasonable accommodation for her condition. Rather, complainant claimed that she was denied the opportunity to work credit hours as a reasonable accommodation for her disability. We find that the record reveals that the agency permitted complainant the opportunity to work credit hours after informing her supervisor in advance of the dates she planned to work. We note that complainant does not identify specific dates she was not allowed to work credit hours. The Commission finds that complainant has not shown why she should be permitted to work credit hours without informing her supervisor in advance of the hours to be worked in order to be able to function in her position. Upon review, we find complainant failed to show her purported disability was not reasonably accommodated by the agency. Thus, construing the evidence to be most favorable to complainant, we note that complainant failed to present evidence that any of the agency's actions were motivated by discriminatory animus toward complainant's protected classes.[2]

Accordingly, the agency's final order is AFFIRMED.

---

[2]We do not address in this decision whether complainant is a qualified individual with a disability.

6                                              01A45737

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.   The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.   The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

### COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

7                                          01A45737

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

NOV 1 0 2005
Date

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:

NOV 1 0 2005
Date

*H. Wood*

Equal Opportunity Assistant