# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

**Susan E. Johnson**
**5902 Mt. Eagle Drive, # 1601**
**Alexandria, Virginia 22303**

      **Plaintiff**

       **v.**                **CIVIL ACTION NO. 06-0321 (GK)**

**Margaret Spellings, Secretary**
**U.S. Department of Education**
**400 Maryland Avenue, S.W.**
**Washington, D.C. 20202**

      **Defendant**

---

## PLAINTIFF'S RESPONSES TO GOVERNMENT INTERROGATORIES

### Sworn Declaration of Plaintiff

I, Susan E. Johnson, declare, under penalty of perjury, that the following statements of mine in "Plaintiff's Responses To Government Interrogatories" are true and correct.


*Susan E. Johnson*
Susan E. Johnson
Date: July 31, 2006

**PLAINTIFF'S RESPONSES TO GOVERNMENT INTERROGATORIES**

**Interrogatory 1.** Identify each person who, to your knowledge or belief, has knowledge of facts or evidence relevant to any claims and allegations, including defenses, which are raised in your Complaint, and provide a complete and accurate description of the knowledge you believe that each "identified" person has or may have regarding any issue, including defenses, relevant to your Complaint, and state the "identified" person's relationship to you.

**Plaintiff's response:**

1. **Jeanne Johnson** is employed in the Office of the Chief Financial Officer (OCFO) of the Department of Education.  She is not related to me.

She has known me since 1995, as we were co-workers in the same unit of OCFO, where we were both accountants with desks close to each other.  Soon after we started working together, she became aware of my mental illness disabilities.  She was aware of my need for reasonable accommodations, which often included working different hours, and that my supervisors and fellow employees knew about my mental illness disabilities and different working hours.

When she was union representative for the bargaining unit, she was consulted by me about disability protections, reasonable accommodations, and career ladder promotions.

When she was consulted by me about discrimination in 1997, because my team leader and supervisors were not being responsive to my requests for reasonable accommodations and credit hours for different working hours. On several occasions, she discussed questions related to my mental illness disabilities and need for reasonable accommodations with supervisory and managerial staff above me.

She knew that I made formal and informal requests for reasonable accommodations on many occasions over the years.

She knew that supervisors receiving such requests included Cynthia Logan, Maureen Harris, and Keith Cole, and that some reasonable accommodations were afforded off and on. When there was resistance to reasonable accommodation requests by myself and others, she gave informational materials on mental illness disabilities to supervisory and managerial staff.

She was asked by me for information on the requirements and procedures regarding a letter of determination.  She informed me that, after a year in grade, I could submit a letter of determination to my supervisor asking why I had not been promoted from GS-11 to GS-12 grade level in my career ladder job position.

She informed me that the supervisor is required within 30 days to make a determination on a career-ladder promotion or to respond providing reasons why a promotion is not being recommended.

She perceived that I was subjected to a hostile work environment.

The Deposition of Jeanne Johnson on November 5, 2003, in the EEOC proceedings sets forth completely and accurately the substance of her knowledge regarding the facts and evidence regarding my complaint.

2. **Ora Alger** is not related to me.  She was an employee of OCFO and is now an employee in the Department's Office of Human Resources.

She and I were co-workers in OFCO beginning in 1994.  Although we were working in different units of OCFO, her desk was across the hall from the desk where I worked.  I worked in Jan Steinbrueck's section, while she worked in Betty Hepak's section.  She was chief steward of the union at that time.

She became aware in 1995 that I had a mental illness disability.  When my supervisor Jan Steinbrueck and I had disagreements on accommodating my disability needs with differing working hours (in 1996), she intervened to help work out an arrangement to transfer me from Jan Steinbrueck's supervision to work under the supervision of Betty Hepak, who agreed to accommodate my mental illness disability needs with different hours of work when needed.

She knew that I submitted requests for reasonable accommodations to supervisors.  She knew that Betty Hepak and Keith Cole agreed to reasonable accommodations in terms of flexible working hours and work credit hours while they were supervisors over me.

She gave information about mental illness disabilities to Mack Lawrence or Terry Bowie (my first and second-level supervisors) and to Barbara Mailbranch of the Department's Human Resources Unit.

After each of the periods when Betty Hepak and Keith Cole left, she discussed with me the options about addressing difficulties with subsequent supervisors.

She recalls that I spoke with her and told her that my supervisor wasn't accommodating me and wasn't being reasonable with me.

She recalls that (in 1999) I asked if I wanted to start some formal process, and that I said I didn't want to do that then, but that I was gathering information; and that the problems I was having with supervisors were getting bad.

She believed that I was discriminated against repeatedly by managers who failed to understand the mental illness disabilities of myself and other individuals in OCFO with mental illness disabilities.

The Deposition of Ora Alger on November 5, 2003, in the EEOC proceedings sets forth completely and accurately the substance of her knowledge regarding the facts and evidence regarding my complaint.

3. **Keith Cole** is not related to me. He was employed by the Department of Education in 1999 and 2000 and is now employed by the Department of Housing and Urban Development.

He was head of my unit in FMO (Financial Management Operations) in OCFO from April 1999 through February 2000.

He was under the Director of FMO, Maureen Harris, and was at a higher level than Mack Lawrence, a supervisor along with Gary Wood, and Cynthia Logan, my team leader, during that period of time.

He agreed to afford me reasonable accommodations to work credit hours because of my disabilities.

When he received repeated communications from me that my team leader Cynthia Logan was not complying with the agreement, he sent instructions to Mack Lawrence and team leader Cynthia Logan to make the agreement clear to them, with a copy to the Director of FMO Maureen Harris.

See EEO Investigator's Report of Investigation, Tab F-1(b).

4. **Paul Valentic** is my husband (we were married on July 21, 2002). He is an employee in OCFO.

He has knowledge of my personal and medical history, my education and job qualifications, my disabilities, my requests and need for reasonable accommodations, and the issues of discrimination and retaliation against me.

**Interrogatory 2.**   Identify any employment discrimination complaints or grievances, both formal and informal, brought by you or against you, and state the dates they were brought; the agency or employer against which the complaints were made, including the names and positions of the persons who allegedly are responsible for taking the challenged actions against you; the names and employment positions of the persons who filed the complaints (if other than you); what issues were alleged; whether they constitute the grounds upon which this civil action is based; whether they were resolved; and if they were resolved, on what terms.

**Plaintiff's response:**

On my behalf, Paul Valentic (an employee in OCFO and my husband) contacted the EEO-IDRC (Informal Dispute Resolution Center) on August 8, 2002.  That was the date when I sought informal counseling, and the time of my first interview with Counselor Dianne Graham was established.

The issues that I presented to the EEO-IDRC Counselor were the following:

    (1)  reasonable accommodations (credit hours) violations;

    (2)  promotion - systematic discrimination based on my disability;

    (3)  awards - systematic discrimination on cash awards based directly on my disability;

    (4)  hostile workplace; and

    (5)  opportunities not given and/or taken away due to my disability.

The dates of incidents are indicated in the formal complaint shown below.

The issues were not resolved in the EEO-IDRC Counselor's process.

On September 27, 2002, I filed a formal complaint with the Department of Education's Office of Equal Employment Opportunity charging unlawful employment discrimination and reprisals in violation of Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §791 et seq. *(Complaint of Susan E. Johnson v. Roderick R. Paige, Secretary of Education, Agency Case No. ED-2002-29-00)*.

The Department of Education's Equal Employment Opportunity (EEO) Group accepted my complaint for formal processing on December 10, 2002.

My complaint charged the Department of Education with employment discrimination against me based on mental disability (recurring depression) and reprisal (EEO activity).  The agency officials who discriminated against me included Mack Lawrence, my first-level supervisor beginning March 2000, Terry Bowie, my second-level supervisor beginning March 2000, and Cynthia Logan, my team leader from 1998 to 2000.

The formal complaint that I filed on September 27, 2003, charged the Department with discrimination against me on the following issues:

(1) I was discriminated against continuously since May 12, 1997 (last date of incidents being August 8, 2002, and December 3, 2002), based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was denied a promotion to the GS-12 level (and opportunities were not given and/or taken away due to my disability).

(2) I was discriminated against continuously since May 12, 1997 (last date of incident being November 1, 2002), based on mental disability (recurring depression), when I was denied reasonable accommodation (to work credit hours).

(3) I was discriminated against continuously since May 12, 1997 (last date of incident being August 27, 2002), based on mental disability (recurring depression), when I did not receive a cash award equal to that received by other employees doing similar work.

(4) I was discriminated against continuously since May 12, 1997 (last date of incident being November 1, 2002), when I sustained mental and physical injuries (loss of enjoyment of life, inability to sleep, bed-ridden, flu-like symptoms and crying spurts).

(5) I was discriminated against on November 1, 2002, based on mental disability (recurring depression), when I was placed on Leave Without Pay (LWOP) on Columbus Day Holiday.

Because of further discriminatory actions and reprisals for EEO activity by my immediate supervisor, Mack Lawrence, on February 28, 2002, in the course of the investigation by the EEO Investigator to whom my case was referred, my complaint as originally filed was amended on March 11, 2003, to add the following issues regarding such discriminatory actions and reprisals.

(6) I was discriminated against on February 28, 2003, based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was denied reasonable accommodation (72 hours of LWOP).

(7) I was discriminated against continuously since May 12, 1997 (last date of incident being February 28, 2003), based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was subjected to a hostile environment.

The issues were not resolved.

On June 3, 2003, I requested a hearing before an EEOC Administrative Judge on my complaint charging that I was discriminated against on the bases of disability (recurring depression with anxiety) and reprisal (prior EEO activity) by the Department of Education and supervisory and management officials thereof when--

1.  I was denied a promotion to the GS-12 level.

2.  I was denied reasonable accommodation to work credit hours.

3.  I did not receive a cash award equal to that received by other employees doing similar work.

4.  On November 1, 2002, I was placed on leave without pay (LWOP) on the Columbus holiday.

5.  On February 28, 2003, I was denied 72 hours of LWOP as a reasonable accommodation.

6.  I was subjected to a hostile work environment.

Because of retaliatory actions occurring while my discrimination case was pending before the EEOC Administrative Judge, I submitted complaint filings on May 6, 2004, and July 9, 2004, charging that the Department of Education and agency officials retaliated against me in violation of the provisions of section 503 of the Americans With Disabilities Act of 1990 (as made applicable to Federal employment by section 501 of the Rehabilitation Act). As these retaliatory actions occurred while my discrimination case was pending before the EEOC Administrative Judge, my claims were submitted to the EEOC.

Agency officials retaliated against me in violation of ADA Section 503 by unlawful actions to coerce, intimidate, threaten, and interfere with my rights in the exercise of my rights under the Americans With Disabilities Act and with the pursuit of my rights in proceedings in my EEO discrimination case.

These retaliatory actions included attempts to coerce me into relinquishing my claims in the then-pending EEO case, (1) regarding the denial of a promotion, by forcing me to find lateral or lower-level employment in another job or to accept demotion to a lower grade level, and (2) by threatening termination of my Federal employment.

My retaliation complaint filing of May 6, 2004, charged that Department retaliated against me in a letter signed by Mack Lawrence dated March 25, 2004, that threatened termination of my Federal employment, following up on his letters dated January 16, 2004, and March 3, 2004, that attempted to coerce me to find lateral or lower-level employment in another job or to accept demotion to a lower grade level.

My retaliation complaint filing of July 9, 2004, charged that Department retaliated against me in a letter signed by Mack Lawrence dated May 27, 2004, by threatening termination in proposing to remove me from my position as an accountant in the Department of Education, and attempting to compel me to apply for disability retirement in a manner designed to trick me into relinquishing the pursuit of remedies in full satisfaction of my claims in the EEO case.

These retaliatory incidents were in continuation of a pattern of harassment against me.

Mack Lawrence, who was my immediate supervisor in the Office of the Chief Financial Officer (OCFO), initiated and persisted in pursuing the retaliatory actions against me. Agency officials approving and joining in the retaliatory actions of Mr. Lawrence, included Terry Bowie, who as the immediate supervisor of Mr. Lawrence was my second-level supervisor, Mark Carney, who was the Deputy Chief of the Office of the Chief Financial Officer (OCFO); Jack Martin, who was the Chief Financial Officer (and head of OCFO); Geraldine Wright, a management analyst in personnel matters in the executive office of OCFO, who advised and assisted Mr. Lawrence in the preparation of letters to retaliate against the me, and Michael Holloway, who was the head of the executive office of OCFO.

Without a hearing, the EEOC Administrative Judge on July 14, 2004, issued an order granting summary judgment to the Agency. On July 27, 2004, the Agency issued a final agency decision accepting the decision of the EEOC Administrative Judge and dismissed the complaint.

On August 26, 2004, I filed with the Office of Federal Operations of the Equal Employment Opportunity Commission (EEOC) an appeal from the final agency decision concerning my complaint of unlawful employment discrimination and reprisals in violation of section 501 of the Rehabilitation Act of 1973, as amended.

On November 10, 2005, the Equal Employment Opportunity Commission dismissed the appeal on the discrimination complaint and the retaliation charges; and provided the notice required by law and regulation concerning my right to file a civil action in United States District Court within 90 days of the receipt date (November 15, 2005) of the notice of the EEOC's final decision.

All of the issues in my complaint as set forth in this response were unresolved, and are grounds on which the pending civil action is based.

**Interrogatory 3.**  Regarding your claim that you are a qualified disabled person, please identify: (a) the specific disabilities that you assert place you in this protected category; (b) the medical documentation that supports such a claim; (c) when, to whom (i.e., agency officials) and what (documentation) was provided to place the agency on notice of this condition or status of yours.

**Plaintiff's response:**

I am a qualified disabled person who has been psychiatrically-diagnosed as an individual with the mental illness disabilities of recurring major depression and chronic generalized anxiety disorder.

Department officials knew about my mental illness disabilities from the first year of my employment in 1993 by the Department of Education.

Agency officials in OCFO who knew about my disabilities included Jan Steinbrueck, Betty Hepak, Ruth Ann Harrold, Maureen Harris, Keith Cole, Cynthia Logan, Gary Wood, Mack Lawrence, Terry Bowie, and Mark Carney.

In addition, Ora Alger and Jeanne Johnson, who were co-workers of mine in OCFO, and were also union officials for a substantial period of time from the mid-1990's forward, understood my mental illness disabilities. On my behalf, they intervened to inform agency officials on my status as a qualified protected individual with mental illness disabilities needing reasonable accommodations and flexible working hours, and undertook to educate such officials and to provide them with documents on their responsibilities to afford reasonable accommodations to me and other individuals with disabilities.

I communicated orally in person and by phone and in writing and by e-mail many times with agency officials concerning my mental illness disabilities.

When requested, letters from my psychiatrist, Dr. George C. James, were provided to the Department, including January 14, 1995; November 26, 2001; March 11, 2003; May 2, 2003; and November 9, 2003.  The Department has copies of letters from Dr. James. (These are attached to the Sworn Declaration of George C. James, M.D., January 20, 2004, attached to "Complainant Susan E. Johnson's Response to Agency's Motion for Dismissal of Claims and Summary Judgment in its Favor", January 23, 2004, before the EEOC Administrative Judge.)

**Interrogatory 4.**  Regarding your claim that you were denied reasonable accommodation when being disallowed to work credit hours, identify the time and dates in which each such denial took place and what notice was provided and how and to whom (agency officials) as to each specific "denial" incident.

**Plaintiff's response:**

Cynthia Logan was my team leader in OCFO from 1998 to 2000.  I presented her with many requests for reasonable accommodations for flexible working hours and work credit hours to meet my needs based on my mental depression.

Many of my requests were communicated orally, in person or by phone.  At other times, I requested approval of work credit hours as reasonable accommodations for my mental illness difficulties in e-mail messages.

In an e-mail message from me to Cynthia Logan on May 18, 1999 (5:59 pm), I discussed notes from my psychiatrist, Dr, George James, on my disability and need for reasonable accommodations.

In her e-mail reply of May 19, 1999 (7:42 am), Cynthia Logan stated her "final point" refusing reasonable accommodations for my depression because "I can tell you that it does not mean that you do not fall under the same rules that govern other employees".

("Complainant Susan E. Johnson's Response to Agency's Motion for Dismissal of Claims and Summary Judgment in its Favor", January 23, 2004, before the EEOC Administrative Judge, attachment of copies of e-mails on third-from-last page.)

In a series of e-mail messages on April 3 and 4, 2000, I was again denied approval of my requests for work credit hours by my team leader Cynthia Logan.  (E-mails between Susan Johnson and Cynthia Logan, copies to Mack Lawrence, Gary Wood, and Gerri Wright, April 3, 2000 (12:13 pm), April 3, 2000 (12:15 pm), April 3, 2000 (12:26 pm), April 3, 2000 (9:21 pm), April 4, 2000 (7:34 am), and April 4, 2000 (10:45 am).

("Complainant Susan E. Johnson's Response to Agency's Motion for Dismissal of Claims and Summary Judgment in its Favor", January 23, 2004, before the EEOC Administrative Judge, next-to-last page.)

Keith Cole, who was the supervisor over my unit from April 1999 through February 2000, stated in an e-mail message to Mack Lawrence, and Cynthia Logan (with a copy to Maureen Harris, on February 12, 2000 (10:43 am) (EEO Investigator's Report of Investigation, Tab F-1(b)):

> "After an untold number of e-mails between Cynthia and Susan and now a phone call to me from Susan, I want to once again make it perfectly clear as to what we have agreed upon for Susan to work credit hours.
>
> "Because Susan has some difficulty to stay on a daily routine, consistent schedule, I authorized Susan to work credit hours when it was physically possible for her to do so just as long as she had work to do.
>
> "There is no requirement that she clock in and out with her team leader or supervisor. This is to accommodate her disability and work being done needs to be measurable and at her grade level just as would be expected of any other employee."

Mack Lawrence became my first-level supervisor in March 2000. Within the first month of his taking over as my supervisor, he moved to change the reasonable accommodations arrangement of flexible hours and work credit hours for me.

On March 23, 2000 (4:52 pm), Mr. Lawrence sent an e-mail message to me (with copies to team leader Cynthia Logan and personnel specialist Gerri Wright) stating:

> "Susan:
>
> "We have to make a slight modification to your agreement with Keith and Maureen. You may continue to work credit hours, but you must receive approval from your team leader (Cynthia) prior to performing the work. Please stop by if there are any questions or concerns.
>
> "Effective: March 26, 2000"

>                    (EEO Investigator's Report of Investigation, Tab F-1(b))

I sent back an e-mail message less than an hour later on March 23, 2000 (5:43 pm), protesting:

> "You modified the entire agreement."

>                    (EEO Investigator's Report of Investigation, Tab F-1(b))

From that time on, during the remainder of the time that Mack Lawrence was my supervisor until he moved to have the Department terminate my Federal employment, he violated my rights as a person with mental illness disabilities to be provided the reasonable accommodations that I needed for flexible working hours and to work credit hours.

In 2002, I sent several e-mail messages to my supervisor, Mack Lawrence, requesting work credit hours. (EEO Investigator's Report of Investigation (Tab F-1(c)): e-mail messages dated June 7, 2002 (8:38 am); June 7, 2002 (12:51 pm); June 11, 2002 (7:10 am); June 11, 2002 (7:36 am); June 11, 2002 (1:33 pm); June 25, 2002 (7:12 am).

My calendar notes of meetings and appointments show July 8, 2002, and August 5, 2002, as specific dates when I met with Mr. Lawrence to discuss these issues, which remained unresolved on August 8, 2002, on the afternoon of which my initial contact with EEO-IDRC was made on my behalf by my husband, Paul Valentic.

("Complainant Susan E. Johnson's Response to Agency's Motion for Dismissal of Claims and Summary Judgment in its Favor", January 23, 2004 before the EEOC Administrative Judge (attached in the last 7 pages).

My husband's calendar reflects that he visited the EEO-IDRC office on August 8, 2002. The allegation of discrimination form (signed by EEO-IDRC Counselor Dianne Graham on September 19, 2002) certifies the date of August 8, 2002, as the date on which the last incident occurred relating to the denial of request to work credit hours. (EEO Investigator's Report of Investigation, Tab B-1 (eighth page after the tab) see  Attachment 1 (Allegation #2) "Denial of request to work credit hours" with an incident date of "08/08/2002").  The form signed by EEO-IDRC Counselor Graham certified that the incident/action counseled was part of a continuing violation.

August 8, 2002, was the initial contact date with the EEO-IDRC office when Paul Valentic (my husband) went to the EEO-IDRC office in the afternoon to initiate EEO informal counseling contact on my behalf.  Although the EEO-IDRC counselor assigned to my case, Dianne Graham, was out on leave for two weeks, my husband, Paul Valentic, remained in the EEO-IDRC office until the staff scheduled a date for the EEO-IDRC Counselor's interview with me for August 25, 2002, by which time Ms. Graham was to be back in the office.  EEO-IDRC noted the contact date in its records as August 12, 2002 (Monday, after the weekend), but the actual contact was made by my husband on August 8, 2002.

**Interrogatory 5.**  Regarding your claim that you were denied a career-ladder promotion after achieving your one-year anniversary date as a GS-510-11 Accountant on November 19, 2001, please identify or name those projects or assignments which you performed (and when) that demonstrated your ability and readiness to perform at the GS-12 level for the 510 Accountant series.

**Plaintiff's response:**

I worked capably on budget reconciliations and cash reconciliations of the funds assigned to me. I prepared the budget execution reports (quarterly), and financial analysis of statements given to me, and performed various other accounting functions.

Some of these other accounting functions involved supporting other members of my group, and performing some of their accounting functions.  Some of these individuals were Rick Esterbrook, Bonnie Stinson, Randy Prindle, Florine Jones, and Doretha Glasgow.  These and other people I supported at various times (including while they were out of the office) were generally well above my pay level.

These functions were performed competently and were so evaluated on my performance rating, clearly demonstrating my abilities and readiness to perform at the GS-12 level for the 510 Accountant series.

**Interrogatory 6.**  Since you claim that you were denied a timely career-ladder promotion to the GS-12 level, as of November 19, 2001, did you ever execute a request for a "section 18.05 (Collective Bargaining Agreement) determination" from your immediate supervisor as to whether your supervisor was prepared to recommend your promotion?  If so, state when, to whom and how this was done.

**Plaintiff's response:**

On May 16, 2002, I executed a letter requesting a determination by my immediate supervisor as to whether he was prepared to recommend a promotion to a GS-12 level.

I hand-delivered the determination request letter to my immediate supervisor, Mack Lawrence, on May 16, 2002.

I sent a copy of the determination request letter to my second-line supervisor, Terry Bowie, by e-mail on May 16, 2002 (4:43 pm).  The Department's tracking system shows that this e-mail remained on Mr. Bowie's computer until June 25, 2002 (6:15 pm) when it was deleted -- several days after the 30-day deadline when a reply to the determination request letter was due as indicated in the letter but was never provided as required under section 18.05 of the Collective Bargaining Agreement.

I sent a copy of the determination request letter to the Deputy Chief Financial Officer, Mark Carney, by e-mail on May 16, 2002 (4:43pm).  The Department's tracking system shows that this e-mail was read at Mr. Carney's computer on May 17, 2002 (7:24 am).

(EEO Investigator's Report of Investigation, Tab F-8, Investigative Hearing Transcript, pages 34 and 35)

On February 22, 2002, three months prior to sending the formal determination request letter on May 16, 2002, I had sent a more informal inquiry to my supervisor, Mack Lawrence, and his co-supervisor, Gary Wood, saying: "I am wondering how my career ladder consideration is going?" (EEO Investigator's Report of Investigation, Tab F-1(d)), e-mail message sent High Priority on February 22, 2002 (2:10 pm) from Susan Johnson to Mack Lawrence and Gary Wood.)

There was no response, just as there was never any response later to my formal determination request with the 30-day reply deadline.

**Interrogatory 7.**  <u>Since you claim disparate treatment with regard to your denial of a career-</u>
<u>ladder promotion to the grade 12 level, please identify those co-workers who would be deemed similarly</u>
<u>situated to you in terms of promotion eligibility and eventual promotional advancement.</u>

**Plaintiff's response:**

I received disparate treatment by the denial of action on a career ladder promotion to the next
grade level under the terms of the requirements of the Department of Education Collective Bargaining
Agreement that are required to be applied for all bargaining unit employees in the Department meeting
the time-in-grade pre-requisites for career ladder promotions.

**Interrogatory 8.**  Identify all "coercive" threats to retire were made to you, identifying the time, location and substance of each "coercive" threat and the person who made such alleged threat.

**Plaintiff's response:**

The Department retaliated against me in a letter signed by Mack Lawrence dated March 25, 2004, that threatened termination of my Federal employment, following up (as such letter stated) on his letters dated January 16, 2004, and March 3, 2004, that attempted to coerce me to find lateral or lower-level employment in another job or to accept demotion to a lower grade level.

The Department further retaliated against me in a letter signed by Mack Lawrence dated May 27, 2004, by threatening termination in proposing to remove me from my position as an accountant in the Department of Education, and attempting to compel me to apply for disability retirement in a manner designed to force me into relinquishing the pursuit of remedies in full satisfaction of my claims in the EEO case.

Mack Lawrence, who was my immediate supervisor in OCFO, initiated and persisted in pursuing the retaliatory actions against me in such series of letters.

Agency officials approving and joining in the retaliatory actions of Mr. Lawrence, included Terry Bowie who, as the immediate supervisor of Mr. Lawrence and Director of FMO in OCFO, was my second-level supervisor; Mark Carney, who was the Deputy Chief of the OCFO; Jack Martin, who was the Chief Financial Officer (and head of OCFO); Geraldine Wright, a management analyst in personnel matters in the executive office of OCFO, who advised and assisted Mr. Lawrence in the preparation of letters to retaliate against me; and Michael Holloway, who was Geraldine Wright's supervisor and the head of the executive office of OCFO.

17

**Interrogatory 9.**  <u>Identify each and every person you allege discriminated against you, including in your response the date and type of discriminatory action the person allegedly took.</u>

**Plaintiff's response:**

Mack Lawrence discriminated against me continually from 2000 to 2003, and Cynthia Logan discriminated against me continually from 1998 to 2000, by denying my requests for reasonable accommodations affording flexible working hours and work credit hours.

Mack Lawrence discriminated and retaliated against me on February 28, 2003, by refusing to give prior approval to leave without pay (LWOP) when I was without accrued annual or sick leave and needed the reasonable accommodation of LWOP for recuperative leave for a two-week period.

Mack Lawrence, Terry Bowie, and Mark Carney discriminated against me when they failed to respond to my determination request letter, and take action on an overdue career ladder promotion to the GS-12 grade level, that I executed and sent to them on May 16, 2002, under section 18.05 of the Department of Education Collective Bargaining Agreement.

Mack Lawrence and Terry Bowie discriminated against me because of my disabilities by approving lower cash awards for satisfactory work performance.

In letters discriminating and retaliating against me because of my mental illness disabilities on January 16, 2004, March 3, 2004, and March 24, 2004, the Department attempted to coerce me to find lateral or lower-level employment in another job or to accept demotion to a lower grade level, and threatened termination of my Federal employment; and in a letter on May 27, 2004, the Department attempted to compel me to apply for disability retirement in a manner designed to force me into relinquishing the pursuit of remedies in full satisfaction of my claims in my EEO case.   My first-level supervisor, Mack Lawrence, initiated and persisted in these discriminatory and retaliatory actions; and other agency officials having supervisory, executive, management, and personnel responsibilities who approved and joined in these actions included Terry Bowie, who as the immediate supervisor of  Mack Lawrence was my second-level supervisor; Mark Carney, who was the Deputy Chief of the Office of the Chief Financial Officer (OCFO); Jack Martin, who was the Chief Financial Officer (and head of OCFO); Geraldine Wright, a management analyst in personnel matters in the executive office of OCFO, who advised and assisted Mr. Lawrence in the preparation of letters to retaliate against me; and Michael Holloway, who was Geraldine Wright's supervisor and the head of the executive office of OCFO.

**Interrogatory 10**.  Regarding your claim that you were subject to a hostile work environment based on your alleged disabilit(ies) or reprisal, identify: (a) Each specific incident, event or action, when such an item occurred (date of); (b) the actors whom you believe or know were the cause of each incident; (c) when you brought each specific incident to the attention of an EEO counselor (or the equivalent thereof); and (d) when you listed each item as a contested matter as part of a formal employment discrimination complaint.

**Plaintiff's response:**

On my behalf, Paul Valentic (my husband) contacted the EEO-IDRC (Informal Dispute Resolution Center) on August 8, 2002.  That was the date when I requested informal counseling, and the time of my first interview with Counselor Dianne Graham was established.

The issues that I presented to the EEO-IDRC Counselor (Dianne Graham) were:

    (1) reasonable accommodations (credit hours) violations;

    (2) promotion - systematic discrimination based on my disability;

    (3) awards - systematic discrimination on cash awards based directly on my disability;

    *(4) hostile workplace*; and

    (5) opportunities not given and/or taken away due to my disability.

The dates of specific incidents brought to the attention of the EEO Counselor or the EEO Investigator are indicated in each of the issues in the formal complaint shown at the end of my response to this interrogatory, and in the EEO Investigator's Report of Investigation, as all of the incidents in all of the issues contributed to the hostile workplace environment.

After my formal complaint was filed on September 27, 2002, and within less than a month following the EEO Investigator's investigative hearing on February 5, 2003, my supervisor, Mack Lawrence, declined to provide me with approval in advance of 72 hours LWOP as reasonable accommodation for my recuperative needs based on my mental illness disabilities.

On March 9, 2003, I submitted to the Department's Equal Employment Opportunities Group the following two additional issue items for my complaint, referring to the discriminatory actions of my supervisor on February 28, 2003, as the last incident date:

(6) I was discriminated against on February 28, 2003, based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was denied reasonable accommodation (72 hours of LWOP).

(7) I was discriminated against continuously since May 12, 1997 (last date of incident being February 28, 2003), based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was subjected to a hostile environment.

These actions occurred while my original formal complaint was pending midway in the course of the investigation by the Department's EEO Investigator Tasha Stewart.

The hostile work environment confronting me was continuous. The last incident cited was February 28, 2003, when my supervisor declined to approve 72 hours LWOP as reasonable accommodation for my recuperative needs.

After I submitted these additional charges on March 9, 2003, the Department's EEO Group on March 11, 2003, sent my additional complaint issues to the EEO Investigator for the ongoing investigation. The date that the formal complaint was amended to incorporate these added issues was March 11, 2003

September 27, 2002, was the date when I listed the incidents shown in issue items (1) through (5) as contested matters in the formal employment discrimination complaint, as follows:

(1) I was discriminated against continuously since May 12, 1997 (last date of incidents being August 8, 2002, and December 3, 2002,  based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was denied a promotion to the GS-12 level (and opportunities were not given and/or taken away due to my disability).

(2) I was discriminated against continuously since May 12, 1997 (last date of incident being November 1, 2002), based on mental disability (recurring depression), when I was denied reasonable accommodation (to work credit hours).

(3) I was discriminated against continuously since May 12, 1997 (last date of incident being August 27, 2002), based on mental disability (recurring depression), when I did not receive a cash award equal to that received by other employees doing similar work.

(4) I was discriminated against continuously since May 12, 1997 (last date of incident being November 1, 2002), when I sustained mental and physical injuries (loss of enjoyment of life, inability to sleep, bed-ridden, flu-like symptoms and crying spurts).

(5) I was discriminated against on November 1, 2002, based on mental disability (recurring depression), when I was placed on Leave Without Pay (LWOP) on Columbus Day Holiday.

March 9, 2003, was the date when I listed the incidents shown in the additional issue items (6) and (7) as contested matters in the formal employment discrimination complaint (as accepted and amended by the Department's EEO Group on March 11, 2003), as follows:

(6) I was discriminated against on February 28, 2003, based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was denied reasonable accommodation (72 hours of LWOP).

(7) I was discriminated against continuously since May 12, 1997 (last date of incident being February 28, 2003), based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was subjected to a hostile environment.

The hostile work environment that my supervisory and management officials demonstrated toward me was continuously experienced since May 12, 1997.

**Interrogatory 11.**  Regarding the alleged discriminatory actions detailed in your complaint in this matter, identify the specific act, the date of the alleged act, the date you sought informal counseling for such alleged discrimination, the date you received a right to file a formal complaint notification, and the date you filed such formal complaint.

**Plaintiff's response:**

On my behalf, Paul Valentic (my husband) contacted the EEO-IDRC (Informal Dispute Resolution Center) on August 8, 2002.  That was the date when I sought informal counseling, and the time of my first interview with Counselor Dianne Graham was established.

The issues that I presented to the EEO-IDRC Counselor were the following:

    (1)  reasonable accommodations (credit hours) violations;

    (2)  promotion - systematic discrimination based on my disability;

    (3)  awards - systematic discrimination on cash awards based directly on my disability;

    (4)  hostile workplace; and

    (5)  opportunities not given and/or taken away due to my disability.

The dates of discriminatory actions and incidents are identified in the formal complaint shown at the end of this response, and in the EEO Investigator's Report of Investigation.

The issues were not resolved in the EEO-IDRC Counselor's process.

On September 20, 2002, I received notification of my right to file a formal complaint.

I filed a formal complaint on September 27, 2002.  The Department acknowledged receipt of my formal complaint on October 16, 2002.

On December 10, 2002, the Department's Equal Employment Opportunity Group referred the formal complaint for investigation by a contract EEO Investigator (Tasha Stewart).

The issues presented were my claims that I was discriminated against on the bases of disability (recurring depression) and reprisal (prior EEO activity) by supervisory and management officials of the Department of Education when:

    (1) I was discriminated against continuously since May 12, 1997 (last date of incidents being August 8, 2002, and December 3, 2002),  based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was denied a promotion to the GS-12 level (and opportunities were not given and/or taken away due to my disability).

(2) I was discriminated against continuously since May 12, 1997 (last date of incident being November 1, 2002), based on mental disability (recurring depression), when I was denied reasonable accommodation (to work credit hours).

(3) I was discriminated against continuously since May 12, 1997 (last date of incident being August 27, 2002), based on mental disability (recurring depression), when I did not receive a cash award equal to that received by other employees doing similar work.

(4) I was discriminated against continuously since May 12, 1997 (last date of incident being November 1, 2002), when I sustained mental and physical injuries (loss of enjoyment of life, inability to sleep, bed-ridden, flu-like symptoms and crying spurts).

(5) I was discriminated against on November 1, 2002, based on mental disability (recurring depression), when I was placed on Leave Without Pay (LWOP) on Columbus Day Holiday.

Because of further discriminatory actions and reprisals for EEO activity by my immediate supervisor on February 28, 2002, in the course of the investigation by the EEO Investigator to whom my case was referred, my complaint as originally filed was amended on March 11, 2003, to add the following issues regarding such discriminatory actions and reprisals.

(6) I was discriminated against on February 28, 2003, based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was denied reasonable accommodation (72 hours of LWOP).

(7) I was discriminated against continuously since May 12, 1997 (last date of incident being February 28, 2003), based on mental disability (recurring depression) and reprisal (prior EEO activity), when I was subjected to a hostile environment.

23

**Interrogatory 12.**  Identify each individual whom you believe has knowledge of your having been discriminated against by any employee at the Department of Education and describe the substance of that person's knowledge.

**Plaintiff's response:**

1.  **Jeanne Johnson** is employed in the Office of the Chief Financial Officer (OCFO) of the Department of Education.  She is not related to me.

She has known me since 1995, as we were co-workers in the same unit of OCFO, where we were both accountants with desks close to each other.  Soon after we started working together, she became aware of my mental illness disabilities.  She was aware of my need for reasonable accommodations, which often included working different hours, and that my supervisors and fellow employees knew about my mental illness disabilities and different working hours.

When she was union representative for the bargaining unit, she was consulted by me about disability protections, reasonable accommodations, and career ladder promotions.

When she was consulted by me about discrimination in 1997, because my team leader and supervisors were not being responsive to my requests for reasonable accommodations and credit hours for different working hours. On several occasions, she discussed questions related to my mental illness disabilities and need for reasonable accommodations with supervisory and managerial staff above me.

She knew that I made formal and informal requests for reasonable accommodations on many occasions over the years.

She knew that supervisors receiving such requests included Cynthia Logan, Maureen Harris, and Keith Cole, and that some reasonable accommodations were afforded off and on. When there was resistance to reasonable accommodation requests by myself and others, she gave informational materials on mental illness disabilities to supervisory and managerial staff.

She was asked by me for information on the requirements and procedures regarding a letter of determination.  She informed me that, after a year in grade, I could submit a letter of determination to my supervisor asking why I had not been promoted from GS-11 to GS-12 grade level in my career ladder job position.

She informed me that the supervisor is required within 30 days to make a determination on a career-ladder promotion or to respond providing reasons why a promotion is not being recommended.

She perceived that I was subjected to a hostile work environment.

The Deposition of Jeanne Johnson on November 5, 2003, in the EEOC proceedings sets forth completely and accurately the substance of her knowledge regarding the facts and evidence regarding my complaint.

2. **Ora Alger** is not related to me.  She was an employee of OCFO and is now an employee in the Department's Office of Human Resources.

She and I were co-workers in OFCO beginning in 1994.  Although we were working in different units of OCFO, her desk was across the hall from the desk where I worked.  I worked in Jan Steinbrueck's section, while she worked in Betty Hepak's section.  She was chief steward of the union at that time.

She became aware in 1995 that I had a mental illness disability.  When my supervisor Jan Steinbrueck and I had disagreements on accommodating my disability needs with differing working hours (in 1996), she intervened to help work out an arrangement to transfer me from Jan Steinbreuck's supervision to work under the supervision of Betty Hepak, who agreed to accommodate my mental illness disability needs with different hours of work when needed.

She knew that I submitted requests for reasonable accommodations to supervisors.  She knew that Betty Hepak and Keith Cole agreed to reasonable accommodations in terms of flexible working hours and work credit hours while they were supervisors over me.

She gave information about mental illness disabilities to Mack Lawrence or Terry Bowie (my first and second-level supervisors) and to Barbara Mailbranch of the Department's Human Resources Unit.

After each of the periods when Betty Hepak and Keith Cole left, she discussed with me the options about addressing difficulties with subsequent supervisors.

She recalls that I spoke with her and told her that my supervisor wasn't accommodating me and wasn't being reasonable with me.

She recalls that (in 1999) I asked if I wanted to start some formal process, and that I said I didn't want to do that then, but that I was gathering information; and that the problems I was having with supervisors were getting bad.

She believed that I was discriminated against repeatedly by managers who failed to understand the mental illness disabilities of myself and other individuals in OCFO with mental illness disabilities.

The Deposition of Ora Alger on November 5, 2003, in the EEOC proceedings sets forth completely and accurately the substance of her knowledge regarding the facts and evidence regarding my complaint.

3.  **Keith Cole** is not related to me.  He was employed by the Department of Education in 1999 and 2000 and is now employed by the Department of Housing and Urban Development.

He was head of  my unit in FMO (Financial Management Operations) from April 1999 through February 2000.

He was under the Director of FMO, Maureen Harris, and was at a higher level than Mack Lawrence, a supervisor along with Gary Wood, and Cynthia Logan, my team leader, during that period of time.

He agreed to afford me reasonable accommodations to work credit hours because of my disabilities.

When he received repeated communications from me that my team leader Cynthia Logan was not complying with the agreement, he sent instructions to Mack Lawrence and team leader Cynthia Logan to make the agreement clear to them, with a copy to the Director of FMO Maureen Harris.

See EEO Investigator's Report of Investigation, Tab F-1(b).

4.  **Paul Valentic** is my husband (we were married on July 21, 2002).  He is an employee in OCFO.

He has knowledge of my personal and medical history, my education and job qualifications, my disabilities, my requests and need for reasonable accommodations, and the issues of discrimination and retaliation against me.

**Interrogatory 13.**  Identify any and all communications by, from, and/or between you (and/or anyone on your behalf) and any agents and/or employees of the United States of America and/or the Department of Education, that constitute, relate to, or refer to any issue relevant to this case, stating specifically the name and title of each person, and the substance of such person's communication to you.

**Plaintiff's response:**

When requested, letters from my psychiatrist, Dr. George C. James, were provided to the Department, including January 14, 1995; November 26, 2001; March 11, 2003; May 2, 2003; and November 9, 2003.  The Department has copies of letters from Dr. James. (These are attached to the Sworn Declaration of George C. James, M.D., January 20, 2004, attached to "Complainant Susan E. Johnson's Response to Agency's Motion for Dismissal of Claims and Summary Judgment in its Favor", January 23, 2004, before the EEOC Administrative Judge.)

In an e-mail message from me to Cynthia Logan on May 18, 1999 (5:59 pm), I discussed notes from my psychiatrist, Dr, George James, on my disability and need for reasonable accommodations.

In her e-mail reply of May 19, 1999 (7:42 am), Cynthia Logan stated her "final point" refusing reasonable accommodations for my depression because "I can tell you that it does not mean that you do not fall under the same rules that govern other employees".

("Complainant Susan E. Johnson's Response to Agency's Motion for Dismissal of Claims and Summary Judgment in its Favor", January 23, 2004, before the EEOC Administrative Judge, attachment of copies of e-mails on third-from-last page.)

In a series of e-mail messages on April 3 and 4, 2000, I was again denied approval of my requests for work credit hours by my team leader Cynthia Logan.  (E-mails between Susan Johnson and Cynthia Logan, copies to Mack Lawrence, Gary Wood, and Gerri Wright, April 3, 2000 (12:13 pm), April 3, 2000 (12:15 pm), April 3, 2000 (12:26 pm), April 3, 2000 (9:21 pm), April 4, 2000 (7:34 am), and April 4, 2000 (10:45 am).

("Complainant Susan E. Johnson's Response to Agency's Motion for Dismissal of Claims and Summary Judgment in its Favor", January 23, 2004, before the EEOC Administrative Judge, next-to-last page.)

On March 23, 2000 (4:52 pm), Mr. Lawrence sent an e-mail message to me (with copies to team leader Cynthia Logan and personnel specialist Gerri Wright) stating:

> "Susan:
>
> "We have to make a slight modification to your agreement with Keith and Maureen.  You may continue to work credit hours, but you must receive approval from your team leader (Cynthia) prior to performing the work.  Please stop by if there are any questions or concerns.
>
> "Effective: March 26, 2000"

(EEO Investigator's Report of Investigation, Tab F-1(b))

I sent back an e-mail message less than an hour later on March 23, 2000 (5:43 pm), protesting:

> "You modified the entire agreement."

(EEO Investigator's Report of Investigation, Tab F-1(b))

In 2002, I sent several e-mail messages to my supervisor, Mack Lawrence, requesting work credit hours.  (EEO Investigator's Report of Investigation (Tab F-1(c)): e-mail messages dated June 7, 2002 (8:38 am); June 7, 2002 (12:51 pm); June 11, 2002 (7:10 am); June 11, 2002 (7:36 am); June 11, 2002 (1:33 pm); June 25, 2002 (7:12 am).

On May 16, 2002, I executed a letter requesting a determination by my immediate supervisor as to whether he was prepared to recommend a promotion to a GS-12 level.

I hand-delivered the determination request letter to my immediate supervisor, Mack Lawrence, on May 16, 2002.

I sent a copy of the determination request letter to my second-line supervisor, Terry Bowie, by e-mail on May 16, 2002 (4:43 pm).  The Department's tracking system shows that this e-mail remained on Mr. Bowie's computer until June 25, 2002 (6:15 pm) when it was deleted -- several days after the 30-day deadline when a reply to the determination request letter was due as indicated in the letter but was never provided as required under section 18.05 of the Collective Bargaining Agreement.

I sent a copy of the determination request letter to the Deputy Chief Financial Officer, Mark Carney, by e-mail on May 16, 2002 (4:43pm).  The Department's tracking system shows that this e-mail was read at Mr. Carney's computer on May 17, 2002 (7:24 am).

(EEO Investigator's Report of Investigation, Tab F-8, Investigative Hearing Transcript, pages 34 and 35)

On February 22, 2002, three months prior to sending the formal determination request letter on May 16, 2002, I had sent a more informal inquiry to my supervisor, Mack Lawrence, and his co-supervisor, Gary Wood, saying: "I am wondering how my career ladder consideration is going?"

(EEO Investigator's Report of Investigation, Tab F-1(d)), e-mail message sent High Priority on February 22, 2002 (2:10 pm) from Susan Johnson to Mack Lawrence and Gary Wood.)

A letter was mailed to my home that was signed by Mack Lawrence and dated March 25, 2004. This letter threatened termination of my Federal employment, following up (as such letter stated) on Mr. Lawrence's letters dated January 16, 2004, and March 3, 2004, that attempted to coerce me to find lateral or lower-level employment in another job or to accept demotion to a lower grade level.

A letter was mailed to my home that was signed by Mack Lawrence and dated May 27, 2004. This letter threatened termination in proposing to remove me from my position as an accountant in the Department of Education, and attempting to compel me to apply for disability retirement in a manner designed to force me into relinquishing the pursuit of remedies in full satisfaction of my claims in the EEO case.

**Interrogatory 14.** Identify each and every person, other than any expert witness, who has, will or may submit any affidavits or other documentation to prove any issue relevant to your Complaint. With respect to each, state the nature and substance of the affidavit or other documentation from the witness and the relationship, if any, of the witness to you.

**Plaintiff's response:**

Since witnesses on my behalf are expected to appear in person at a jury trail on my case, I cannot at this time anticipate the need for such persons to submit affidavits or other documents as they will be testifying themselves about their personal knowledge.

**Interrogatory 15.**  Identify each and every person, other than expert witnesses, whom you intend to call as a witness at the trial of this case. With respect to each, state the nature and substance of the testimony expected to be given and the relationship, if any, of the witness to you.

**Plaintiff's response:**

At this time, I expect that the following persons will be witnesses (in addition to expert witnesses and myself):  Jeanne Johnson (not related), Ora Alger (not related), Keith Cole (not related), and Paul Valentic (husband).

1. **Jeanne Johnson** is employed in the Office of the Chief Financial Officer (OCFO) of the Department of Education.  She is not related to me.

She has known me since 1995, as we were co-workers in the same unit of OCFO, where we were both accountants with desks close to each other.  Soon after we started working together, she became aware of my mental illness disabilities.  She was aware of my need for reasonable accommodations, which often included working different hours, and that my supervisors and fellow employees knew about my mental illness disabilities and different working hours.

When she was union representative for the bargaining unit, she was consulted by me about disability protections, reasonable accommodations, and career ladder promotions.

When she was consulted by me about discrimination in 1997, because my team leader and supervisors were not being responsive to my requests for reasonable accommodations and credit hours for different working hours. On several occasions, she discussed questions related to my mental illness disabilities and need for reasonable accommodations with supervisory and managerial staff above me.

She knew that I made formal and informal requests for reasonable accommodations on many occasions over the years.

She knew that supervisors receiving such requests included Cynthia Logan, Maureen Harris, and Keith Cole, and that some reasonable accommodations were afforded off and on. When there was resistance to reasonable accommodation requests by myself and others, she gave informational materials on mental illness disabilities to supervisory and managerial staff.

She was asked by me for information on the requirements and procedures regarding a letter of determination.  She informed me that, after a year in grade, I could submit a letter of

determination to my supervisor asking why I had not been promoted from GS-11 to GS-12 grade level in my career ladder job position.

She informed me that the supervisor is required within 30 days to make a determination on a career-ladder promotion or to respond providing reasons why a promotion is not being recommended.

She perceived that I was subjected to a hostile work environment.

The Deposition of Jeanne Johnson on November 5, 2003, in the EEOC proceedings sets forth completely and accurately the substance of her knowledge regarding the facts and evidence regarding my complaint.


2. **Ora Alger** is not related to me.  She was an employee of OCFO and is now an employee in the Department's Office of Human Resources.

She and I were co-workers in OFCO beginning in 1994.  Although we were working in different units of OCFO, her desk was across the hall from the desk where I worked.  I worked in Jan Steinbrueck's section, while she worked in Betty Hepak's section.  She was chief steward of the union at that time.

She became aware in 1995 that I had a mental illness disability.  When my supervisor Jan Steinbrueck and I had disagreements on accommodating my disability needs with differing working hours (in 1996), she intervened to help work out an arrangement to transfer me from Jan Steinbrueck's supervision to work under the supervision of Betty Hepak, who agreed to accommodate my mental illness disability needs with different hours of work when needed.

She knew that I submitted requests for reasonable accommodations to supervisors.  She knew that Betty Hepak and Keith Cole agreed to reasonable accommodations in terms of flexible working hours and work credit hours while they were supervisors over me.

She gave information about mental illness disabilities to Mack Lawrence or Terry Bowie (my first and second-level supervisors) and to Barbara Mailbranch of the Department's Human Resources Unit.

After each of the periods when Betty Hepak and Keith Cole left, she discussed with me the options about addressing difficulties with subsequent supervisors.

She recalls that I spoke with her and told her that my supervisor wasn't accommodating me and wasn't being reasonable with me.

She recalls that (in 1999) I asked if I wanted to start some formal process, and that I said I didn't want to do that then, but that I was gathering information; and that the problems I was having with supervisors were getting bad.

She believed that I was discriminated against repeatedly by managers who failed to understand the mental illness disabilities of myself and other individuals in OCFO with mental illness disabilities.

The Deposition of Ora Alger on November 5, 2003, in the EEOC proceedings sets forth completely and accurately the substance of her knowledge regarding the facts and evidence regarding my complaint.

3.  **Keith Cole** is not related to me.  He was employed by the Department of Education in 1999 and 2000 and is now employed by the Department of Housing and Urban Development.

He was head of  my unit in FMO (Financial Management Operations) from April 1999 through February 2000.

He was under the Director of FMO, Maureen Harris, and was at a higher level than Mack Lawrence, a supervisor along with Gary Wood, and Cynthia Logan, my team leader, during that period of time.

He agreed to afford me reasonable accommodations to work credit hours because of my disabilities.

When he received repeated communications from me that my team leader Cynthia Logan was not complying with the agreement, he sent instructions to Mack Lawrence and team leader Cynthia Logan to make the agreement clear to them, with a copy to the Director of FMO Maureen Harris.

See EEO Investigator's Report of Investigation, Tab F-1(b).

4.  **Paul Valentic** is my husband (we were married on July 21, 2002). He is an employee in OCFO.

He has knowledge of my personal and medical history, my education and job qualifications, my disabilities, my requests and need for reasonable accommodations, and the issues of discrimination and retaliation against me.

**Interrogatory 16.**  Identify each and every expert witness you intend to call at trial and state his or her area of expertise and the substance of the facts and opinions to which each expert is expected to testify.

**Plaintiff's response:**

1.  Dr. George C. James, M.D. (Psychiatrist providing treatment for me from 1993 to end of 2004)
    3905 National Drive, Suite 250, Burtonsville, Maryland 20866; phone: 301-421-4233

    *Subjects of information:* Diagnosis and treatment of my mental illnesses, including major depression and chronic anxiety, and medication therapy, during the period of my employment in the Department of Education.

    The substance of facts and opinions is shown in the Statement of Dr. James to the Office of Personnel Management for my Federal Employment Retirement Disability (FERS) application (enclosed in the Production of Documents).

2.  Mary Jo Wilson, R.N., M.S.N., C.S.-P.  (Certified Nurse Psychotherapist providing therapy for me from 1993 through end of 2004)
    7257-C Hanover Parkway, Greenbelt, Maryland 20770; phone: 301-474-1679

    *Subjects of information:* Psychotherapy treatment for mental illnesses, including major depression and chronic anxiety, during the period of my employment in the Department of Education.

    The substance of facts and opinions is shown in the Statement of Mary Jo Wilson in the Department's possession (attached to "Complainant Susan E. Johnson's Response to Agency's Motion for Dismissal of Claims and Summary Judgment in its Favor", January 23, 2004, before the EEOC Administrative Judge).

3.  Dr. Franklin J. Pepper, M.D. (Psychiatrist providing treatment for me from January 2005 to present)

    4600 Duke Street, Suite 424, Alexandria, Virginia 22304; phone: 703-823-2311

    *Subjects of information:* Diagnosis and treatment of my mental illnesses, including major depression and chronic anxiety, and medication therapy and psychotherapy.  Dr. Pepper became my psychiatrist when I was discharged from hospitalization after a suicide attempt following the Department of Education's discriminatory and retaliatory actions culminating in termination of me from Federal employment.

    The substance of facts and opinions is shown in the Statement of Dr. Pepper to the Office of Personnel Management for my Federal Employment Retirement Disability (FERS) application (enclosed in the Production of Documents).

**Interrogatory 17.**  Identify all health care providers (including hospitals, clinics, physicians, surgeons, doctors, therapists, chiropractors, osteopathic doctors, psychiatrists, psychologists, counselors, arid/or other practitioners of the healing, therapeutic and/or counseling arts) seen or consulted by you at anytime in the last ten years. Additionally, execute the enclosed consent form for each provider and return it with your responses.

**Plaintiff's response:**

1.  Dr. George C. James, M.D. (my psychiatrist from 1993 through end of 2004)
    3905 National Drive, Suite 250, Burtonsville, Maryland 20866; phone: 301-421-4233

2.  Mary Jo Wilson, R.N., M.S.N., C.S.-P.
    (Certified Nurse Psychotherapist providing therapy for me from 1993 through end of 2004)
    7257-C Hanover Parkway, Greenbelt, Maryland 20770; phone: 301-474-1679

3.  Dr. Franklin J. Pepper, M.D. (my psychiatrist from January 2005 to present)
    4600 Duke Street, Suite 424, Alexandria, Virginia 22304; phone: 703-823-2311

4.  Inova Fairfax Hospital
    (emergency hospitalization after suicide attempt on January 5, 2005; inpatient psychiatric care from January 5, 2005, to January 12, 2005; and outpatient day-time care and therapy from January 14-24, 2005)
    3300 Gallows Road, Falls Church, VA 22042-3300; phone: 703-578-0600

5.  Dr. C.M. Prasad, M.D.
    (Inova Fairfax Hospital psychiatric unit Staff Psychiatrist providing treatment for me from January 5 to January 24, 2005),
    Inova Fairfax Hospital
    3300 Gallows Road, Falls Church, VA 22042-3300; phone: 703-578-0600

6.  Cora Attari, RN, LCNS, MS, MA, Clinical Nurse Specialist, Psychiatry
    (patient and family therapy session near end of hospitalization January 2005)
    Inova Fairfax Hospital
    3300 Gallows Road, Falls Church, VA 22042-3300; phone 703-776-3024

7.  Marie Durbin (my current nurse practitioner)
    5946 Richmond Highway, Alexandria, VA 22303; phone: 703-317-9500

8.  Dr. Stephanie Whitko, Internist (my general physician prior to my current nurse practitioner)
    Georgetown University Medical Center at Ballston, Virginia
    (The center no longer exists and I have no address for Dr. Whitko.  Also, she referred me once to
    Georgetown University Hospital for colonoscopy by hospital staff doctor who in no longer there
    and found no problem in my colon.)

Medical consent forms are being sent to each of the above-listed health care providers whose addresses
are known.  Copies are enclosed.

**Interrogatory 18.**  State whether you have ever suffered from, sought treatment or counseling for, or been diagnosed as suffering from any physical, nervous, emotional or mental disorder and/or "work related stress", and, if so, state or identify with particularity: the nature, extent and duration of such stress, illness or disorder; the inclusive dates of the stress, illness or disorder; the name and address of each medical practitioner or other health care provider who has treated, examined, or consulted with you, concerning each stress, illness or disorder and state the approximate date(s) of each treatment, examination or consultation; and if the stress, illness or disorder resulted in any disability, and describe each disability, its duration and its effect on you in all facets of your life.

**Plaintiff's response:**

Since I was hospitalized following a suicide attempt near the end of my college education in April 1989, I have been diagnosed as having the mental illnesses of recurrent Major Depression and chronic Anxiety Disorder.  The prognosis for my mental illnesses is that they will be life-long.  I have had continuous psychiatric treatment including both psychotherapy and prescribed anti-depressant and anti-anxiety medications.

1.  University of Connecticut Campus Infirmary
    (inpatient psychiatric care after suicide attempt in dormitory room in April 1989)
    Storrs, Connecticut

2.  Psychiatric Institute of Montgomery County, Maryland
    (first month-long hospitalization April 1989; another month-long hospitalization May 1990 after subsequent suicide attempt)
    Shady Grove, Maryland

3.  Dr. Louise Postman, M.D. (Psychiatrist from April 1989 to 1993)
    6807 Hillmead Road, Bethesda, Maryland 20817

4.  Laurel Regional Hospital
    (two-week inpatient hospitalization in psychiatric unit after suicide attempt in early 1994)
    7300 Van Dusen Road, Laurel, Maryland 20707

5.  Dr. George C. James, M.D. (Psychiatrist from 1993 through end of 2004)
    3905 National Drive, Suite 250, Burtonsville, Maryland 20866

6.  Mary Jo Wilson, R.N., M.S.N., C.S.-P.
    (Certified Nurse Psychotherapist providing therapy for me from 1993 through end of 2004)
    7257-C Hanover Parkway, Greenbelt, Maryland 20770

7.  Inova Fairfax Hospital
    (emergency hospitalization after suicide attempt on January 5, 2005; inpatient psychiatric care
    from January 5, 2005, to January 12, 2005; and outpatient day-time care and therapy from
    January 14-24, 2005)
    3300 Gallows Road, Falls Church, VA 22042-3300

8.  Dr. C.M. Prasad, M.D.
    (Inova Fairfax Hospital psychiatric unit Staff Psychiatrist providing treatment for me from
    January 5 to January 24, 2005)
    Inova Fairfax Hospital
    3300 Gallows Road, Falls Church, VA 22042-3300

9.  Cora Attari, RN, LCNS, MS, MA, Clinical Nurse Specialist, Psychiatry
    (patient and family therapy session near end of hospitalization January 2005)
    Inova Fairfax Hospital
    3300 Gallows Road, Falls Church, VA 22042-3300

10. Dr. Franklin J. Pepper, M.D. (Psychiatrist from January 2005 to present)
    4600 Duke Street, Suite 424, Alexandria, Virginia 22304

With psychiatric and medications treatment, my depression and anxiety symptoms have been ameliorated to varying levels at different times, but not fully controlled. Medications and dosages have been continually re-assessed and often adjusted. My recurring Major Depression and chronic Anxiety Disorder, and the frequently-adjusted medications and their side effects, resulted in varying degrees of fatigue, nausea, and gastro-intestinal discomfort. These conditions made work situations difficult for me when circumstances were stressful and when flexible work hours were not accommodated. I have also found it difficult and stressful to deal with major life activities, including going out in public, shopping, and social interactions except among family and a few friends.

## CERTIFICATE OF SERVICE

I certify that on July 31, 2006, I served a true and correct copy of Plaintiff Susan E. Johnson's Responses to Government Interrogatories by e-mail delivery to John F. Henault, Assistant United States Attorney, Washington, D.C.

An additional copy in paper form will be mailed by U.S. Postal Service.


_____/s/_____
Richard E. Johnson
Counsel for the Plaintiff
District of Columbia Bar # 86686
3522 Majestic Lane
Bowie, Maryland 20715-1604
Phone and fax number: 301-262-9658
E-mail: richard-johnson@verizon.net