

## ADMINISTRATIVE COMMUNICATIONS SYSTEM
### U.S. DEPARTMENT OF EDUCATION

**Handbook OM-03**                                **Page 1 of 77 (08/20/2003)**

Distribution:                        Approved by:  _____/s/_____
All Department of Education Employees              William J. Leidinger
                                                   Assistant Secretary
                                                   Office of Management

# Handbook for Reasonable Accommodations








For technical questions concerning information found in this handbook, please contact JoAnn Cottman on (202) 401-0964 or via e-mail.

*U.S. Department of Education Reasonable Accommodation Handbook*　　　　　　　　　　　　　　*i*

**A. INTRODUCTION AND POLICY STATEMENT** ........................................... 1

    **A1.**    **Policy Statement** .................................................................................. 1

    **A2.**    **About This Handbook** ........................................................................ 2

    **A3.**    **What is Reasonable Accommodation?** .............................................. 4

    **A4.**    **Outline of Reasonable Accommodation Procedure** ......................... 4

    **A5.**    **Centralized Funds and Resources** ................................................... 5

**B. LEGAL OVERVIEW** ........................................................................................ 6

    **B1.**    **Federal Agencies' Obligation to Provide Reasonable Accommodation** .............. 6

    **B2.**    **Definition of 'Disability'** .................................................................... 6

    **B3.**    **Definition of 'Qualified Individual with a Disability'** ...................... 8

    **B4.**    **Essential Functions** .......................................................................... 8

    **B5.**    **Employees Who Have an Impairment but Not a Disability** ............. 9

    **B6.**    **Types of Reasonable Accommodation** ............................................. 10

    **B7.**    **Undue Hardship** ................................................................................ 10

    **B8.**    **Direct Threat and Conduct Issues** ................................................... 11

    **B9.**    **Reasonable Documentation and Medical Information** ..................... 12

    **B10.**    **Reassignment** .................................................................................... 14

    **B11.**    **Interviewing and New Employees** ................................................... 15

**C. DEPARTMENT OF EDUCATION POLICY** ................................................. 18

    **C1.**    **ED's Reasonable Accommodation Policy: Provide the Tools to Do the Job** .... 18

    **C2.**    **Confidentiality** .................................................................................. 18

    **C3.**    **Difficult Issues:  Restructuring Duties, Performance Problems, Conduct and Attendance** .................................................................. 19

    **C4.**    **Alternative Work Schedules, Leave, and Reasonable Accommodation** ........... 20

    **C5.**    **Flexiplace and Working at Home as a Reasonable Accommodation** ............... 21

    **C6.**    **Workers' Compensation and Reasonable Accommodation** ............. 23

    **C7.**    **Union Role in Reasonable Accommodation** ................................... 23

    **C8.**    **Reasonable Accommodation for Volunteers, Part-Time Employees, Student Interns, Detailees, and Temporary Employees** ............ 24

    **C9.**    **Reasonable Accommodation for Contractor Employees** ................. 24

    **C10.**    **Service Animals** ............................................................................... 25

    **C11.**    **Interpreters, Readers, and Personal Attendants** ........................... 26

    **C12.**    **Transportation for Work-Related Activities** ................................. 28

    **C13.**    **Official Travel and Reasonable Accommodation** ........................... 29

    **C14.**   **Facility Modifications for Reasonable Accommodation** .................................. 31

**D. DEPARTMENT OF EDUCATION PROCEDURES** ..................................... 32

    **D1.**    **ED Procedures for Reasonable Accommodation Decisions** ..................... 32

    **D2.**    **Time Frames for Reasonable Accommodation Requests** ....................... 33

    **D3.**    **Tracking Reasonable Accommodations** ................................................ 34

    **D4.**    **Routine or Repeated Accommodation Requests** .................................. 35

    **D5.**    **Roles and Responsibilities of Employees and Supervisors** .................... 36

    **D6.**    **Review of Reasonable Accommodation Decisions** .............................. 38

    **D7.**    **Review of Medical Documentation** ..................................................... 38

    **D8.**    **Funding for Reasonable Accommodations** ......................................... 40

    **D9.**    **Hiring and Appointing Authorities** .................................................... 41

    **D10.**   **Other Disability-Access Policies: Accessible Meetings, Documents, and Technology**........................................................................................ 42

    **D11.**   **Computer-Related Accommodations** ................................................. 44

    **D12.**   **Telecommunications Accommodations** .............................................. 45

    **D13.**   **Ergonomics and Furniture Accommodations**.................................... 45

**E. RESOURCES AND REFERENCES**............................................................ 46

    **E1.**    **ED Offices and Their Roles in the Reasonable Accommodation Process** ......... 46

    **E2.**    **Disability-Access Resources in the Department**................................. 47

    **E3.**    **Definitions** ...................................................................................... 50

**F. REASONABLE ACCOMMODATION PROCEDURES CHECKLIST**............ 56

    **INTRODUCTION** ...................................................................................... 56

    **SOME THINGS TO REMEMBER** ............................................................... 57

    **1.  The accommodation request** ................................................................ 59

    **2. Review the essential functions of the job**................................................ 60

    **3. Request and evaluate documentation or medical information if necessary** ........... 61

    **4. Request needs-assessments or collaboration with other offices** ........................ 62

    **5. Evaluate the accommodation request** .................................................... 63

    **6. Supervisor's Decision Point** ................................................................ 64

**G. REASONABLE ACCOMMODATION REQUEST FORM** ............................ 67

    **Privacy Act Statement** ............................................................................ 70

**H. RELEASE OF MEDICAL INFORMATION FORM** .................................... 73

## A.    INTRODUCTION AND POLICY STATEMENT

### A1.    Policy Statement

The U. S. Department of Education (ED) is required under Sections 501 and 504 of the Rehabilitation Act of 1973, as amended, to provide reasonable accommodation for qualified individuals with disabilities.  The Department's own Section 504 regulations for federally conducted programs, at 34 CFR §105.30, state, "no qualified individual with handicaps shall, on the basis of handicap, be subjected to discrimination in employment under any program or activity conducted by the Department."  The Federal sector's equal employment opportunity regulations for the Rehabilitation Act, at 29 CFR §1614.203, state in part: "An agency shall make reasonable accommodation to the known physical or mental limitations of an applicant or employee who is a qualified individual with handicaps unless the agency can demonstrate that the accommodation would impose an undue hardship on the operations of its program."

In addition, Executive Order 13164: *Establishing Procedures to Facilitate the Provision of Reasonable Accommodation*, issued on July 26, 2000, directed all Federal agencies to establish written procedures for handling requests for reasonable accommodation.  On October 20, 2000, the U. S. Equal Employment Opportunity Commission (EEOC) issued policy guidance on how agencies can comply with this Executive Order.  This guidance was issued as Notice 915.003 of the EEOC's Compliance Manual.

Providing reasonable accommodation fairly and promptly in accordance with the law increases productivity and morale in the workplace, and is consistent with the Department's Strategic Plan goals of providing a healthy, safe, secure, and accessible workplace for all employees.  This is an integral part of supporting a highly skilled and high-performing workforce.

The policy of the Department of Education shall be as follows:

- The Department will provide reasonable accommodation to all qualified employees and applicants with disabilities, unless doing so creates an undue hardship.

- The Department will use a fair and consistent procedure for determining whether an employee is a 'qualified individual with a disability' as defined by law, when evaluating accommodation requests, determining what is reasonable and what constitutes an undue hardship.  The Department will inform supervisors and employees of this procedure.

- Supervisors and employees will understand the reasonable accommodation policies and procedures and follow them appropriately.

- The Department will provide resources to help supervisors and employees work through each step in the reasonable accommodation process: determining whether a disability exists, deciding on appropriate accommodations, obtaining expert guidance and assessments, and procuring equipment and services needed for accommodation.

- The Department will maintain the confidentiality of all employee medical records, consistent with the Rehabilitation Act and the Privacy Act.

Since this Reasonable Accommodation Handbook is not a regulation or policy statement, it does not have binding effect. Rather, it provides general information about the relevant law and the Department of Education's policies and practices implementing it. As such, it is not a substitute for specific legal guidance on the law and regulations. In addition, case law is always evolving, and court decisions or congressional action may change the statutes, regulations, and interpretations at any time. Consequently, the Department will periodically review the reasonable accommodation policy, procedures, and resources to ensure compliance with changes in the law and to ensure that Department employees are receiving effective services. This Handbook may be revised as circumstances warrant.

In any event, employees or supervisors involved in a legal dispute about a specific case should consult with their legal counsel or with the Office of the General Counsel, Division of Business and Administrative Law, about the most current interpretations and decisions of the law.

## A2.    About This Handbook

The purpose of this policy handbook is to outline and explain the Department of Education's policies and procedures on providing reasonable accommodation for employees with disabilities, and to give basic information on the legal framework governing employment of individuals with disabilities. It is part of the Department's Administrative Communications System (ACS), and sets forth defined and consistent policies and procedures for providing reasonable accommodation. This ACS handbook also formally notifies Department applicants and employees of their rights as required by law. For further assistance, readers also should consult with the appropriate offices, which are listed in the ED Resources and References section in the back of the handbook.

*Section B: Legal Overview* – This section explains the legal concepts used in the reasonable accommodation process. This is general information that applies to any employment situation under the law, and is not intended as a substitute for legal guidance on the Rehabilitation Act or the Americans with Disabilities Act. Case law and regulatory guidance in this area is constantly evolving; this handbook reflects the laws, regulations, and interpretations current at the time of this writing. For specific legal information, please consult with the Office of the General Counsel, Division of Business and Administrative Law (DBAL), the statutory and regulatory language and the interpretive guidance developed by the U. S. Equal Employment Opportunity Commission (EEOC).

*Section C: Department of Education Policy* – This section covers the Department of Education's established policies and practices for reasonable accommodation requests. It explains how the various requirements of the law have been interpreted within the Department's personnel and administrative structures. This information should not be interpreted as applicable

to other Federal agencies or other employment situations, though all policies and procedures are consistent with the law.

**Section D: Department of Education Procedures** – This section covers the Department's procedures for requesting and providing a reasonable accommodation. It includes information about timelines, roles and responsibilities of different parties, funding, and resources available for reasonable accommodations. It also explains how the needs-assessment process works for computer, telecommunications, and ergonomic accommodations.

**Section E: Department of Education Resources and References** – This section contains a listing of the offices and functions within ED that provide services relevant to the reasonable accommodation process. It also contains definitions of key terms used in the law and throughout the handbook.

**Section F: Reasonable Accommodation Procedures Checklist** – This section can be pulled out and used on its own by supervisors and employees who want a detailed step-by-step guide to the reasonable accommodation process. Two columns show the supervisor's and employee's responsibilities, side-by-side, for each step. The checklist is designed to be independent of the rest of the handbook, though users will want to consult the relevant sections of the handbook if they need more detailed information on a particular topic.

**Section G: Reasonable Accommodation Request Form** – Employees may use this form to submit a reasonable accommodation request, but it is not required. The employee fills out the first three pages of the form with information about the disability and requested accommodation. The supervisor can use the next three pages, if desired, to track the request and record the results of any meetings or decisions about the employee's accommodation. The form also can be sent to the Section 504/Disability Policy Coordinator or other office/individual who is helping evaluate or respond to a reasonable accommodation request. Supervisors should be aware that employees are not required to use this form, and that the supervisor may still have a legal obligation to respond to an accommodation request even if no written request is submitted. See Section D3, *Roles and Responsibilities of Employees and Supervisors,* for more information.

**Section H: Release of Medical Information Form** – Employees must sign this release form if the Department wants a physician to send information directly to the supervisor or other office, or if the Department wants to be able to speak with the physician. See Sections B9, *Reasonable Documentation and Medical Information*, and D5, *Review of Medical Documentation,* for more information.

This handbook is a living document, and it will be updated periodically to reflect changes in the statutory language, regulations, and case law. If you have suggestions for improving it, please contact the Section 504/Disability Policy Coordinator in the Office of Management's (OM) Work/Life Programs Team in Human Resources Services (HRS) with your comments and questions.

**A3.     What is Reasonable Accommodation?**

Every employee of the Department of Education needs certain tools to do his or her job.  We take it for granted that the Department will provide us with a desk, pen and paper, telephone, computer, e-mail, and office software; even basics like electricity, heat/air conditioning, and restrooms can be seen as 'tools' since they are part of what we need to get our work done.  Most employees also use reference materials, software, or training on a subject related to their job functions.  Employees working on a particular project may obtain specialized software or other tools to help them do their jobs.  In the same vein, employees with disabilities may need unique tools to help them do their jobs or to be able to use the same tools or amenities that others can use 'as is.'

Broadly speaking, the term 'reasonable accommodation' refers both to these specialized tools or adjustments that help employees with disabilities do their jobs, and to the process of determining what is the most appropriate tool or adjustment.  Ideally, the supervisor and employee together will work out an appropriate reasonable accommodation in an interactive process.  The end result of the process should be an employee who has the tools he or she needs to be productive, and a supervisor who is able to effectively manage the work of the employee with a disability and others in the unit.

Sometimes the accommodation needed by an employee with a disability is not a physical object, but rather, a change in the way work is done or a modification to workplace policies.  A request for this type of accommodation must be evaluated the same way that a request for a physical object would be: by looking first at whether it is likely to be effective, and then at whether it creates an undue hardship for the Department.  The law requires the Department to make such changes if they are necessary to accommodate a qualified employee with a disability, do not change the essential functions of the job, and if they do not create an undue hardship for the Department.   The law also requires the Department to respond quickly to reasonable accommodation requests.  Supervisors are responsible for understanding these legal obligations and seeking out the information and resources they need within the Department to respond properly.  Employees are responsible for asking for an accommodation if it is needed, and for providing reasonable documentation if it is not obvious what their disability is or why they need accommodation.

Having a clear and effective reasonable accommodation process is a good business practice for the Department, and also is required by law.  The Department has established a reasonable accommodation policy and has made available the resources described in this handbook to help all employees, with and without disabilities, understand the law and work through the process more effectively.

**A4.     Outline of Reasonable Accommodation Procedure**

The following outline will give readers a general understanding of the procedure for reasonable accommodation requests.  Please refer to specific sections of the handbook for additional guidance on each step.

1. Employee makes accommodation request to supervisor.  The request must describe the claimed disability, how it affects the employee's performance of essential job duties, and how the requested accommodation would enable the employee to perform these duties.

   ➢ Supervisor reviews request.  Ideally, the supervisor and employee engage in an interactive process to resolve the request.

2. Within 15 calendar days of receiving the request, supervisor responds or asks for additional information if necessary to determine whether the employee is a 'qualified individual with a disability,' and the type of accommodation that may be effective.

   ➢ Employee and/or supervisor gather additional information if needed: medical documentation needs assessments, coordination with other offices.  An ED Medical Review Officer's report, if needed, is considered part of this additional information.

3. Within 15 calendar days after all additional information is complete, supervisor makes two decisions:

   ➢ Whether the employee is/is not a 'qualified individual with a disability.'

   ➢ Whether to grant the requested accommodation, grant an alternative accommodation, or deny the accommodation.

4. Employee may request review by second-line supervisor if he/she does not agree with the decision.  Second-line supervisor may consult with the Section 504 Coordinator, Employee Relations Team, Regional Human Resources Services Representative and/or Office of the General Counsel before deciding on the request within 15 calendar days of receipt.


## A5.    Centralized Funds and Resources

The Department has established centralized funding for reasonable accommodation purchases, maintained by the Section 504 staff in the OM Work/Life Programs Team in Human Resources Services (HRS).  In general, this funding is available to cover the cost of any equipment, services, or training needed to provide a reasonable accommodation for an employee with a disability or to assess the employee's impairment and/or need for accommodation.  Some of these funds are passed through to the Office of the Chief Information Officer's (OCIO) Assistive Technology Team to provide assistive technology items directly to employees with disabilities. The Department also has established centralized funding in Budget Services to cover expenses related to providing readers, interpreters, and personal attendants.  These are described in greater detail in Section D8, *Funding for Reasonable Accommodations*.

## B.    LEGAL OVERVIEW

### B1.    Federal Agencies' Obligation to Provide Reasonable Accommodation

The Federal government is covered by several disability civil rights laws that require agencies to provide reasonable accommodation to qualified applicants and employees with disabilities, unless doing so poses an undue hardship.  A reasonable accommodation is a modification to the work environment or job duties that enable an individual with a disability to gain access to the application process, perform the essential functions of the job, or enjoy other benefits and privileges of employment.  Other benefits and privileges of employment include facilities such as the cafeteria or fitness center, workplace activities such as conferences, training and professional development, or office social events.  They also include benefits such as leave accrual, health and life insurance, retirement/pension plans, savings plans, and information relating to these benefits and services.

Section 504 of the Rehabilitation Act of 1973, as amended, prohibits Federal agencies and recipients of Federal funding from discriminating on the basis of disability in their programs, services, and activities.  Section 501 of the Rehabilitation Act protects Federal employees from disability discrimination, and requires agencies to establish affirmative employment programs for people with disabilities and to make an annual report to the EEOC on their hiring practices. The regulations for Section 501 are found at 29 CFR Part 1614.  The reasonable accommodation obligation is found at 29 CFR 1614.203.

When the Americans with Disabilities Act of 1990 (ADA) was passed, it extended similar non-discrimination requirements to private sector employers.  After the ADA was passed, Section 501 of the Rehabilitation Act was amended to apply the standards developed in the ADA to all non-affirmative action employment discrimination complaints.  The standards of Title I, the employment portion of the ADA, therefore, apply to Federal agencies, although the rest of the ADA does not.  In May 2002, the EEOC published a final rule clarifying the application of the employment provisions of the ADA of 1990 to federal government workers and implementing the amendments of Section 501 of the Rehabilitation Act, under the ADA of 1992.[1]

### B2.    Definition of 'Disability'

For an employee to be provided with a reasonable accommodation, he or she must be a 'qualified individual with a disability.'  The first step is to establish whether or not an individual has a disability, because that is a threshold for coverage under the law and protection from discrimination.  (See Section B3, *Definition of 'Qualified Individual with a Disability,'* for the

---

[1] The Rehabilitation Act was amended in 1992 (codified as amended at 29 U.S.C. Section 791 (g) (1994)) to apply the standards of Title I of the Americans with Disabilities Act (ADA) to the Federal government for purposes of non-affirmative action employment discrimination. The EEOC published a final ruling on May 21, 2002, effective as of June 20, 2002, clarifying the application of the employment provision of the ADA to federal government workers. The ruling incorporates by reference the EEOC's ADA regulations, found at 29 CFR Part 1630, into the federal sector EEO complaint processing regulations, found at 29 CFR Part 1614. The text of the final rule can be found at EEOC's website, www.eeoc.gov.

next step, establishing whether or not the individual is 'qualified.')   The key is whether the individual has met his or her burden of establishing that, considering all the circumstances, the individual has an impairment, and that the impairment substantially limits a major life activity.

An 'individual with a disability,' as defined by law, is one who:

(1)  Has a physical or mental impairment that substantially limits a major life activity,
(2)  Has a record of such an impairment, or
(3)  Is regarded as having such an impairment.

Major life activities include such things as walking, talking, hearing, seeing, breathing and working; this list is suggestive, not inclusive.   The analysis of whether an impairment limits a major life activity can focus on what the individual's functional impairments are, such as impairments related to mobility, communication, self-care, self-direction, interpersonal skills, or work skills.   Working should be analyzed only if no other major life activity is substantially limited by an impairment.[2]   In order to show that an impairment substantially limits the major life activity of "working," an individual must establish that he or she is unable to work in a class of jobs or a broad range of jobs in various classes.   Generally, the inability to work in a specific job, or even a specific type of job at one location, is not broad enough to demonstrate a substantial limitation in "working."

Determining whether a given impairment substantially limits a major life activity should be done on a case-by-case basis, and should be made with reference to measures, such as assistive aids and devices, that the individual uses to mitigate the effects of his or her impairment.   For example, if an individual has difficulty seeing, but has vision that can be corrected to within normal range by the use of eyeglasses (even if not correctable to 20/20), he or she may not be substantially limited in a major life activity, and thus may not be considered to be disabled.   The key is to consider whether the impairment still substantially limits a major life activity with the mitigating measure.   For example, an individual who can drive and read standard print with the aid of glasses probably would not be considered disabled, but someone who cannot drive or read street signs, and needs large print even with strong corrective lenses, probably would be considered disabled as defined by the law.

The law also protects from discrimination an individual who has a *history* of having a disability, or is regarded by others as having a disability.[3]   For purposes of reasonable accommodation, however, the focus should be on the nature, severity, and duration of any actual impairment; the activity or activities that the impairment limits; and the extent to which the impairment limits the individual's ability to perform the activity or activities.   These factors determine whether the individual has a disability as defined by law, what barriers he or she will encounter in the workplace, and therefore, what type of reasonable accommodation will be most effective.

---

[2] For more information, please see the EEOC's *Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities.*   See also the definition of "substantially limits" in the ADA regulations at 29 CFR 1630.2(j).
[3] 29CFR §§1630.2(k) and (l).

**B3.    Definition of 'Qualified Individual with a Disability'**

The law defines a 'qualified individual with a disability' as a disabled individual who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position."[4]    The individual also must meet the experience and education requirements for the position, or the criteria for appointment under one of the special excepted appointment authorities for disabled employees, such as Schedule A.[5] Being a 'qualified individual with a disability' is the threshold for obtaining a reasonable accommodation.

For example, a blind law school graduate who had not passed the bar exam – a requirement for an attorney position in the Federal government – would not be a qualified individual with a disability because he does not satisfy the job related requirements of the employment position. Similarly, if a disabled individual cannot perform the essential functions of the job even with the appropriate accommodation, or if there is no accommodation that would enable him or her to do so, then he or she is also not a "qualified individual with a disability."    Individuals with disabilities are held to the same quality, conduct, and performance standards as all other employees.

**B4.    Essential Functions**

In analyzing a job to determine whether an employee is a 'qualified individual with a disability,' it is important to determine what the essential functions of the job are.    The essential functions are the fundamental job duties – the core of the job – as distinguished from the marginal functions or less important tasks.    A function may be essential if it is the reason the position exists, if there are few employees who can do it, or if it is highly specialized.    Factors to be considered in the analysis include the employer's judgment of what is essential, written job descriptions, how much time is spent on the function, the consequences of not performing it, the experience of past or current employees in the same or similar positions, and the terms of a collective bargaining agreement.    For example, if an employee whose primary job responsibilities are clerical tasks such as answering the telephone and opening mail asks to work at home full-time or a substantial portion of the time, he or she would probably be unable to complete the essential functions of the job, because many of these tasks cannot be done away from the office.    However, a staff person whose primary responsibilities are reviewing grant applications, conducting research and writing reports, might be able to work at home and still perform all the essential functions of his or her job, if the functions are not dependent on location.

When determining the essential functions of positions in the Department of Education, greater weight should be given to the actual experience and job functions of similarly situated employees

---

[4] 29 CFR §1630.2(m).

[5]    Schedule A is a special appointing authority that can be used for individuals with severe physical, mental or psychiatric disabilities.  See 5 CFR §§ 213.3102(t), (u), and (gg).

than to broad, standardized position descriptions, which often do not include tasks and duties specific to each office and may not reflect changes in the nature and type of work performed. Individual employees within an office may have the same broad job description but have different duties, so essential functions should be analyzed in the context of the specific duties and tasks of the disabled employee's job. Job functions should be analyzed in terms of outcome rather than process; such as "move an object from point A to point B" rather than "pick up an object and carry it from point A to point B." The Department's formal performance appraisal system, which includes an employee's performance agreement, should be used in the process of determining the essential functions of the job.

## B5.   Employees Who Have an Impairment but Not a Disability

The reasonable accommodation process is designed for qualified employees who have a disability as defined under the law: an impairment that substantially limits one or more major life activities. The Department has specific legal obligations toward individuals with disabilities that it does not have toward other individuals. That is why the first step of the reasonable accommodation process is to determine whether or not the individual has a disability. Employees and supervisors should not use the reasonable accommodation process for people who have impairments such as back pain, hand/wrist pain, or temporary ailments such as sprains, fractures, etc, that are not considered disabilities under the law. Short-term conditions such as a broken leg that may significantly impair an individual's ability to walk (a major life activity) but is expected to heal normally usually are not considered disabilities. Supervisors should make necessary workplace adjustments for employees who have injuries or other temporary conditions, but should not use the formal reasonable accommodation process to do so. It is crucial to conduct a case-by-case analysis of each individual situation to determine whether or not the individual has a disability as defined by law, taking into account the duration and the degree to which it limits a major life activity. For example, many employees have low-level impairments that may signal the onset of repetitive-motion injuries such as carpal tunnel syndrome. These impairments may respond well to preventive solutions if caught early on, but are not yet disabilities. Although these individuals may benefit from workplace adjustments such as modified chairs, workstations, or computer peripherals, there are other resources and policies available in the Department that can be used to address these needs. Any adjustments for employees who have impairments that do not meet the legal definition of disability are the financial and administrative responsibility of the Principal Office and are not reasonable accommodations. Employees and supervisors may consult with the Section 504/Disability Policy Coordinator and the Assistive Technology Team for guidance about other resources and for assistance in determining whether an impairment is a disability. The Assistive Technology Team, at its discretion, may provide some preventive equipment for employees who experience computer-related repetitive stress injuries which cause impairments that may not be severe enough to be disabilities, but would worsen without adaptive equipment.

## B6.    Types of Reasonable Accommodation

A reasonable accommodation is any modification to the work environment or the way that work is performed that enables a qualified individual with a disability to perform the essential functions of the job.  The employer also must provide accommodations for non-essential job functions and for other benefits and privileges of employment, such as the cafeteria, fitness center, training and professional development, conferences, office social events, other workplace activities, and access to payroll, leave, retirement, insurance, and other benefits.  Reasonable accommodations can include: making physical changes to the worksite or furniture, restructuring jobs or modifying schedules, purchasing or modifying equipment such as computers or telephones, modifying workplace policies, providing materials in alternate formats, providing readers or interpreters, or other services, and, in appropriate cases, reassignment to a vacant position.

There are as many types of reasonable accommodations as there are people with disabilities, and the most appropriate accommodation for each individual must be determined on a case-by-case basis.  The law recommends an interactive process between employer and employee.  The employer should give priority to the employee's desires, but is not required to provide the accommodation preferred by the employee.  However, if an alternative accommodation is provided, it must be effective; that is, it must enable the employee to perform the job or to have equal access to other benefits.  The Department has an obligation to provide reasonable accommodation unless it can prove that to do so would cause an undue hardship on the operations of the agency.

## B7.    Undue Hardship

The Department of Education may only deny an accommodation to a qualified employee with a disability if the accommodation is not reasonable or if it would create an undue hardship for the agency.  Title I of the ADA requires an employer to provide reasonable accommodation to qualified individuals with disabilities who are employee or applicants for employment, unless to do so would cause undue hardship.[6]  An undue hardship is an action that is "excessively costly, extensive, substantial, or disruptive, or that would fundamentally alter the nature or operation of the business."[7]  The agency needs to consider factors such as the nature and net cost of the accommodation, the agency's overall size and financial resources, the type of operation, and the impact of the accommodation upon the operation, including the impact on other employees' ability to perform their duties and the agency's ability to conduct business.  Just as an employee bears the burden of proving the existence of a disability, the Department bears the burden of proof to demonstrate that a requested accommodation creates an undue hardship.

---

[6] See the *EEOC Enforcement Guidance: Reasonable Accommodation and Undue hardship Under the Americans with Disabilities Act.*
[7] 29 CFR § 1630.2 (p).

This means that an employer must look at its overall financial and organizational resources, not just the resources of the office where an accommodation request originates. In practice, cost is rarely a defensible reason to refuse an accommodation, particularly in the Federal sector. Most cases of undue hardship are likely to arise from the impact on other employees or on the work unit as a whole, or because the proposed accommodation would fundamentally alter the nature of the business. For example, providing a full-time interpreter for a deaf employee or a reader for a blind employee might be costly but would be unlikely to cause an undue hardship for ED. If an employee with a disability cannot perform certain job functions, reassigning nonessential duties or switching them with another employee may be a reasonable accommodation. But if the reassignment or switching affects essential job functions, creates significant extra work, or interferes with other employees' ability to do their jobs, it may be an undue hardship.[8] Switching or eliminating essential job functions also may raise the question of whether or not the employee is a 'qualified individual with a disability.'

## B8.     Direct Threat and Conduct Issues

If a qualified employee with a disability poses a 'direct threat,' that is, a significant risk of substantial harm to the health and safety of him/herself or others, and there is no reasonable accommodation that can eliminate the risk or reduce it to acceptable levels, it is permissible for the agency to discharge or refuse to hire the individual. The risk must be evaluated realistically and objectively, considering the duration of the risk, the nature and severity of the potential harm, and how likely it is to occur. For example, an employee with epilepsy who has occasional seizures might seriously endanger him/herself and others if employed as a driver, but might not pose a severe threat of harm if employed in an office setting. A determination of 'direct threat' must be based on an individualized assessment of the employee's present ability to safely perform the functions of the job, considering the most current medical knowledge and/or the best available objective evidence. For example, to determine that an employee with a psychiatric disability poses a direct threat, the agency must identify the specific behavior on the part of the individual that would pose the direct threat. This includes an assessment of the likelihood, nature, and imminence of future violence.

The employer can apply workplace conduct standards that are job-related for the positions in question and are consistent with business necessity. For example, nothing in the law prevents an employer from maintaining a workplace free of violence or threats of violence, or from disciplining an employee who steals or destroys property. The agency does not have to tolerate verbally or physically abusive behavior, violence, or threats from any employee, even if the behavior is caused by a disability.  As long as the conduct standards are applied uniformly, employees with disabilities can be disciplined for violating them. For example, an employee who physically intimidates and shouts at a co-worker, then later discloses that the behavior was caused by a psychiatric disability, may still be disciplined for the incident, just as a non-disabled employee would be. After the disclosure, the agency must make reasonable accommodation for the disability (such as time off for treatment or a flexible schedule to alleviate medication side effects), but it does not have to excuse that or another similar incident. If the misconduct is

---

[8] For more information, please see the EEOC's *Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*.

severe enough to result in termination or other removal from the workplace, then further accommodation may become moot. For more information, please see the section on 'direct threat' in the EEOC's *Enforcement Guidance on the ADA and Psychiatric Disabilities*. See also the Department's policies and information on workplace violence and security found in the New Table of Penalties for Stated Offenses, Appendix A, Personnel Manual Instruction (PMI) 751-1, issued on March 24, 2003, items 9 through 13 in the Table. The Employee Relations Team or Regional Human Resources Services Representative in OM/HRS can assist supervisors and employees who have questions about conduct issues.

## B9.    Reasonable Documentation and Medical Information

If an employee's disability and/or need for accommodation are not obvious to an observer, an employer can request reasonable documentation to establish the existence or nature of a disability, or to verify that a requested accommodation is needed or will be effective. The employee may be required to provide this information to demonstrate that his or her impairment constitutes a disability, and may not be entitled to an accommodation unless he or she does so. Generally, the Department may not ask for unlimited access to the employee's medical records. The request for medical documentation usually should be limited to information about the disability, including the nature, severity, and duration of the impairment, the activities that it limits, and the extent to which it limits the employee's ability to perform those activities. The purpose of the documentation is to enable the employer to determine whether the employee is a qualified individual with a disability, evaluate how these limitations affect the employee's ability to perform the essential functions of the job, and evaluate an accommodation request. If the employee asks for a new or different accommodation, the Department may ask for documentation showing how the employee's needs have changed, but it may not require the employee to demonstrate again that he/she has a covered disability if the employee already has done so. If the change of accommodation is prompted by a change in the disability, the employee may need to provide documentation of how his/her disability has changed and how the change affects his/her job.

Several 1999 Supreme Court decisions clarify that an employer appropriately may inquire into the nature and extent of an employee's condition, what measures have been taken to mitigate the condition, how effective those measures have been, and the effect of the condition on the individual's life activities. It is not enough for a physician to indicate the effect of the condition on "many people." Rather, the documentation must focus with specificity on the employee and demonstrate in what way the employee's impairment substantially limits a major life activity, taking into account any mitigating measures used by the employee.

How much documentation is reasonable will depend on the circumstances, including the nature of the disability and the reason for requesting the documentation. Disability-related documentation should be requested only when the disability and/or the need for accommodation are not obvious to an observer. For example, if an employee who is deaf asks for a TTY and a flashing light to indicate when the phone is ringing, no documentation should be required. For an obvious physical disability or a simple and uncontested accommodation request, minimal documentation may be sufficient. For example, an employee who uses a wheelchair sometimes

but can stand briefly and transfer to another seat requests an ergonomic desk chair. A simple evaluation from a rehabilitation professional can help determine what type of chair would be most appropriate. Some accommodation requests may require documentation of job functions rather than of the disability. For example, if an employee who is deaf requests a two-way pager, it would be appropriate to ask what job functions require frequent telephone/text communication from locations other than the employee's desk. Asking for an audiogram or other medical documentation of the hearing loss is unlikely to provide information that will be useful in determining whether the pager is a reasonable accommodation. It is obvious that the deaf employee cannot use a voice telephone; what is at issue is what form of text communication is the most effective replacement for voice telephone capabilities, given the employee's duties and the level of access to telephones and voice mail enjoyed by comparable non-disabled employees. Supervisors should be aware of the distinction between these types of documentation, and should not automatically ask for disability-related information when they have questions about accommodation requests.

It may be appropriate to request more detailed and extensive medical documentation for a more complex situation when the effects of the disability are not clear, when there is a dispute about the need for accommodation, or when there are questions as to whether the individual can perform the essential functions of the job even with an accommodation. For example, an employee with a psychiatric disability who has displayed disruptive behavior and whose performance has been affected by concentration and memory impairments may be asked to provide details of his/her diagnosis, treatment and prognosis, and allow his/her doctors to speak with the employer. If an employee does not provide documentation, or provides documentation that does not have enough information to enable the Department to determine whether he or she has a disability or can be accommodated effectively, the reasonable accommodation request cannot be processed. Even when fairly extensive and detailed documentation is requested, it should be limited to the work related issues or other facts necessary to demonstrate the existence of a disability as defined by law. It is important for supervisors to get expert assistance with medical information requests.

If the documentation about an employee's disability is complex or requires specific medical information, employees and supervisors should consult with the OM Section 504/Disability Policy Coordinator or the OM/HRS Employee Relations Team (ERT) (or with the Regional Human Resources Services representative in lieu of the ERT). The Office of General Counsel's Division of Business and Administrative Law (DBAL) can play a consulting role in reviewing complex medical information and determining whether the information provided is relevant. These offices can help determine what information is relevant, provide medical release forms, and arrange for the Department's Medical Review Officer to review medical documentation once it is received. The employee may submit the documentation (medical or non-medical) directly to the supervisor, or may send it to the Section 504 office, Employee Relations, or the Regional Human Resources Services Representative so they can assist the supervisor in reviewing it. See Section D7, *Review of Medical Documentation,* for more information about the review process.

The Department may require an employee with a disability to provide information from an appropriate medical or health-care professional, and may submit a list of specific questions or have the employee sign a medical release form. It is important that the employee provide the

requested information in a timely and detailed manner.  The information provided should include the diagnosis, prognosis, relationship between medical condition and the requested accommodation, a description of the major life activities substantially limited, and any other necessary documentation.  Providing detailed documentation to the supervisor at this stage may prevent delays in processing the request.  If the supervisor does not have enough information, he or she will not be able to fairly evaluate the request and may have to wait for more information before making a decision.  If the documentation provided does not establish a disability or describe why an accommodation is necessary, the employer should explain why the documentation is insufficient and give the employee an opportunity to provide more complete information.  If the information provided by the employee is insufficient, the Department may request that the employee to see a health care professional of the Department's choosing.  Such an examination must be job-related and consistent with business necessity, and the Department would pay all expenses associated with the visit(s).

Any disability-related documentation received by the Department must be kept strictly confidential.  It must be kept in a file separate from personnel records, and may be shared with others only on a strict need-to-know basis, and in accordance with the Privacy Act and the Rehabilitation Act.[9]  An employer may ask a medical professional to review the documentation.  Many Federal agencies, including the Department of Education, use the Public Health Service's Medical Review Officer (MRO) for this purpose.  The MRO's role is to evaluate the accuracy and completeness of the documentation, to advise Department managers on the severity and nature of the employee's impairment, and to advise whether a proposed accommodation is likely to be effective, given the functional limitations described.  The MRO does not determine whether to grant an accommodation or whether an undue hardship exists.  Those are management decisions that can only be made by the employee's supervisor in the context of the job duties, workplace structure, and overall resources of the organization.


## B10.    Reassignment

If an employee with a disability can no longer perform the essential functions of his/her current position because of the disability, and there is no accommodation that would enable him/her to do so, the employer shall offer to reassign the employee to a vacant position at the same grade or offer the employee a voluntary downgrade.  Reassignment is the accommodation of last resort, when nothing else works.  The Department does not have to create a position or assist the employee in becoming qualified, but shall offer to reassign the employee to a vacant position if one is available within a reasonable amount of time.  Even if a notice has been posted and applications are being received, a position is still considered vacant if it has not been filled.  The disabled employee must be qualified for the vacant position (with or without reasonable accommodation), but does not have to be the 'best qualified', that is, the employee does not have to compete for the position.

---

[9] Certain disclosures of employee medical records for statistical, reporting, and security purposes are permitted under the Privacy Act.  See the text of the Privacy Act at 5 USC §552a, and the OPM regulations on the Employee Medical File System of Records, OPM GOVT-10.  See also the Privacy Act statement on the bottom of the Reasonable Accommodation Request Form.

The employer must reassign the individual to a vacant position that is equivalent in terms of pay, grade, or other factors such as location, if the employee is qualified.  If no vacant equivalent position is available, the employer may offer the employee a voluntary downgrade to a lower-graded position for which he/she is qualified.  If there are several lower-graded positions available, the employer must offer the individual the vacancy that most closely resembles his/her current position in terms of pay and grade.  The employer must look for vacancies in all offices, branches, locations, and facilities, and must provide the reassignment even if it does not normally permit transfers between branches or offices.[10]

## B11.    Interviewing and New Employees

Most of the information in this handbook is geared toward accommodating current Department of Education employees.  Qualified applicants with disabilities also are entitled to reasonable accommodation in the job-application process so that they can be considered on an equal basis with other applicants.  There is a wealth of information available on how to conduct a job interview in a non-discriminatory manner, including what disability-related questions and pre-employment medical examinations are permissible.  Interviewers and hiring managers should consult this material for legal guidance on these issues, which are beyond the scope of this handbook.

---

[10] For more information, see questions 25-31 in the EEOC's *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act.*  See also 29 CFR Part 1614.

Applicants with disabilities may be hired using the Schedule A excepted appointing authority. These non-competitive appointing authorities may be used for an individual even if selected through a competitive process, or they may be used for a non-competitive hiring process. The OM Human Resources Services Personnel Staffing Specialists and the Regional Human Resources Services Representative an assist managers with Schedule A hiring information.[11]

Please be aware that all resources provided by ED for accommodating employees with disabilities or providing access for customers also are available for accommodating job candidates throughout the application process. This includes materials in Braille, audiotape, or other alternate formats, use of interpreter services, assistive devices for interviewing, and other resources. All applicants must be notified that accommodations for disability are available if needed. All ED vacancy announcements should include standard language stating that accommodations for applicants with disabilities are available upon request, and should list a contact for these requests.

In general, interviewers may not ask job applicants any disability-related questions, or any questions likely to reveal the existence or nature of a disability. Before an offer has been made, if an applicant has an obvious disability or has voluntarily disclosed a disability, the interviewer may ask him or her how he or she will perform specific functions of the job, and may ask what type of reasonable accommodation will be needed. After a conditional offer has been made, the employer may ask whether the applicant will need reasonable accommodation for anything related to the job.

Where information about a candidate's disability is volunteered or is plainly obvious, questions about reasonable accommodation should be limited to job functions that are clearly affected by the disability. The hiring manager should accept a candidate's assertion that he or she is able to perform specific job functions with a given type of accommodation. For example, it may be legitimate to ask a candidate who is blind how he or she would handle incoming mail or paper documents, and what type of accommodation might be needed. If the candidate states that he or she is able to fully perform these job functions with the reasonable accommodation of a scanner, screen-reader software, and occasional assistance from a reader, the hiring manager should assume that this is correct, and evaluate the candidate on the same basis as a non-disabled candidate whose ability to perform these job functions has not been questioned. If the candidate who is blind is offered the job that is when the manager should ask more specific questions about the type of accommodation needed, in order to effectively provide the appropriate tools for the new employee to do his or her job.

Supervisors who have a new employee with a disability should make full use of the reasonable accommodation process right away so that the individual can be immediately productive. Begin discussing accommodations with the employee as soon as the job has been offered and accepted. It may take a few weeks to order equipment or make necessary changes, and it is best to make the arrangements beforehand so that the accommodations are ready when the new employee reports to work.

---

[11] See 5 CFR §§ 213.3102(t), (u) and (gg).

For more information, please consult the EEOC's *Enforcement Guidance: Pre-Employment Disability-Related Questions and Medical Examinations*.

## C.    DEPARTMENT OF EDUCATION POLICY

### C1.    ED's Reasonable Accommodation Policy:  Provide the Tools to Do the Job

The Department of Education's goal is to be a model among Federal agencies for a prompt, fair and efficient reasonable accommodation process.  For many years, the Department has been ranked first among all Cabinet agencies in the percentage of employees with severe disabilities, and has been near the top in overall percentage of employees with disabilities.  In part, this is because the Department administers programs and services that deal with disability-related subject matters such as special education, vocational rehabilitation, and civil-rights enforcement. Many of the individuals with subject-matter expertise in these areas also have personal experience through having a disability or having a family member with a disability.  This has created an institutional culture that values and relies upon the contributions of employees with disabilities.

The basic purpose of the reasonable accommodation process is to make sure that accommodation requests are evaluated quickly and fairly, in accordance with the law.  Employees with disabilities must have the tools to do their jobs effectively and on an equal basis with their non-disabled peers, because enabling employees with disabilities to be productive members of the workplace benefits everyone.  The Department's goal is to approach accommodation decisions by figuring out the most productive solution to the problems presented.

### C2.    Confidentiality

The law clearly states that all information about employees' disabilities or impairments must be kept confidential, and it is the Department's policy that anyone involved with a reasonable accommodation shall uphold the highest standards of confidentiality and respect for the privacy of individuals with disabilities.  The Rehabilitation Act and the ADA require that medical information or documentation of an employee's impairment or disability must be kept in a separate file from normal personnel records.  Because these records are in a 'system of records' governed by the Privacy Act, medical information can only be disclosed consistent with the Privacy Act.  There are certain routine disclosures, such as those for required statistical and public-health reporting, litigation or law-enforcement investigations, security clearances, and other statutory, regulatory, or administrative purposes.[12]

Generally, the fact that an employee has a disability or impairment or has requested or received a reasonable accommodation should be shared only on a need-to-know basis with those directly involved in making the decision or providing consultation.  For example, supervisors, executive office personnel, or staff in OM offices such as Human Resources Services, Facilities Services, Section 504/Disability Policy, OCIO Technology Center/Assistive Technology Team, or the Office of the General Counsel may need to see information about an employee's impairment or medical condition in the course of assisting with the request.  Each of these offices must respect the employee's confidentiality and share only the information necessary to properly complete the

---

[12] For more information, please see the text of the Privacy Act at 5 USC §552a, and the OPM regulations on the Employee Medical File System of Records, OPM GOVT-10.

accommodation request.  Disclosure to other individuals, for example, those who need to be informed to provide oversight of a situation or because the accommodation will affect their conditions of employment, must be consistent with the Privacy Act.  Even if the employee chooses to disclose his or her disability or it is obvious to a casual observer (for example, the person uses a wheelchair), others must still treat additional information such as the cause, diagnosis, or nature of the accommodation, as confidential unless the employee has clearly indicated otherwise or if disclosure is permitted by the Privacy Act.

**C3.    Difficult Issues:    Restructuring Duties, Performance Problems, Conduct and Attendance**

Many reasonable accommodation requests are simple to resolve, and require only the application of common sense, understanding, and perhaps the purchase or modification of equipment.  Other requests are more difficult because they may involve restructuring of job duties in ways that raise questions about whether the person is a 'qualified employee with a disability' or about fundamental alteration of the workplace.  When questions like these arise, a step-by-step analysis is essential to ensure that it is truly a disability-related reasonable accommodation issue, and that all options have been considered before invoking undue hardship as a reason not to accommodate.  These steps may include a task analysis of the job to determine which duties are 'essential functions' as defined by the law; a determination of the workflow of the office; an exploration of functional limitations imposed by the disability or impairment and the effect of the functional limitations on the job tasks (with review of medical documentation if necessary); and an analysis of how shifting job tasks would affect the essential functions and office workflow.  If restructuring shifts too many tasks to others in the office, it may create an undue hardship and therefore not be reasonable as an accommodation.  But if restructuring allows an employee to switch non-essential job duties with another employee or to change the manner in which he or she performs essential functions, it may be a creative and effective accommodation solution.  The analytical steps outlined in the *Reasonable Accommodation Procedures Checklist* may be helpful.  Both employee and supervisor are strongly encouraged to work collaboratively and to consult with the Section 504 Coordinator or Human Resources Services Representative for assistance in conducting the analysis and developing a solution. An HRS representative (specifically, a Classification Specialist) will be consulted to ensure that the proper classification of the proposed restructured position occurs.

When a reasonable accommodation request is accompanied by performance, conduct or attendance problems, or when the request is submitted only after a disciplinary action, it can become difficult to separate the disability issues from other issues.  However, the legal requirements of the reasonable accommodation process do not change or disappear when conduct or performance issues arise.  Often, the crucial first step will be to determine whether the employee's impairment does in fact constitute a disability under the law.  If it does not, then the reasonable accommodation process does not apply.  If it does, then the Department must give full consideration to the accommodation request regardless of any other personnel actions under way.  For performance problems related to speed or completion of work, the first question should be whether accommodation would alleviate the problem.  If a conduct problem is related to the disability, the supervisor may discipline the employee for events that happened before the

employee disclosed the disability. Supervisors must make accommodations after the disclosure, but may still discipline the employee for events occurring after the disclosure.  Violence, intimidation, theft and illegal drug use need never be tolerated, regardless of what causes the behavior.[13]   For more information, please consult the Department's policies on workplace violence, including prevention strategies.  Department policy on "*Workplace Violence Prevention*" can be found in the Human Resources Services Library on ConnectED. Supervisors are strongly encouraged to contact the Employee Relations Team or Regional Human Resources Services Representative whenever a performance or conduct problem arises.

## C4.     Alternative Work Schedules, Leave, and Reasonable Accommodation

The Department has several alternative work schedules available, such as compressed work weeks with flex days, part-time, gliding schedules, and a variety of starting times for standard schedules.  Credit hours, when permitted, may allow employees the flexibility to meet cyclical changes in workload or personal needs.  For example, some employees who have custody of school-aged children on alternate weeks are permitted to work long hours one week and short hours the next week.  These alternative work schedules should be available to disabled and non-disabled employees alike, in accordance with policies established by each office.

Regulations related to accrual and use of annual leave, sick leave, leave without pay, administrative leave, credit hours, compensatory time, and religious compensatory time are set on a government-wide basis by the Office of Personnel Management.  The Department of Education has its own policies and practices to implement these government-wide regulations. Please refer to the appropriate Personnel Manual Instruction (PMI) document in the Human Resources Services Policy Library on ConnectED for specific information on these and other personnel-related topics.  Policies on government closings, liberal leave, or excused absences due to inclement weather, natural disasters, or unusual events are determined by appropriate regional authorities cooperatively and are implemented individually by each agency.  All of these policies should apply to all employees both with and without disabilities in the same manner.

However, some employees with disabilities may need additional flexibility in work hours or use of leave, as a reasonable accommodation.  Some individuals are unable to work the standard eight-hour tour of duty, but are still able to complete a 40-hour workweek by working at different hours.  A request for changes to the employee's work schedule should be evaluated using the same standard as for other reasonable accommodation requests:  will it be effective in accommodating the disability, and does it cause an undue hardship for the Department? Oftentimes, flexibility in normal leave-request procedures or hours of work is a necessary and effective accommodation for employees with psychiatric disabilities, or with disabilities such as multiple sclerosis or rheumatoid arthritis that can vary considerably from day to day.  Sometimes it will not be possible for an employee to perform certain job functions during non-standard

---

[13] A person currently engaged in the illegal use of drugs is excluded from the definition of a "qualified person with a disability."  However, a person who has successfully completed or who is participating in a supervised rehabilitation program and is no longer engaged in the illegal use of drugs is legally protected from discrimination on the basis of past drug use.  Such an individual may be entitled to an accommodation if there is some other impairment that substantially limits a major life activity.  See regulations at 29 CFR §§1630.3(a) and (b).

hours, but this should be evaluated on a case-by-case basis. In order for the accommodation to be effective, the employee must be able to perform all essential job functions. The Department may modify its standard policies on use of leave or working hours if necessary to accommodate an employee with a disability. Supervisors and employees are encouraged to consult with the Alternative Work Schedules coordinator in OM's Work/Life Programs Team, the Section 504/Disability Policy Coordinator, and Human Resources Services for questions about non-standard schedules and leave. If performance or quantity of work performed is a concern, managers and employees should together map out some productivity measures that can be used to evaluate the employee's performance and the effectiveness of the accommodation.

## C5.    Flexiplace and Working at Home as a Reasonable Accommodation

Flexiplace, now known in ED as Telework, also is known as flexible workplace, work-at-home, or telecommuting. Participation in this program is a benefit available to all qualifying ED employees, with supervisory approval, to enable them to work at an alternate worksite on a regularly scheduled or on an as-needed basis. The established Flexiplace program is governed by Personnel Manual Instruction (PMI) 368-1. A Flexiplace work agreement is required for all participants. Application to this program must be made in writing and should address the position and employee criteria, which are set forth in the PMI. Individual Principal Offices within the Department may apply flexibility in implementing the program, within the scope of the policy. Supervisors can exercise considerable judgment in working out Flexiplace arrangements with the employee. Generally, employees work from an alternate worksite two or three days per week. For questions about Flexiplace, please contact the OM/HRS Work/Life Programs Flexiplace Coordinator.

Working at home or at other alternate worksites as a reasonable accommodation should not be confused with Flexiplace. Flexiplace is a neutral benefit that should be granted or denied without regard to an employee's disability. In contrast, if an employee requests that he or she be allowed to work at home or at other alternate worksites as an accommodation to his/her disability, this request should be evaluated as a reasonable accommodation request, not as a request for Flexiplace. The employee must articulate the disability-related reason for working at home and why working at home will enable him or her to perform the essential functions of his or her job. Some examples of disability-related reasons for working at home are difficulty of travel in the winter months, fatigue due to travel time, or a need for frequent breaks or lying down briefly. The supervisor should determine whether the employee has adequately documented the disability and effectiveness of the proposed accommodation; whether working at home some or all of the time affects the employee's ability to perform the essential functions of the job or creates an undue hardship for the agency; and whether there is another accommodation that will be effective. This is the same analysis as that used for other reasonable accommodation requests.

If the employee and supervisor together determine that working at home or at other alternate worksites is indeed a reasonable accommodation, they should use the Flexiplace program procedures to create an arrangement for working at home. Use of the Flexiplace program is desirable because it contains liability provisions and requires the employee to certify that the

alternate worksite is safe.   However, when using Flexiplace as a means of providing an accommodation, it is important to remember that the law requires the Department to modify its policies and procedures when necessary to provide equal access for persons with disabilities. This allows the Department to modify the Flexiplace policy and procedures as necessary to fully accommodate an employee.  If done, this should be spelled out in writing as a part of the Flexiplace agreement or in another document.  For example, an employee might work at home four or five days a week, or might use Flexiplace on an as-needed schedule due to unpredictable changes in health conditions.     However, the same performance, accountability, and communication expectations should be maintained for all employees working off-site regardless of whether they are on standard Flexiplace or accommodation-related work-at-home.

Disabled employees whose accommodation does not require working at home may still want to participate in Flexiplace for the same reasons as their non-disabled colleagues:  reduced commute, greater contact with family, increased productivity, reduced air pollution, and other factors.  Because their participation in Flexiplace is unrelated to the disability, these employees must meet the same eligibility criteria and other features of the Flexiplace program.  However, the unavailability of specialized technology off-site is often a barrier.  Many offices provide surplus computers or require employees to have their own equipment if they wish to use Flexiplace; this approach is fine for employees who can use standard computers.  Employees who need specialized equipment just to use a computer may not have this option.   The Department needs to provide accessible equipment for both the office and the Flexiplace work site if a qualified person with a disability needs it as a reasonable accommodation in order to participate in the Flexiplace program.   If an office provides any computer equipment for employees on Flexiplace, it must provide adaptive equipment for a disabled employee who is using Flexiplace and who does not have his/her own equipment.  Generally, the Principal Office will provide the basic computer compatible with assistive technology, and the Assistive Technology Team will provide the adaptive equipment.   Supervisors and employees should contact the OM/HRS Section 504 Coordinator and/or the OCIO Technology Center/Assistive Technology Team for guidance.

If an employee with a disability is working at home or at an alternate work site as a reasonable accommodation, ED must provide him or her with all equipment needed to perform the essential functions of the job at home.   If the disabled employee is using Flexiplace, but not as an accommodation, then ED's obligation is simply to provide a comparable level of functionality that it might provide to other employees on Flexiplace.  For example, someone working at home full-time as an accommodation might need a computer with adaptive equipment, fax machine, printer, and second phone line, while someone on standard Flexiplace might get only a computer with the appropriate adaptive equipment, but no printer or fax machine.  Generally, ED does not provide furniture or physical modifications for home worksites.  An employee with a disability who is using a telecenter as his or her alternative worksite should have access to adaptive computer equipment or other accessibility aids as needed; ED will negotiate with the telecenter management to ensure that access is provided.  Each employee's needs should be evaluated on an individual basis.

**C6.     Workers' Compensation and Reasonable Accommodation**

Workers' compensation law exists to provide a fair and prompt settlement of employees' claims when they suffer an occupational injury or illness.   The process of determining workers' compensation benefits has no effect on the individual's legal protections under the Rehabilitation Act.

An employee who is injured on the job may be entitled to reasonable accommodation if the injury results in a disability as defined by the Rehabilitation Act.   His or her impairment(s) should be accommodated through the same process and with the same promptness as any other reasonable accommodation request.   For more information, please see the EEOC's *Enforcement Guidance on Workers' Compensation and the ADA* and *Enforcement Guidance on the Effect of Representations Made in Applications for Benefits on the Determination of Whether a Person Is a "Qualified Individual with a Disability" Under the ADA*.   For information on ED procedures for workers' compensation, or to obtain incident report/claim forms, please contact the Health and Environmental Safety office in OM or the Regional Human Resources Services Representative.

**C7.     Union Role in Reasonable Accommodation**

The union can play any one of three possible roles in the reasonable accommodation process:

1.  To act as an advocate for an employee with a disability if asked, and to represent that individual in reasonable accommodation negotiations with management;

2.  To represent the interests of other bargaining-unit employees (with or without disabilities) who are affected by an employee's accommodation or lack thereof; and

3.  To negotiate variances to the Collective Bargaining Agreement if necessary for an accommodation.

The union is responsible for representing the interests of bargaining-unit employees.   An employee may ask a union representative to act as his or her representative in conveying information to and from management, and may choose to disclose personal or medical information regarding his or her own disability or impairment to enable the union representative to fulfill this role.   If an employee has union representation, the employee must provide written designation of representation.   The union also may represent other employees in an office who feel that a co-worker's accommodation has an impact upon their ability to perform their jobs, or that management's failure to accommodate a co-worker affects their working conditions.   If an employee with a disability's requested accommodation will affect other bargaining-unit employees' conditions of employment, the supervisor may be required to notify the union and afford the union an opportunity to negotiate with respect to the effect on bargaining-unit employees.   If both the disabled employee and the other employees are bargaining-unit members and ask for assistance, it is the union's internal decision about whom to represent in reasonable accommodation situations.

In all cases, however, the union representative must abide by the same confidentiality requirements that apply to all parties in the reasonable accommodation process. Information about the employee's impairment or disability, medical details, or even the fact that the employee is asking for or receiving a reasonable accommodation, must be shared <u>only</u> with individuals who need to know because they are directly involved in making the reasonable accommodation decision or providing consultation. If the union is negotiating variances to the Collective Bargaining Agreement or is acting as a representative for a bargaining-unit member in reasonable accommodation negotiations, it should seek a medical release from the employee.

For assistance with reasonable accommodation questions related to the union and collective-bargaining issues, please contact the Department of Education's Union, the American Federation of Government Employees (AFGE-Local 2607 in Headquarters), the Labor Relations Team or the Regional Human Resources Services Representative in OM, or the Section 504 Coordinator in OM's Work/Life Programs Team in Human Resources Services.

### C8.     Reasonable Accommodation for Volunteers, Part-Time Employees, Student Interns, Detailees, and Temporary Employees

The Department of Education's policy is to provide reasonable accommodation for volunteers, part-time employees, student interns, detailees, and temporary employees who are qualified individuals with disabilities. These employees should be treated just like regular full-time employees, and should go through the normal process of determining whether the person has a disability and providing reasonable accommodation. With short-term employees (as with all employees), accommodations should be provided quickly. It is best to make arrangements with the employee beforehand so that the accommodation can be in place when he or she starts work. Employees who are on detail from another Federal agency should be treated like Department of Education employees with respect to accommodation issues, even though they technically are still employed by their home agency. It may be possible for detailees to bring some accommodation items with them for the duration of the detail.

### C9.     Reasonable Accommodation for Contractor Employees

A contractor is a private company that has a contract with the Department of Education to provide certain products or services. Therefore, the contractor, not the Department, is primarily responsible for providing reasonable accommodation for its employees with disabilities.[14] Questions about accommodations for contract employees should be discussed with the OCFO Contracts and Purchasing Operations office, OGC or the OM Section 504/Disability Policy Coordinator.

---

[14] There are some limited exceptions where ED could be considered a 'joint employer' for the purpose of Federal EEO laws. It depends on the nature of the services and the degree of control ED exercises over the means and manner of the contract employees' work. For more information, see the EEOC's *Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms.*

## C10.  Service Animals

Some Department employees with disabilities use service animals to assist them with transportation, mobility, activities of daily living, or work-related activities.  Most service animals, but not all, are dogs.  Many service animal users are blind or visually impaired people who use dog guides, but people with other disabilities use service animals for a variety of functions as well.  "Hearing dogs" may alert deaf or hard-of-hearing individuals to sounds or dangers in the environment; wheelchair users may have a dog retrieve dropped items or fetch things; and mobility-impaired employees may use a dog to help balance while walking.  If an employee needs a service animal in the workplace or because the animal assists with transportation to and from work, the Department must allow the animal to be present.  The Department also must allow the employee to care for the animal by taking it out periodically and giving it food and water during the day.  The Department may grant administrative leave to service-animal users who need to be absent from work to receive training with the animal. The employee may be asked to provide documentation to support a request for administrative leave.

The Department may not require that a service animal have any certification or specialized training, though most animals do have some sort of certification or specialized training.  The Department may require that a service animal have the proper license and immunizations required by the state or county of residence.  The employee is responsible for ensuring that the animal is properly trained and behaves appropriately in the workplace.  If an animal behaves inappropriately, such as by barking, growling, or threatening others, the Department may ask the employee not to bring it to work until it can be trained to behave properly.  If other employees are allergic or are otherwise disrupted by the presence of the animal in the workplace, the disabled employee and his/her supervisor must try to resolve the problem.  For example, a dog may simply need a clear area under a desk to rest, or office space can be reconfigured to minimize contact between an allergic employee and a service animal.   There may be environmental or animal-care measures that can reduce allergens, such as special dog shampoos, that eliminate dander.  If there is no way that the animal can safely remain in the employee's immediate work area but the employee needs it for transportation, the employee and supervisor will explore the option of relocating the employee and animal to a more appropriate environment.

**C11.    Interpreters, Readers, and Personal Attendants**

Providing reasonable accommodation may require interpreters for employees who are deaf or hearing-impaired, readers for employees who are blind or who have low vision, or personal attendants for employees with mobility impairments.  The Department has mechanisms in place to obtain and fund these services.  Fear of high costs or FTE limitations should *never* be a barrier to providing these reasonable accommodation services to those who need them.  The Department has established a pool managed by the Office of the Deputy Secretary (Budget Services) that can be used to fund interpreter, reader and personal attendant positions in any Principal Office. Individuals who provide these services to disabled employees can be hired under the excepted Schedule A hiring authority.  Executive Offices should contact the Section 504 Coordinator in OM for assistance with the funding and hiring processes.  For more information, see Sections D8, *Funding for Reasonable Accommodation*, and D9, *Hiring and Appointing Authorities* in this Handbook.

Determining the need for an interpreter, reader or personal attendant should be done through the same process as for any other reasonable accommodation request.  Some employees need a full-time interpreter, reader or attendant assigned to them because the nature of their disabilities or the nature of their work requires that the service be available at all times during working hours, even though it may not be used continuously.  For example, some deaf employees have positions that require frequent, unscheduled meetings, or they perform work that requires a high level of technical or specialized vocabulary to interpret effectively and therefore benefit from having a full-time interpreter assigned to them.  Other employees may neither need nor desire a full-time reasonable accommodations provider (interpreter, reader or attendant).  For example, some blind employees have found that with scanners, electronic documents and screen-reading technology, they no longer need a full-time reader and prefer to have a part-time reader at scheduled times during the week to assist with mail, filing, and other specific tasks.  Another option is for several employees who need interpreting or reading services on a part-time basis to share the services of one interpreter or reader; all parties involved must negotiate a mutually agreeable division of the service provider's time and schedule.  The employee's own estimation of his or her level of need for interpreting, reading, or attendant services should be given primary consideration in deciding how to provide these services.

Determining the need for personal attendant services may be more difficult than determining the need for readers and interpreters.  Many of the services provided by an attendant are not strictly job-related, but may be necessary for the employee to be able to work and can be considered as part of a reasonable accommodation request.  For example, some employees with severe mobility impairments need attendant services to use the restroom, to remove or put on a coat, or to assist at mealtimes.  Individuals who need these services also are likely to need assistance with minor job-related tasks such as filing documents, reaching supplies, or other office functions. When the services needed are personal in nature, such as assistance with the restroom or with mealtimes, it is preferable to hire a designated attendant so as to maintain a professional relationship with other employees.  When the services are incidental or not as personal, such as helping with coats or filing, it may be appropriate to ask other employees to assist the employee with a disability.  This arrangement should be formalized if it occurs regularly or takes more than a few moments, and there should be designated back-up if the person who normally performs

these functions is unavailable.  Supervisors should first consider alternative approaches before assigning such responsibilities to another employee.

Some staff interpreters, readers, and attendants who are assigned to a specific employee also may take on non-grade-controlling program assistant duties to fill in the times when they are not providing direct service.  The program duties must always remain secondary because the employee's primary responsibility is to provide the specialized services for which they were hired.  Assignments for program-related duties should not interfere with the reader, interpreter, or attendant's ability to provide the primary services when needed.

The relationship with an interpreter, reader, or personal attendant can become a close and mutually beneficial partnership. Whenever possible, the employee with a disability who uses these services should direct the work activity of the interpreter, reader, or personal attendant assigned to him/her in order to best manage the provision of services.  If this is not possible because the employee's position is not defined as a supervisor or because the services are split among several people, the disabled employee and service provider should have the same supervisor. The supervisor then ensures that the services are adequately delivered and that the accommodation is effective.  The supervisor and employee with a disability should develop criteria to define acceptable levels of service and ensure that the disabled employee has maximum control over the manner in which the services are provided.  The person directing the work activity also should ensure that the service provider has some control over his or her working conditions and that the relationship is structured fairly and efficiently for both parties. Any employee who directs the work activity of a service provider will receive training to effectively perform such responsibilities and will be held accountable for them by their supervisor.  Note that directing the work activity of a service provider may or may not equate to being a supervisor under classification standards.  Should conflicts between the employee with a disability and his or her service provider arise when the employee with a disability is a supervisor, either party can present these concerns to the second-level supervisor for resolution. Under no circumstances should interpreters, readers, or attendants be required to work overtime without <u>appropriate</u> compensation, i.e., overtime pay, compensatory time, as appropriate.

Whenever possible, the employee with a disability should have input into the hiring process, particularly for interpreters, readers, or attendants who will be assigned to an individual or who will be providing one-on-one services.  This may include developing the position description and hiring criteria, or helping with recruitment.  At a minimum, the employee with a disability should participate in interviews and have input into the final hiring decision even if he or she will not actually supervise the service provider.  When several employees with disabilities will be sharing the services of one service provider, all of them should have some input into the hiring process. For unassigned or "pool" interpreters or readers, disabled employees who are likely consumers of the service should be involved in the hiring process, particularly in defining the necessary qualifications and in interviewing candidates.  Because these interpreter, reader, and attendant positions are eligible for Schedule A excepted appointments, there is flexibility in hiring.  This flexibility can be used to hire a candidate who is the best "fit" in terms of personality, work style, or other characteristics that may be important given the confidential and sometimes intimate nature of the services to be provided.

**C12.    Transportation for Work-Related Activities**

The Department's policy is to provide reasonable accommodation when needed for transportation for work-related activities.  If an employee is traveling locally for meetings, site visits, or other activities, and transportation is normally provided or reimbursed for such an activity, then an employee with a disability is entitled to accessible transportation or appropriate reimbursement for the cost of providing it.  The Department has two lift-equipped vans in its motor pool for use by headquarters employees; employees who use wheelchairs have priority over all other users in reserving these vans.  The Department is working to secure accessible vans in regional office motor pools and will provide an accessible vehicle through rental or contract if necessary.  All Government shuttle services, whether operated by the Department or other agencies, are required to be accessible to people with disabilities.  All of the headquarters shuttle buses have wheelchair lifts.

If a non-disabled employee would normally travel by taxicab or personal vehicle, but a disabled employee is unable to do so because of his or her disability, the Department will provide accessible transportation or reimburse the employee for the cost of it, even if the cost is more than usual.  For example, if an employee who uses a motorized wheelchair regularly travels to local meetings that are not served by accessible public transportation, and cannot use taxis, the Department can use the accessible vans in the motor pool to provide transportation even if the motor pool would not normally be used for this purpose.  Or, if a blind employee must travel to locations where public transit is not available or would take an extremely long time, the Department must provide or reimburse the employee for the cost of taxi fare or a car service, even if it would ordinarily expect a sighted employee to drive a personal vehicle and be reimbursed only for the cost of mileage.

The Department is not responsible for employees' transportation to and from work, and has no obligation to provide such transportation.  If an employee is experiencing difficulty with accessible transportation, such as local paratransit services (specialized accessible public transit) being unreliable, or is having difficulty negotiating surface streets due to snow or other environmental conditions, the employee may request a schedule change or a modification of leave or attendance policies as a reasonable accommodation.  Some employees with mobility impairments may find that occasional flexiplace is an appropriate accommodation to request in areas where winter weather is severe or if the disability is exacerbated by summer heat or other environmental conditions.  If an employee has a disability that makes it difficult to use public transportation and must drive to work, he or she is entitled to priority in assignment of parking spaces.

Most Department of Education facilities are located near public transit.  There must be an accessible path of travel within the boundaries of the facility from the nearest public transit stop to the Department's facility, as required by the accessibility standards for Federal facilities. [15] When necessary, the Department has negotiated with local authorities to ensure that curb cuts are present on the corners of public streets in the immediate vicinity, as required by the ADA.

---

[15] See 36 CFR §§ 1190 and 1191.1. Chapter XI –Architectural and Transportation Barriers Compliance Board, Minimum Guidelines and Requirements for Accessible Design and ADA Guidelines for Buildings and Facilities.

**C13.    Official Travel and Reasonable Accommodation**

When an employee with a disability is traveling on official government business, the Department must provide reasonable accommodation for the duration of the travel, including transportation, lodging, and conference or meeting sites.  This may include modifying travel policies or acting as an intermediary with transportation or lodging providers to ensure that their services are accessible.  It also may include assisting employees with administrative complaint procedures if a third party fails to provide legally required accessibility features or services, thus limiting the employee's ability to carry out official functions and having a detrimental effect on the Federal government's interests.

If an employee with a disability requests not to travel or to modify proposed travel requirements as a reasonable accommodation, the Department should treat such a request as it would any other accommodation request that involves switching of job duties or changing of schedule.  The Department should ask questions such as: Is the requirement to travel an essential job function?  Can the conditions of travel be modified in order to accommodate the employee's disability, such as scheduling flights earlier or later, or allowing greater rest time between meetings or strenuous events?  Can the work be accomplished without traveling?  If travel is not an essential job function, can other employees take on some of the travel-related duties, in exchange for the disabled employee taking on some non-travel duties?

Travel policies may be modified in order to accommodate employees with disabilities.  For example, most airplanes do not have wheelchair accessible restrooms; so many employees who use wheelchairs prefer to change planes so that each flight is shorter rather than flying nonstop coast-to-coast.  Others prefer to take a non-stop flight to minimize the difficulty of transferring and having a wheelchair taken to and from baggage claim.  Some blind employees prefer to change planes in airports that they can navigate independently rather than having to depend on an airline-provided escort who may not be prompt.  Such requests should be accommodated even if it means flying on an airline with which the government does not have a contract.  The travel office can grant a waiver to allow an employee to fly a non-contract airline for a legitimate reason, such as no contract carrier being available, or for reasonable accommodation.  The practice has been to grant such waivers on a case-by-case basis.  Ground-transportation travel policies may be modified as discussed above in Section C12, *Transportation for Work-Related Activities*.

The Department should ensure that employees with disabilities are appropriately accommodated in travel, lodging, and other services.  For example, just as the Department's contract travel agency honors requests for an aisle seat on an airplane or a non-smoking hotel room, the travel agency also must ensure that a hotel will provide a wheelchair-accessible room for a mobility-impaired employee or a room with a visual alert for the fire alarm and a TTY phone for a deaf employee.  Another example is reserving a rental car with hand controls for a person who cannot operate floor pedals with his or her feet.  The contract travel agencies maintain a profile for each Department employee who travels, and they can include accessibility needs in the travel profile.  It is important for employees with disabilities to make their needs known when arranging for travel.    Department staff responsible for arranging travel and preparing vouchers and

authorizations should be aware of the access needs of travelers with disabilities, and ensure that the travel agency and any travel services provide what is needed.

Employees who use interpreters, readers, or personal attendant services as a reasonable accommodation may need such services while on official travel. These services can be provided by having a staff interpreter, reader or attendant travel with the disabled employee, by obtaining contract services at the destination, or by a combination of these methods. If a service provider is traveling with a disabled employee, the service provider also is on official travel, and the Department must pay for any associated expenses. If an employee uses a personal attendant or medical services such as a respirator at home but not during working hours, and will need the services when traveling, the Department must pay for the attendant's travel expenses and/or the cost of bringing or purchasing the medical services while on travel. If the employee normally pays an off-hours attendant's salary, the Department need not reimburse that salary; however, if a disabled employee's regular attendant is unable to accompany him or her on travel, the Department must pay the salary and expenses of a substitute attendant for the duration of the official travel.

Most transportation and lodging services have independent obligations under the Americans with Disabilities Act to provide access to people with disabilities.[16] Hotels are required to have wheelchair-accessible rooms and hearing-access rooms, and must provide priority assignment to these rooms upon request. Car-rental companies are required to provide cars with hand controls upon request. Airlines are covered by the Air Carrier Access Act, and must reserve bulkhead seats for mobility-impaired travelers with specified disabilities upon request. They also must comply with regulations governing how wheelchairs are loaded into baggage and retrieved first, how passengers are transferred into special aisle chairs for boarding, and how airline personnel assist travelers with disabilities, including blind, deaf, and mobility-impaired passengers.[17] When a hotel, airline, or other travel service provider fails to meet its legal obligations in connection with an employee's official travel, the Department can assist an employee with a disability in filing an appropriate complaint. For example, the Department has assisted disabled employees who have filed complaints with the Department of Transportation alleging violation of the Air Carrier Access Act. Employees with disabilities who want assistance with complaints related to official travel should contact the Department's Section 504 Coordinator.

---

[16] Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation, which includes most hotels, car-rental agencies, and privately owned transportation services. See the Department of Justice's implementing regulation at 28 CFR Part 36. Transportation services operated by state, local, or municipal governments are covered by Title II of the ADA; see the DOJ regulation at 28 CFR Part 35.

[17] The Air Carrier Access Act (ACAA, 49 U.S.C. 41705) prohibits discrimination by U.S. and foreign air carriers on the basis of physical or mental disability. The Department of Transportation's 1990 rule (14 CFR Part 382) sets forth the standards of service that U.S. air carriers are expected to provide to disabled individuals.

## C14.    Facility Modifications for Reasonable Accommodation

All Department facilities must be accessible to people with disabilities.[18]   Federal facilities are covered by the Architectural Barriers Act and its accessibility code, the Uniform Federal Accessibility Standards (UFAS).[19]   Privately owned commercial space that the Department leases is covered by the Americans with Disabilities Act Accessibility Guidelines (ADAAG).[20] The two access codes are very similar.  The General Services Administration (GSA) helps the Department of Education manage its space in Federal buildings and private leased facilities; GSA and the Department both have a policy of adhering to the stricter portions of both access codes when renovating or constructing facilities.

Some Department employees, however, have disabilities that require changes beyond the code requirements to make a facility usable to the individual.  For example, the ADAAG and UFAS both require that interior doors can be opened with no more than five pounds of force, but some employees with muscular weakness or poor grip cannot open doors that meet that standard.  The Department's policy and the reasonable accommodation provisions of the law require that the Department make any necessary changes to its facilities to make them usable to specific employees.  This is so even if the facility changes go beyond what is required in the code, or are different than code; the changes must be made unless they cause an undue hardship to the Department.  For example, if an employee in a wheelchair cannot reach even a code-compliant set of elevator buttons, the Department must equip at least one elevator in the building with call buttons that are within that employee's reach, or make other modifications such as placing a reacher stick in the elevator.  Some employees with mobility disabilities need restrooms to be configured differently than specified in the accessibility codes.   In such a situation, the Department would modify an additional stall to meet that employee's needs or change an existing accessible stall if it could do so and still have the minimum number of code-compliant stalls.  Employees with disabilities who need facility modifications for access can consult with their supervisors, who in turn will consult with the Section 504 Coordinator and Facilities Services, if needed.  For more information, please consult the specific accessibility requirements of the ADAAG and UFAS.

---

[18]  The Department's Federally conducted 504 regulations at 34 CFR §105.33 state that "The standards of the Architectural Barriers Act (ABA) (42 U.S.C. 4151-4157), as established in 41 CFR 101-19.600 to 101-19.607, apply to buildings covered by this section."

[19] 36 CFR §§ 1190 and 1191.1. Chapter XI –Architectural and Transportation Barriers Compliance Board, *Minimum Guidelines and Requirements for Accessible Design* and *ADA Guidelines for Buildings and Facilities.*

[20] 28 CFR Part 36.

## D.     DEPARTMENT OF EDUCATION PROCEDURES

### D1.     ED Procedures for Reasonable Accommodation Decisions

The Department of Education has established standard procedures to ensure that reasonable accommodation requests are handled promptly and fairly.  Employees and supervisors should become familiar with the procedures and use them to work through reasonable accommodation requests; ideally, this should be a collaborative process.  Section F, *Reasonable Accommodation Procedures Checklist,* is designed to acquaint supervisors and employees with the process at every stage--from submitting and receiving the request to making a final determination. Supervisors have the responsibility for ensuring that reasonable accommodation requests are handled correctly and expeditiously.  Employees are responsible for providing accurate and complete information as necessary to establish the existence and nature of the disability and the need for accommodation, and they should also use the checklist to ensure that they understand their responsibilities.  The Department has established resources in a number of offices to help employees and supervisors with reasonable accommodation requests.  These offices, in-house experts, and external sources should be consulted as needed throughout the reasonable accommodation process.

---

**OUTLINE OF THE PROCEDURE FOR REQUESTING/
PROVIDING REASONABLE ACCOMMODATION**

1.  Employee makes accommodation request to supervisor.  The request must describe the claimed disability, how it affects the employee's performance of essential job duties, and how the requested accommodation would enable the employee to perform these duties.
    ➢ Supervisor reviews request.  Ideally, the supervisor and employee engage in an interactive process to resolve the request.

2.  Within 15 calendar days of receiving the request, supervisor responds to request or asks for additional information if necessary to determine whether the employee is a 'qualified individual with a disability,' and what type of accommodation may be effective.
    ➢ Employee and/or supervisor gather additional information if needed: medical documentation, needs-assessments and coordination with other offices.  ED Medical Review Officer's report, if needed, is considered part of this additional information.

3.  Within 15 calendar days after all additional information is complete, the supervisor makes two decisions:

    ➢ Whether the employee is/is not a 'qualified individual with a disability.'
    ➢ Whether to grant the requested accommodation, grant an alternative accommodation, or deny the accommodation altogether.

4.  The employee may request review by second-line supervisor if he/she does not agree with decision.  The second-line supervisor may consult with the Section 504 Coordinator, the Employee Relations Team, the Regional Human Resources Services Representative, and/or the Office of the General Counsel before deciding on the request,

within 15 calendar days of receipt.

These procedures are designed to follow the analytical framework expressed in the legal and policy guidance from the EEOC. This guidance suggests the following sequence for evaluating and responding to a reasonable accommodation request:

A.  determine whether the employee has a disability as defined by the law and what the functional limitations are;

B.  evaluate the impact of the disability on the employee's ability to perform the essential functions of the job;

C.  evaluate the requested accommodation or determine what accommodation will be effective; and

D.  determine whether the requested accommodation creates an undue hardship or whether there is an alternative reasonable accommodation.

## D2.     Time Frames for Reasonable Accommodation Requests

The law requires that requests for reasonable accommodation be acknowledged and acted on promptly, but does not specify an exact timeline. Department of Education policy is that a supervisor must respond to an accommodation request within 15 calendar days after receiving it. This response can be a request for additional information, or it can be the final decision. Whenever a final decision or other response can be provided before the full 15 days have elapsed, the supervisor should do so.     If documentation of the disability is requested, the employee must provide it in order for the process to continue, although the supervisor may, at his/her discretion, consider providing some accommodations in the interim. Providing such interim accommodations does not set a precedent or serve as evidence in determining that the employee has a disability as defined by law or that he/she needs a particular accommodation, nor does it entitle the employee to continuance of the interim accommodation.

After determining that the employee is a 'qualified individual with a disability,' if information is needed about equipment, workplace modifications, needs assessments, or other facts necessary to proceed with the accommodation, all parties involved should make a good-faith effort to obtain this information as quickly as possible. If long delays are anticipated in determining or providing an appropriate accommodation, the supervisor and employee should consider interim measures to enable the employee to perform the essential functions of his or her job or enjoy other benefits and privileges of employment. Such interim measures will not affect a final decision on whether to grant an accommodation request or on what accommodation is most appropriate. If outside vendors must be consulted for needs assessments, the supervisor should contact the Section 504 Coordinator to use reasonable accommodation funds for completing these steps; lack of funding should almost never be a reason for delay. The supervisor and employee should keep a written record of the dates of information-gathering activities.

Department policy does not assign a time limit to the information-gathering stage, but the expectation is that it will be as short as possible and will be managed so as to yield concrete results that the supervisor can use to evaluate the request and act upon it.

Once all the information is complete, including any medical or other documentation and consultation with internal or external experts, the supervisor has up to 15 days to evaluate the accommodation request and make a decision.  When possible, the supervisor should do it earlier rather than waiting for the full 15 days.  The employee must be notified in writing of the decision.  Once a decision is made to provide an accommodation (the requested one or an alternative accommodation), the supervisor must ensure that the accommodation is implemented promptly.  There is no specified timeline for completing the implementation of a request, but the expectation is that it will be done promptly.  If equipment is to be purchased or modifications are to be made to the workplace, these should be requisitioned immediately.  If it is apparent before the final decision that these purchases or modifications will be necessary, planning should begin as early as feasible.  If the accommodation involves a change in the way the employee's job is done, such as a schedule modification, work from home, flexibility of leave policies, or shifting of minor job duties, the supervisor and employee should create a written agreement as soon as possible if this was not part of the decision memo.  If the accommodation results in changes to job duties, this should be incorporated into the employee's EDPAS performance standards and/or position description.

If the employee disagrees with the supervisor's decision on the accommodation request, he or she may ask for the second-line supervisor to review the decision.  The second-line supervisor has 15 calendar days to complete the review.

### D3.    Tracking Reasonable Accommodations

The Department has a legal obligation to track all reasonable accommodations requested by and granted for applicants and employees.  Executive Order 13164, *Establishing Procedures to Facilitate the Provision of Reasonable Accommodation,* and the EEOC's policy guidance on implementing the Executive Order, state that an agency must be able to track the following information:

- "the number and types of reasonable accommodation that have been requested in the application process and whether those requests have been granted or denied;
- the jobs (occupational series, grade level, and agency component) for which reasonable accommodations have been requested;
- the types of reasonable accommodations that have been requested for each of those jobs;
- the number and types of reasonable accommodations for each job, by agency component, that have been approved, and the number and types that have been denied;
- the number and types of requests for reasonable accommodation that relate to benefits or privileges of employment, and whether those requests have been granted or denied;
- the reasons for denial of requests for reasonable accommodation;
- the amount of time taken to process each request for reasonable accommodation; and

- the sources of technical assistance that have been consulted in trying to identify possible reasonable accommodations."[21]

Because of this tracking requirement, employees and supervisors must notify the Section 504/Disability Policy Coordinator when a reasonable accommodation is requested or provided. The Section 504 Coordinator compiles this information in order to report to the EEOC as required, and to measure the Department's performance in handling reasonable accommodation requests appropriately.    This information also helps the Section 504/Disability Policy Coordinator identify successes and problem areas, and take corrective actions as necessary.  The Department's policies and procedures for providing reasonable accommodations are modified as necessary based on this data.

## D4.    Routine or Repeated Accommodation Requests

Some employees need routine reasonable accommodation services on a regular basis, such as employees with hearing impairments who use interpreting or CART services for meetings, or employees with visual impairments who need documents in Braille or audiotape.  When the services are provided within the Department, there is no need for the employee to notify his or her supervisor each time he or she requests such services.  The employee may simply notify the appropriate contact person that he or she needs the access service.  Other staff who interact regularly with such employees should be aware of these needs and should routinely request the services if they are setting up a meeting, distributing a document, or otherwise creating a work-related situation that will cause the employee with a disability to need access services.  When the access-related goods or services are provided by outside contractors, or such goods incur an expense to the Department each time they are used, the process for obtaining them should be as streamlined as possible and should require the lowest possible level of oversight or approval.

Employees who have previously demonstrated that they have a disability and have received an accommodation may sometimes need a new or different accommodation, or may need an upgrade of the current accommodation.  If the change in accommodation is a result of changes in the work environment, the employee does not need to submit additional documentation of the disability or need for accommodation.  For example, an employee who uses a wheelchair is in a work unit that is moving to a different office with new furniture.  The employee should be consulted to determine the height and configuration of the new desk and work area, but should not be asked to provide medical documentation.  If the Department is upgrading its computer systems and software, and this change requires an upgrade in the assistive technology used by a blind employee, he or she should receive the new equipment automatically as part of the upgrade and should not be required to provide any documentation of the disability or need for accommodation.

---

[21] See the *EEOC Policy Guidance on Executive Order 13164: Establishing Procedures to Facilitate the Provision of Reasonable Accommodation*, released by the EEOC on October 20, 2000.

If the change in accommodation is unrelated to changes in work conditions, but instead is related to a change in the disability, the employee may be asked to provide documentation of the need for accommodation if it is not obvious. The employee may not be asked again to document the disability itself if he or she has done so previously.[22] For example, if an employee has bipolar disorder and initially provides documentation from a psychiatrist that establishes that this is a permanent condition which may periodically flare up and require treatment, he or she does not need to re-submit documentation to establish the disability when requesting leave for treatment several years later. The employee only must submit documentation necessary to establish the need for the accommodation he or she is requesting at the time. Employees and supervisors who have questions about requesting a new accommodation for an employee who has previously established a covered disability should contact the OM Section 504/Disability Policy Coordinator or the Regional Human Resources Services Representative in Human Resources Services for assistance.

## D5.    Roles and Responsibilities of Employees and Supervisors

Because supervisors are responsible for implementing Department policy on reasonable accommodation, it is incumbent upon them to be knowledgeable about the law and to follow Department procedures. Employees also have the responsibility to establish the existence of a disability, to follow Department procedures, and to provide the information necessary to process and evaluate reasonable accommodation requests in a timely manner. This is a cooperative, interactive process in which both the employee and the supervisor must participate for it to be effective. The second-line supervisor and senior managers also are ultimately responsible for ensuring that the law and Departmental policy are followed. Other offices in the Department must cooperate in fulfilling reasonable accommodation requests for qualified employees with disabilities. For a description of employees' and supervisors' responsibilities at each step of the reasonable accommodation process, please see the ***Reasonable Accommodation Procedures Checklist***.

The employee's primary responsibilities are to:

1)  articulate a request for reasonable accommodation in a manner that demonstrates that he or she has a disability as defined by the law (a mental or physical impairment that substantially limits one or more major life activities);

2)  explain how the disability affects his or her ability to perform the essential functions of the job;

3)  explain what accommodation he or she needs and how it will remove barriers to performing the essential functions of the job; and

---

[22] See the EEOC's *Enforcement Guidance: Reasonable Accommodation and Undue Hardship*, particularly Question 8, Example B.

4) provide adequate medical documentation to establish the disability and need for accommodation if it is not obvious (including diagnosis, prognosis or other information as necessary).

The employee does not have to use the words "reasonable accommodation" or provide a detailed description in the initial request. However, he or she should be able to provide the information as needed to verify that the impairment described is a disability, and to address the supervisor's questions about what type of accommodation will be effective in removing barriers in the work environment. If an employee is unable or unwilling to provide the documentation required to fairly evaluate his or her request, the process cannot move forward. It is particularly important that an employee provide enough information to determine that he or she has a disability as defined by the law and needs the accommodation he or she is requesting. A statement from the employee's doctor that an employee needs a reasonable accommodation, such as a reassignment, without detailed documentation showing that the employee has a disability as defined by the law, is not sufficient.

The supervisor must be able to recognize a request for reasonable accommodation even if the employee does not use the term. If an employee is incapacitated and a request for accommodation comes from a third party, such as a family member notifying a supervisor that the employee has been hospitalized and needs to use leave; the supervisor must treat that request as though it came from the employee. If an employee is having difficulty on the job, the supervisor can inquire in general terms whether there are any factors that may be affecting the employee's job performance. Such an inquiry should always be coupled with an offer of assistance. Such an inquiry or offer of assistance, however, does not mean that the supervisor regards or perceives the employee as being disabled. The Department as an employer has the legal obligation to notify all employees of their rights under a variety of civil-rights statutes. This is usually accomplished through workplace posters, employee information packets, and other means of reaching all employees, but supervisors should be proactive in conveying information when there is a need.

Supervisors and employees should not hesitate to consult with experts if they have questions about reasonable accommodations. The Section 504/Disability Policy Coordinator can help with information, facilitation, and funding. Supervisors have the responsibility to seek out the appropriate guidance and resources to make sure that their reasonable accommodation decisions are correct and consistent with the law and Department policy. Supervisors are required to notify the Section 504/Disability Policy Coordinator when they provide an accommodation for an employee. Even if a supervisor is confident that he or she is making the right decision, the Section 504 staff may be able to provide additional resources. Section 504 maintains a record of reasonable accommodation made throughout the Department. If there are performance or conduct-related problems in addition to a reasonable accommodation request, the supervisor should consult with the Employee Relations Team in OM/HRS or with the Regional Human Resources Services representative.

First-line supervisors have primary responsibility for responding appropriately to any request for reasonable accommodation, and for ensuring that the process is completed properly and in a timely fashion. Second-line supervisors are responsible for reviewing reasonable

accommodation requests if the employee disagrees with the first-line supervisor's decision and asks for a review. The second-line supervisor must complete the review within 15 calendar days after receiving the employee's request. Second-line supervisors are strongly encouraged to consult with the Section 504 Coordinator, ERT, or Regional Human Resources Services Representative and if necessary, with the Office of General Counsel, before making a final decision on such a review. The supervisor also may consult with his or her Assistant Secretary, Executive Office, and other internal resources as necessary. When reviewing a reasonable accommodation decision, the second-line supervisor should ensure that all information is correct and that the original decision was made on a sound analytical and legal basis. This may include reviewing the determination of whether the employee has a disability protected under law (as opposed to an impairment), whether any effective accommodation exists, the relative effectiveness of several possible accommodations, and a determination of undue hardship. The second-line supervisor's review and decision is final and marks the end of the reasonable accommodation process. Senior managers are responsible for making sure that first and second-line supervisors are effectively carrying out the reasonable accommodation process, just as they are responsible for the overall performance of their unit in other areas.

## D6.    Review of Reasonable Accommodation Decisions

If an employee disagrees with the first-line supervisor's decision on a reasonable accommodation request, he or she can ask that the second-line supervisor review the decision. As described above, the second-line supervisor must thoroughly review the decision within 15 calendar days of receipt to ensure that it is sound. The second-line supervisor's decision upon review is final with respect to the formal reasonable accommodation process and procedure.

If the employee still disagrees with the second-line supervisor's decision, he or she may contact a counselor in the Informal Dispute Resolution Center (IDRC) in the OM Office of Hearings and Appeals to attempt resolution of the disagreement. If resolution cannot be reached, the employee has the option of filing an Equal Employment Opportunity (EEO) complaint through the normal process available for any allegations of employment discrimination. The IDRC and the EEO Team in OM can provide information on the informal dispute resolution process and on how to file a formal EEO complaint. Bargaining-unit employees have the option to file either an EEO complaint or a negotiated grievance. They may contact either their American Federation of Government Employees union representative, OM Labor Relations Team or the Regional Human Resources Services Representative for information on filing a grievance.

## D7.    Review of Medical Documentation

A supervisor can request reasonable documentation of an employee's disability and functional limitations if it is not obvious that an employee's impairment constitutes a disability, that the employee is qualified (can perform essential functions of the job), or that a particular accommodation – or *any* accommodation – will be effective. As discussed in Section B9, *Reasonable Documentation and Medical Information*, this documentation may or may not be medical in nature. If the supervisor requests medical documentation, it may be reviewed by the

Department's Medical Review Officer (MRO). The Department contracts with the Public Health Service to provide MRO services for reasonable accommodation and other personnel functions. The Public Health Service doctors are specialists in occupational medicine, and they are familiar with the types of medical issues that frequently arise in reasonable accommodation situations.

Supervisors and employees should contact the Section 504/Disability Policy Coordinator, the Employee Relations Team (ERT), or the Regional Human Resources Services (HRS) Representative for information on how to request medical documentation, and to obtain release forms that the employee must sign to authorize the release of medical information. Supervisors are encouraged to contact one of these offices if they have questions about when to request documentation, what to ask for, and how to handle the information once received.

Generally, the supervisor should first ask the employee for information about the disability, including medical information if necessary. If requesting medical documentation, the supervisor should give the employee the release form and a list of questions or information requested from the doctor. Employees should work with their physicians or other health care professionals who are providing the documentation, to ensure that the information is detailed enough, is responsive to the request, and does not contain irrelevant details. The supervisor's request should be specific enough to help the employee tailor the information appropriately. The employee may submit the medical information directly to the supervisor. If the employee prefers, he or she may submit this information to the Section 504/Disability Policy Coordinator, Employee Relations Team or Regional Human Resources Services Representative. This means that the supervisor must consult with that office in reviewing the documentation. However, the supervisor will need to see the necessary medical information to determine whether the employee is a qualified individual with a disability. Submitting medical information to another office does not mean the supervisor will not see it; it just means that the supervisor will have expert assistance in reviewing it.

When the medical information is received, the supervisor or receiving office (504, ERT, or regional HRS representative), in consultation with the supervisor, briefly reviews it to determine its completeness and responsiveness to the questions asked. The Office of the General Counsel may be consulted in this process. Then the medical information is forwarded to the MRO for review and evaluation. The ERT, the Regional Human Resources Services Representative, or Section 504 staff work with the MRO and supervisor to coordinate the review and to convey to the MRO what questions need to be answered, together with information on the relevant personnel issues, including the employee's position description, performance agreement, job requirements, and requested accommodation. Depending on the nature of the disability and the type of release obtained, they may be able to make an accommodation decision after a review of medical records or physician letters, or they may need to speak directly with the treating physician to obtain more information.

The Medical Review Officer's role is to evaluate the medical documentation and the requested accommodation, and determine the employee's capabilities based on the documented impairments. This can include checking that the diagnosis meets acceptable medical standards, that it is supported by medical evidence, and that it is consistent with the claimed impairments and severity of limitations. The MRO also may evaluate the employee's work capability by

comparing the nature and severity of the impairment to the position description, performance agreement, and the requested accommodation. This information can aid in determining the effectiveness of the accommodation, though the MRO does not determine whether or not the employee is a 'qualified individual with a disability.' The MRO also does not determine whether a requested accommodation creates an undue hardship – that is a management decision, not a medical one, and it must be made by the supervisor. The MRO prepares a report for the supervisor (aided by the ERT, Regional Human Resources Services Representative or Section 504 Coordinator), who then can use the information as a basis for making decisions about the reasonable accommodation request.

The medical review is part of the information-gathering stage of the reasonable accommodation process, and does not count toward the 15 calendar days that a supervisor has to respond to a request. All medical information, including release forms, physician letters, supporting documentation, and the MRO report, is strictly confidential, and may not be shared with other employees or with anyone not directly involved with the accommodation decision. It may be released *only* in accordance with the Rehabilitation Act and the Privacy Act.

### D8.    Funding for Reasonable Accommodations

***Goods and services:*** The Department has established centralized funding for reasonable accommodation purchases, maintained by the Section 504Disability Policy staff in the Office of Management's Work/Life Programs Team in Human Resources Services. This funding is available to cover the costs of any equipment, services, or training needed to provide a reasonable accommodation for an employee with a disability or to assess the employee's impairment and/or need for accommodation. The OCIO Assistive Technology Team also uses this funding to provide "one-stop shopping" services for employees with disabilities by purchasing assistive technology hardware, software, or services identified in a needs assessment. While Principal Offices ultimately are responsible for providing accommodations, it is often difficult to anticipate or budget for accommodation requests, and the resources of the Department as a whole are considered in making undue hardship determinations. Therefore, the centralized funding mechanism was established to remove the perceived cost disincentives, and to prevent accommodation purchases from being subject to budgetary restrictions.

The centralized funds may only be used for reasonable accommodation purchases for employees with disabilities, not for routine equipment for employees who have impairments that do not rise to the level of a disability. However, the OCIO's Assistive Technology Team has the discretion to use its own funding for preventive items. For bona-fide accommodations, ED Executive Offices are expected to purchase low-cost items themselves, such as those under $100 or items that are available from normal office-supply sources. Executive Offices or supervisors may request use of the central funds for larger purchases. All equipment purchased with the centralized funding remains the property of OM or OCIO, and is technically 'on loan' to the receiving office. It must be returned to OM or to the OCIO Assistive Technology Team when no longer needed. Employees and supervisors may contact the Section 504 staff for information on using the funds or for consultation about whether a request is an accommodation.

***Ongoing services:***   Section 504/Disability Policy and the Office of Management also fund several ongoing services that can be used either to provide access for customers or to meet reasonable accommodation needs for employees.  These services include:

- The **Alternate Format Center**, which produces documents in Braille, large print, and audiotape for people with visual impairments or learning disabilities;

- **Computer-Assisted Real-time Transcription** (CART) service, which is live captioning for people who are hearing-impaired and do not use interpreters;

- **Video captioning** for videos produced within the Department; and

- **Interpreting services** (sign language, oral, or tactile), through a contract that provides service for any event in headquarters, regional offices or other designated venue as specified by the person requesting the service.

***Salaries and expenses:***   The Department has also established centralized funding in Budget Services to cover the salaries and expenses of interpreters, readers, or personal attendant positions.   This enables Principal Offices to hire such individuals to provide reasonable accommodation services for a disabled employee without fear of staffing/Full-time Equivalent (FTE) restrictions.  Interpreters, readers, and attendants also may be hired under the Schedule A excepted hiring authority, which can greatly streamline the process.  The disabled employee receiving services should always be involved in the hiring decision.  Please contact Budget Services and the Section 504 Coordinator for information about using this "FTE pool."  Human Resources Services can assist with the Schedule A hiring process.


### D9.    Hiring and Appointing Authorities

Applicants with disabilities, and individuals hired to provide reasonable accommodation services such as readers, interpreters, or personal attendants, may be hired non-competitively using several excepted appointing authorities.  The Schedule A excepted appointing authority, at 5 CFR 213.3103(t) and (u), can be used for applicants with physical or mental disabilities.[23]

The Office of Management's Human Resources Services personnel staffing specialists or Regional Human Resources Services Representatives can assist managers with Schedule A hiring processes.  The Department's Personnel Manual Instruction (PMI) system has additional

---

[23] 5 CFR 213.3102 states: "(t) Positions when filled by mentally retarded persons in accordance with the guidance in Federal Personnel Manual Chapter 306.  Upon completion of 2 years of satisfactory service under this authority, the employee may qualify for conversion to competitive status under the provisions of Executive Order 12125 and implementing instructions issued by the Office.

"(u) Positions when filled by severely physically handicapped persons who: (1) Under a temporary appointment have demonstrated their ability to perform the duties satisfactorily; or (2) have been certified by counselors of State vocational rehabilitation agencies or the Veterans Administration as likely to succeed in the performance of the duties. Upon completion of 2 years of satisfactory service under this authority, the employee may qualify for conversion to competitive status under the provisions of Executive Order 12125 and implementing regulations issued by the Office."

information and guidance on using these excepted appointing authorities for individuals with disabilities, in PMI 306-1. (The appointing authorities have changed slightly since the PMI was written; the Schedule B appointment for people with psychiatric disabilities has been replaced with a new Schedule A appointment authority under 5 CFR 213.3201(gg) – see footnotes for details.)[24]  Detailed information, provided by the Office of Personnel Management, pertaining to federal employment of people with disabilities, is available online, via the OPM website, at www.opm.gov/disability/hrpro_3-02.asp.  Managers should be aware of these avenues for hiring, and recognize that there is considerable flexibility in hiring individuals with disabilities.

**D10.    Other Disability-Access Policies: Accessible Meetings, Documents, and Technology**

Employees and supervisors should be aware that the Department has established several other policies with respect to disability access that may affect reasonable accommodation for employees.  There are policies on making meetings accessible, providing documents in alternate formats, and making computer software and information technology accessible.  The policies on accessible meetings and alternate format documents were released together on November 7, 1995 with a cover memo from the Secretary of Education.[25]  The Requirements for Accessible Software Design were first implemented on March 6, 1997 and have been expanded as a result of Section 508 of the Rehabilitation Act.  These policies were established to ensure general access to employees and members of the public, but will also ensure that employees with disabilities are accommodated appropriately at meetings, when receiving documents, and when using information technology.

*Access to Meetings:*  Whenever the Department has a meeting that may be attended by a disabled employee or member of the public, it must ensure that the meeting is held in an accessible location and must provide communication access when needed.    Nearly all Department facilities or other Federal facilities are wheelchair-accessible, but if a meeting is held off-site, for example, in a hotel conference room, the meeting organizer must ensure that the location is accessible.  If printed documents will be distributed, the meeting organizer must ensure that the documents are available in alternate formats such as Braille, large-print, audiotape, or computer disk if needed, and should check with invitees or attendees in advance to determine which formats are needed.  Presenters should be notified that their materials must be available in accessible format if requested.  Materials should not be distributed to anyone if there

---

[24] 5 CFR 213.3102 states: "(gg) Positions when filled by persons with psychiatric disabilities who have demonstrated their ability to perform satisfactorily under a temporary appointment [such as one authorized in 213.3102(i)(3)] or who are certified as likely to be able to perform the essentials functions of the job, with or without reasonable accommodation, by a State vocational rehabilitation counselor, a U.S. Department of Veterans Affairs Veterans Benefits Administration or Veterans Health Administration psychologist, vocational rehabilitation counselor, or psychiatrist.  Upon completion of 2 years of satisfactory service under this authority, the employee can be converted, at the discretion of the agency,  to competitive status under the provisions of Executive Order 12125 as amended by Executive Order 13124."

[25] A memorandum from the Secretary of Education on November 7, 1995 announced the U.S. Department of Education Policy Statement on Meeting Accessibility for Individuals with Disabilities and the U.S. Department of Education Policy Statement on Making Materials and Information Available and Accessible to Individuals with Disabilities.

are some employees or members of the public with disabilities who cannot receive them because alternate formats are not available.

If audiovisual materials will be used, they must be accessible to all attendees. For example, films or videos may only be shown if they are captioned or if access can be provided through use of an interpreter, live captioning, or a transcript. Meeting organizers should ask attendees if they need communication-access resources, such as interpreters, assistive-listening systems, or live captioning (CART), and should ask about which is preferred. Do not assume that sign language interpreting will provide access for all attendees with hearing impairments, since many people need some other form of communications access and do not use sign language. The Department auditorium in FB-6 features a permanent audio-loop assistive-listening system, and there are portable systems that can be used in any meeting room in headquarters, as well as small portable systems in regional Human Resources Services offices for use anywhere in the regional office. Most hotels and conference facilities can provide assistive-listening systems as part of their audiovisual services.

***Providing Documents in Alternate Formats:*** Whenever documents are provided to Department employees or members of the public, they must be made available in alternate formats to individuals with disabilities as needed. For accommodation purposes, this usually affects employees with visual disabilities who use Braille, large-print, audiotape, or computer disk as an alternative to standard print, but employees with learning or other disabilities also may benefit from these alternate formats. The Department has an Alternate Format Center, operated by the Section 504/Disability Policy staff, which produces Braille and audiotape, and can provide guidance on how to prepare large-print or disk versions for accessibility. Whenever a document is to be disseminated on paper, the originating office should contact the Alternate Format Center to prepare alternate format versions, and should contact recipients in advance to determine which formats are needed. Many documents are disseminated via e-mail only; these generally do not need to be provided in alternate format as long as the electronic format is accessible (text-based, with narrative description of any graphic elements; see next section on information technology access). Reference materials such as Departmental directories and copies of regulations that are distributed desk-to-desk in hard copy must be made available in alternate format at the time of distribution. The Department also has an obligation to make all of its publications and materials distributed to the public available in alternate formats upon request. All public materials must have a notice stating that they are available in alternate format upon request, and give contact information to request them. The originating office is responsible for arranging the production of alternate formats, and for working with EDPUBS or other venues to ensure that they are distributed appropriately.

***Electronic and Information Technology Access:*** The Department must make all of its electronic and information technology accessible to people with disabilities, in accordance with Section 508 of the Rehabilitation Act. Section 508 was amended in 1998. The amendments added enforcement procedures and established accessibility standards for electronic and information technology. The Department also has a set of **Requirements for Accessible Software Design**, which were first adopted on March 6, 1997 and have been periodically updated. Any electronic or information technology that the Department develops, procures, maintains or uses after June 25, 2001 must meet a specific set of standards contained in the

Section 508 regulations.[26]  These standards are intended to ensure that hardware and software systems either are accessible themselves or are compatible with assistive technology used by people with disabilities.  For example, standards on web page design require narrative descriptions of graphic elements, because screen-reader software cannot tell a user what is in a picture.  Offices or individuals purchasing electronic or information technology, or managing contracts to develop custom applications, must ensure that the product procured will meet the applicable access standards so that it will be usable by all Department employees, including those with disabilities.  Please consult the OCIO Assistive Technology Team for guidance.  Information on Section 508 and technology access also is available online at www.section508.gov.


## D11.    Computer-Related Accommodations

Please contact the Assistive Technology Team in OCIO any time an employee with a disability has an accommodation need that may require purchase or modification of computer equipment, including hardware, software, input devices, scanners, or other peripherals.  The employee with a disability, his/her supervisor, or the Executive Office may make the initial contact.  The Assistive Technology Team can perform a needs-assessment to ensure that the equipment will meet the employee's needs and can be correctly integrated with the Department's systems.  Using the reasonable accommodation funds, the Assistive Technology Team can purchase equipment, and it keeps many commonly used items in stock for immediate response.  The Assistive Technology Team also provides some preventive equipment for employees who experience computer-related repetitive stress injuries, which cause impairments that may not be severe enough to be disabilities, but that would worsen without adaptive equipment.  The Assistive Technology Team also can provide installation and training on how to use the equipment, or the Team can arrange for a qualified vendor to do so.  These services can be provided in the office or at a telecommuting location if the employee is unable to bring the equipment in for service.

Offices should ***not*** purchase or install assistive technology hardware or software without consulting with the Assistive Technology Team!  It is essential that the Assistive Technology Team be notified of any specialized purchases.  The Assistive Technology Team can troubleshoot and provide information on updates and upgrades, and it can work with known users in advance of major Departmental systems changes to ensure that disabled users have access to assistive technology upgrades and training at the same time as non-disabled users.  The Assistive Technology Team works collaboratively with the Training and Development Center and the Section 504 Coordinator to provide training on new Departmental systems for users of assistive technology.  Assistive technology and training for employees with disabilities is funded out of the central reasonable accommodation budget.

---

[26] Federal Acquisition Regulation for implementing Section 508 of the Rehabilitation Act, *Electronic and Information Technology Accessibility for Persons with Disabilities*. See 48 CFR Parts 2, 7, 10, 11, 12, and 39.

## D12.    Telecommunications Accommodations

Please contact the Assistive Technology Team for a needs assessment for accommodations that require purchase or modification of telecommunications equipment.  The employee with a disability, his/her supervisor, or the Executive Office may make the initial contact.  The Assistive Technology Team can recommend and often purchase the appropriate equipment with the central reasonable accommodation funds, and it oversees the installation and maintenance of the NexTalk networked TTY system.  Certain telecommunications equipment and services such as amplified handsets, installation of analog or ISDN lines, caller-ID, or stutter dial tones must be handled by the Telecommunications Group in OCIO, which accepts requests only through Executive Offices.  Contact the Section 504 Coordinator for additional assistance or funding for telecommunications accommodations.

## D13.    Ergonomics and Furniture Accommodations

Please contact the Section 504/Disability Policy staff for accommodations that require purchase or modification of furniture or other workplace structures.  The employee with a disability, his/her supervisor, or the Executive Office may make the initial contact.  The Section 504 office will work with Facilities Services in OM to make the needed modifications or purchases or get a professional ergonomic assessment to determine what type of furniture will be suitable for the employee.  The Section 504/Disability Policy staff can route the request to the appropriate internal office or secure an outside expert to perform an evaluation if necessary.  The Assistive Technology Team in OCIO can perform some basic assessments related to seating, computer positioning, keyboard trays, and workstation configuration, and can provide some preventive and positioning equipment.  Health and Environmental Safety in OM's Management Services can perform some ergonomic assessments related to repetitive-motion injury and workstation configuration.  The Department often contracts with the Public Health Service or outside rehabilitation professionals to perform more complex workplace assessments or to provide recommendations for furniture or equipment that will meet an employee's needs.  This is done on a case-by-case basis, depending on the situation, and is funded by the central reasonable accommodation budget in Section 504/Disability Policy.

## E.    RESOURCES AND REFERENCES

### E1.    ED Offices and Their Roles in the Reasonable Accommodation Process

***Section 504Disability Policy, Office of Management's Work/Life Programs Team:***
Provides technical assistance, training, and support for managers and employees to work through the reasonable accommodation process.    Coordinates development and implementation of reasonable accommodation policies, procedures, and resources within the Department.    Keeps records and tracks reasonable accommodation requests for required reports and to improve services and procedures.    Provides funding for equipment, furniture, training services, facility modifications, and other goods or services needed to provide reasonable accommodation for Department employees, and manages the distribution of funds to other offices for increased procurement efficiency.    Consults with managers and employees to facilitate the reasonable accommodation process; serves as a neutral party to provide information and resources.

***Assistive Technology Team (AT), Office of the Chief Information Officer:***
Provides support services to ED managers and supervisors in determining how technology can be used to meet the reasonable accommodation needs of employees with disabilities and assists with implementation.    Performs needs-assessments to determine what technology products may be effective as accommodations for employees with disabilities.    Prepares report of needs-assessment results, purchases hardware and software for reasonable accommodations, installs equipment and configures workstations, provides training on use of assistive technology as needed.    AT team members visit regional offices periodically and upon request to perform needs assessments, installations, and training.    The AT Team receives funds from the Section 504/Disability Policy Coordinator to purchase technology-related reasonable accommodation items.

***Employee Relations Team (ERT), Office of Management's Human Resources Services:***
Responsible for the full range of employee-relations matters including disciplinary/adverse actions; performance-management issues; reasonable accommodation issues; appraisal and award programs; the Employee Assistance Program; the Drug-Free Workplace Program; benefits programs (retirement, health insurance, life insurance, TSP); unemployment compensation; and administrative grievances and appeals.    ER consults with managers and the Section 504/Disability Policy Coordinator on reasonable accommodation requests that are accompanied by disciplinary, performance, or conduct issues.

***Regional Human Resources Service Representatives, Office of Management's Human Resources Services:***
Responsible for the full range of personnel related services including recruitment and staffing, classification and position management; disciplinary/adverse actions; performance management issues; reasonable accommodation issues; appraisal and awards programs; benefits programs (retirement, health and life insurances, TSP); unemployment compensation; administrative grievances and labor relations matters. The Representatives consult with managers and the Section 504/Disability Policy Coordinator on reasonable accommodation requests.

***Division of Business and Administrative Law (DBAL), Office of the General Counsel:***
The Division of Business and Administrative Law is available to advise managers, Employee Relations and the Section 504 Coordinator in determining whether an employee has a disability as defined by law, whether an undue hardship exists, and other legal issues arising during the accommodation process.

***Facilities Services, Office of Management:***

Facilities Services (FS) is responsible for planning, establishing, directing, controlling, and implementing policy, standards, and procedures governing all aspects of the following functions: space planning and management, facilities management, property management, facility management, property management and inventory, and the Federal Real Property Program. FS provides adaptive and ergonomic furniture when needed for reasonable accommodation, and modifies Department facilities as necessary to ensure compliance with accessibility codes and to provide access for specific employees with disabilities.

***Health & Environmental Safety (HES), Management Services, Office of Management:***
Management Services (MS) provides a wide variety of administrative services to the Department. MS is responsible for planning, establishing, directing, controlling, and implementing policy, standards, and procedures governing all aspects of the following functions: supply management, motor vehicle and transportation operations, mail services, parking services, health services, photocopy services, the workers' compensation program, and the equal employment opportunity program. HES consults with managers and employees as needed to assist in determining adaptive and ergonomic furniture needs, and works with the Section 504 Coordinator and Facilities Services to ensure that the facilities are safe and accessible to all employees, including those with disabilities.

***The Informal Dispute Resolution Center (IDRC), Office of Management, Office of Hearings and Appeals:*** Provides all Department employees and applicants with an informal process to resolve disputes, disagreements, or complaints on a wide range of work-related matters. The services include Equal Employment Opportunity (EEO) counseling and mediation in an informal setting to assist employees in resolving issues in an expeditious and impartial manner. Consulting with the IDRC is the first step in filing a formal EEO complaint.

## E2.    Disability-Access Resources in the Department

The Section 504/Disability Policy Reasonable Accommodation staff on the Work/Life Programs Team in the Office of Management's Human Resources Services provides general coordination, problem-solving assistance or funds for reasonable accommodations. ED has a central fund to pay for items needed as reasonable accommodations under Section 504 for ED's permanent employees, interns, and contractors with disabilities (which an individual Principal Office cannot purchase out of its own budget). The Section 504/Disability Policy staff maintains a brochure and web pages on *ConnectED* with contact information and descriptions of the resources available in the Department for reasonable accommodation and for providing access to

customers and employees with disabilities.  The staff also provides or assists in the provision of the following services:

### Disability-Access Training

ED has developed this training at no charge for all ED staff in Washington, DC and regional offices.  The one-day training course contains four different modules with useful tools and resources to resolve current and future job-duty issues.  The training covers the following topics: an overview of the Rehabilitation Act requirements for ED; an explanation of what constitutes reasonable accommodation; how to provide superior customer service for ED customers with disabilities; and how to make meeting and conferences accessible to people with disabilities. The Section 504/Disability Policy staff can consult with individual Principal Offices and work units to provide customized training.

### Computer-Assisted Real-time Transcription (CART) Services

A type of interpreting service called real-time captioning or computer-assisted transcription service is helpful for people who are oral deaf, hard-of-hearing, late-deafened or who have environmental sensitivities so severe that they cannot share the larger meeting space and who read English fluently but do not use or know sign language.  A court reporter uses special software to make an instantaneous transcript of a meeting or event.  Please make a request directly to the Section 504/Disability Policy staff for CART services.

### Assistive Listening Systems (ALS)

ALS are communication systems that enable people who are hard-of-hearing to better comprehend speech in meetings or training sessions.  Portable ALSs are available at headquarters and regional offices. A permanent ALS system is installed in the Departmental Auditorium in FB-6.  Those who want to access the system use a T-coil on their hearing aids, or, if they do not have hearing aids, they use a headset to better hear the speaker.  Please call the main Departmental Help Desk number (202/708-HELP) in advance to request a portable ALS in a training or meeting room or to activate the permanent loop in the Departmental Auditorium. NexTalk users should click on ED Facility Services from their NexTalk address book on their computers.

### Accessible Meetings

All Department-wide and Principal Office meetings, conferences, and seminars must be accessible to people with disabilities--including employees, participants, and the members of the public.  Accessibility at meetings includes accessible communications and materials and accessible facilities for individuals with mobility impairments.  This may include readers, materials in Braille or large-print, audiocassette recordings, materials on electronic disk, sign language or oral interpreters, assistive-listening devices, opened-captioned videos or computer-assisted real-time transcription (CART).  It also means that television or web broadcasts of events should be captioned, and records of the proceedings, if made, should be made in an accessible format.  A "Guide to Planning Accessible Meetings" is available upon request from the Section 504/Disability Policy staff.

## Other Disability-Access Services

### Alternate Formats

The Alternate Format Center produces documents in specific alternate formats (including Braille and audiotape) for employees and members of the public with disabilities. These documents may include agendas, correspondence, course materials, regulations, and materials for public distribution. Please contact the center for submission guidelines and turnaround times. The Section 504/Disability Policy staff manages the contract for the center. The Alternate Format Center is located in Room 1000 Mary E. Switzer Building (mail stop 4560).

### Video Captioning

All videos produced by ED **must** be captioned. Closed-captioned decoders are part of most new TV sets. However, open-captioning is still the preferred medium for providing access to the narrative and dialogue on audiovisual materials. For further information, please contact the Office of Public Affairs (OPA) or the Section 504/Disability Policy staff.

### Federal Relay Service (FRS)

FRS acts as an intermediary for telecommunications between hearing individuals and individuals within Federal agencies who are deaf, hard-of-hearing or who have speech disabilities. It translates TTY (teletypewriter) or text telephone calls to voice, and vice versa. It is a free service available to all Federal agency staff and customers, and it is operated by a contractor to GSA. For FRS telephone numbers, look in a Federal telephone directory or contact the Section 504/Disability Policy staff.

### Interpreting Services

The Department provides sign language/oral/tactile-interpreting services for communication access for employees or for public events. Three business days' notice is required, excluding the day of the request or the day of the assignment within the metropolitan Washington, DC area. Four business days' notice is required for interpreter services provided outside the Washington, DC area. For information, please contact "OM Interpreter Services" via e-mail or the Section 504/Disability Policy staff.

### Assistive Technology Team Services

The Assistive Technology (AT) Team in the Office of the Chief Information Officer (OCIO) provides computer needs-assessments and assistive technology for reasonable accommodations and for program accessibility, and accessibility testing of computer software. The AT Team can provide accommodations such as large-ball mice (for motor control), ergonomic keyboards (for those with carpal tunnel syndrome), scanners, note-takers, and screen enlargers for people with visual disabilities. The following describe some other AT Team services:

- *NexTalk computer-based TTY:* NexTalk is a user-friendly software application that allows one to use a personal computer as a teletypewriter (TTY) to communicate directly with an individual who is deaf or hard-of-hearing. TTY/TDD is an acronym for Teletypewriter/Telecommunication Device for the Deaf, a device used in a manner

similar to a telephone.  TTY/TDDs transmit and receive audio text signals over the telephone lines, similar to how a modem works.

- *Assistive Technology Demonstration Center:* The Demonstration Center showcases emerging and existing assistive technology solutions.  Periodic demonstrations of new products are provided.  The Center is located on the first floor in the Training and Development Center, Room 1W104 FB-6.  Please contact the AT Team for hours and appointments.

### E3.    Definitions

This section provides the definitions found in the EEOC's regulation[27] for some commonly used terms, with additional notes that may be helpful to the reader.  Quoted sections from the regulation are indented.

An ***INDIVIDUAL WITH A DISABILITY*** is one who:

> (1) Has a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (2) Has a record of such an impairment; or
> (3) Is regarded as having such an impairment.

*Note*: This is a legal definition, not a medical one.  Having an impairment is not the same as having a disability – it has to substantially limit a major life activity and it must be permanent or long-term.

***PHYSICAL OR MENTAL IMPAIRMENT*** means:

> (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or
>
> (2)  Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

***MAJOR LIFE ACTIVITIES*** means:

> functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

---

[27] Definitions and quotations here are from the ADA regulation at 29 CFR §1630.2.

### SUBSTANTIALLY LIMITS:[28]

(1) The term *substantially limits* means that the individual is:

    (i)   Unable to perform a major life activity that the average person in the general population can perform; or

    (ii)  Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

(2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:

    (i)   The nature and severity of the impairment;

    (ii)  The duration or expected duration of the impairment; and

    (iii) The permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.

(3) With respect to the major life activity of working—

    (i)   The term 'substantially limits' means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

    (ii)  In addition to the factors listed in paragraph (j)(2) of this section, the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":

        (A) The geographical area to which the individual has reasonable access;

        (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

        (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

Note: "Working" as a major life activity should be analyzed only if no other major life activity is substantially limited by the impairment.

---

[28] This definition of 'substantially limits' comes from the ADA definitions at 29 CFR 1630.2(j), and is not found in the Rehabilitation Act.

***HAS A RECORD OF SUCH IMPAIRMENT*** means the individual**:**

> Has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

***REGARDED AS HAVING SUCH AN IMPAIRMENT*** means the person:

(1) Has a physical or mental impairment that does not substantially limit major life activities, but is treated by a covered entity [an employer] as constituting such a limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined … [under "physical or mental impairments" above] but is treated by a covered entity [an employer] as having a substantially limiting impairment.

***QUALIFIED INDIVIDUAL WITH A DISABILITY*** means:[29]

> An individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.

(1) ***ESSENTIAL FUNCTIONS OF A JOB*** means:

In general. The term 'essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.

(2) A job function may be considered essential for any of several reasons, including but not limited to the following:

    (i)    The function may be essential because the reason the position exists is to perform that function;

    (ii)    The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

    (iii)    The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(3) Factors in whether a particular function is essential include, but are not limited to:

    (i)    The employer's judgment as to which functions are essential;

    (ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;

    (iii)    The amount of time spent on the job performing the function;

    (iv)    The consequences of not requiring the incumbent to perform the function;

    (v)    The terms of a collective bargaining agreement;

---

[29] 29 CFR § 1630.2(m).

    (vi)    The work experience of past incumbents in the job; and/or

    (vii)    The current work experience of incumbents in similar jobs.

### *REASONABLE ACCOMMODATION* means:[30]

(1) The term 'reasonable accommodation' means:

    (i)    Modifications or adjustments to a job-application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

    (ii)    Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position; or

    (iii)    Modifications or adjustments that enable an employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by other similarly situated employees without disabilities.

(2) Reasonable accommodation may include but is not limited to:

    (i)    Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

    (ii)    Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; appropriate adjustment or modifications of examinations, training materials, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities. (Reassignment will only be considered if no other accommodation enables the individual to perform his or her current job, or if the only effective accommodation would cause undue hardship for the agency.)[31]

(3) To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

### *UNDUE HARDSHIP* means:[32]

---

[30] See "EEOC's *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, at question 5"*

[31] See "EEOC's *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, section on Reassignment examples and questions 25-31.*

[32] 29 CFR 1630.2(p).

(1) In general. 'Undue hardship' means, with respect to the provision of an accommodation, significant difficulty or expense incurred by a covered entity, when considered in light of the factors set forth in [the following] paragraph (p)(2) of this section.

(2) Factors to be considered. In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include:

   (i)    The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;

   (ii)   The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;

   (iii)  The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;

   (iv)   The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

   (v)    The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

***QUALIFICATION STANDARDS*** means:[33]

the personal and professional attributes including the skill, experience, education, physical, medical, safety and other requirements established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired.

---

[33] 29 CFR §§1630.10 and 1630.11 describes qualification standards and administration of tests.

***DIRECT THREAT*** means:[34]

> a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> (1) The duration of the risk;
> (2) The nature and severity of the potential harm;
> (3) The likelihood that the potential harm will occur; and
> (4) The imminence of the potential harm.

---

[34] See 29 CFR 1630.2(r).

## F.      REASONABLE ACCOMMODATION PROCEDURES CHECKLIST

***Pull this section out and copy it for use when you need to review or make a reasonable accommodation request.***

## INTRODUCTION

The Department of Education's policy is to ensure that all employees are treated fairly and have the tools they need to do their jobs effectively. The law requires the Department to provide reasonable accommodation for otherwise qualified employees with disabilities, unless doing so poses an undue hardship. The Department has established a policy to implement the law because it makes good business sense to ensure that all employees can be successful and fully productive. It is essential that both supervisors and employees read the *Reasonable Accommodation Handbook* to fully understand their rights and responsibilities in this process.

Establishing whether or not an employee has an impairment that substantially limits one or more major life activities is a threshold for entering the reasonable accommodation process. For an employee to be entitled to a reasonable accommodation, he or she must be a 'qualified individual with a disability' as defined by law. A qualified employee with a disability is a person who has a physical or mental impairment that substantially limits a major life activity, and who can perform the essential functions of his or her position with or without accommodation.

Employees have the responsibility to notify their supervisors of their disability and tell them if they need reasonable accommodation. Employees must provide medical documentation of the disability, if requested by the supervisor. The employee should be prepared to discuss with the supervisor the disability, the functional limitations it creates while on the job, and possible reasonable accommodations that will address these limitations.

There are legal consequences of supervisors' actions at every step of the way: failure to respond or to make a decision on an accommodation request, failure to implement a decision, or improper denial of accommodation, could expose the Department to legal liability. This checklist on reasonable accommodation will help supervisors understand and navigate the process of requesting or providing a reasonable accommodation. It should be used together with the rest of the *Reasonable Accommodation Handbook* and other policy guidance.

***Note:*** This checklist focuses mainly on current employees and does not go into details about reasonable accommodation for job applicants. People with disabilities who are applying for jobs with the Department also are entitled to reasonable accommodation in the application and interviewing process. Please contact the Section 504/Disability Policy Coordinator and/or the Human Resources Services for information on how to accommodate a qualified applicant with a disability.

## SOME THINGS TO REMEMBER

***Take a request for reasonable accommodation seriously and act promptly.*** Employees may ask for a reasonable accommodation formally, or they may approach a supervisor with an oral or written request related to a disability. The supervisor must take it seriously and recognize it as a reasonable accommodation request. Be alert for the issue even if an employee does not use the words "reasonable accommodation." The supervisor must respond in writing within 15 calendar days of receipt (or sooner when possible) and follow up promptly.

***Establish an interactive process.*** The supervisor and employee should work together to find an accommodation that balances the legitimate needs of both the employee and the Department. The employee is often knowledgeable about what will work. Seek out other information and work with others in the Department who can help. The employee should provide sufficient medical and/or other information in a timely manner to allow the supervisor to determine whether the employee is a 'qualified individual with a disability' and what accommodation is appropriate.

***Be open-minded.*** Supervisors and employees need to keep the reasonable accommodation process separate from other workplace issues such as worker's compensation, adverse actions, and performance issues; the Department's obligation to provide accommodation to qualified employees with disabilities does not change in these situations. Providing accommodation promptly and fairly may prevent other problems or improve their resolution.

***Use internal and external resources.*** Consult the Department's policy guidance, in-house experts, resource lists, and guidance from the EEOC. Once it is determined that an employee is a 'qualified individual with a disability,' there are needs-assessment and review services available to help supervisors and employees determine the best accommodation. Be aware of centralized funding and other resources that may reduce logistical or financial barriers to providing accommodation. Managers should seek expert advice by contacting the Section 504 Coordinator and/or OM/HRS' Employee Relations Team or Regional Human Resources Services Representative before denying an accommodation.

***Always keep medical and personal information confidential.*** In dealing with an employee's accommodation request, supervisors may learn details of the employee's medical condition and may see his/her medical records. Disclosure of this information is permitted by the Privacy Act only in certain circumstances, such as to those who have a 'need to know' in order to evaluate or assist in granting an accommodation request, and for certain record-keeping and administrative purposes. Do not disclose the existence of a disability or an accommodation request in response to questions from other employees, unless allowed by the Privacy Act.

***Put responses in writing.*** Even if requests are made orally or decisions are made through discussion, supervisors and employees should create a written record: summarize oral discussions in writing, and respond in writing. The supervisor must confirm in writing if the employee's request is oral. A copy of written records should be given to the employee to clarify all agreements and decisions. Supervisors and employees should consider using the Reasonable Accommodation Request Form even for simple requests that are granted immediately. Notify

the OM Section 504/Disability Policy Coordinator of all accommodation request decisions so that it can keep accurate records as required; please give that office a copy of the written records if appropriate.

### CHECKLIST FOR REASONABLE ACCOMMODATION REQUESTS

| 1. The accommodation request | |
|---|---|
| **SUPERVISOR'S RESPONSIBILITIES** | **EMPLOYEE'S RESPONSIBILITIES** |
| **REMEMBER:** You have up to 15 days to respond to the employee with a decision or a request for more information. Do it earlier if you can. | o Did you use the Reasonable Accommodation Request Form? (it is not required, but it may make the process easier) |
| o Promptly acknowledge receipt of the accommodation request and review it immediately. | o Did you provide the supervisor with a description of your disability, including how it substantially limits one or more major life activities, and what functional impairments require accommodation on the job? |
| o If the request is oral, confirm your understanding of it in writing. | o Did you state and describe the accommodation needed (if known) and how it will assist you in performing your duties? |
| o Does the request contain a description of the disability, including how it substantially limits major life activities and what functional impairments require accommodation on the job? | o If you are a bargaining-unit employee and you want union representation in the reasonable accommodation process, put your designation of representation in writing. |
| o Does it contain a description of the accommodation requested (if known) and how it will assist the employee in performing his/her duties? | o Keep a written record of the request, and keep copies of any documentation you submit. If you made the initial request orally, consider submitting it in writing as well or writing a summary of the conversation in which you made the oral request. |
| o Are the disability and the need for accommodation obvious? If so, proceed rapidly through to step 4. If not, see step 3 on requesting documentation. | |
| o If additional information is necessary, specify to the employee in writing what is needed. | |
| o Provide the employee with a copy of the *ED Reasonable Accommodation Handbook*. | o Get a copy of the *ED Reasonable Accommodation Handbook*. |
| Do not confuse the reasonable accommodation request and procedure with requests for other benefits such as Flexiplace/Telework or Workers' Compensation. Verify that the employee has a disability as defined by law: a physical or mental impairment that substantially limits one or more major life activities. | You must demonstrate that you have a disability as defined by law: a physical or mental impairment that substantially limits one or more major life activities. You should be able to explain what your disability is and how it affects you on the job. |
| ***Note:*** The Reasonable Accommodation Request Form should be used **only** for the initial authorization of reasonable accommodations for an employee. It should not be used for repeated routine accommodation needs. For example, once it is determined that a deaf employee needs sign-language interpreting, the employee should not have to fill out a reasonable accommodation request form every time he/she needs an interpreter. | |

**CHECKLIST FOR REASONABLE ACCOMMODATION REQUESTS**

| 2. Review the essential functions of the job | |
|---|---|
| **SUPERVISOR'S RESPONSIBILITIES** | **EMPLOYEE'S RESPONSIBILITIES** |
| o Carefully review and identify the essential functions of the employee's job.<br>o Differentiate between essential functions and marginal functions: would removing a function or performing it differently fundamentally alter the position or the work of the office?<br>o Identify tasks in terms of outcome rather than process.<br>o Look at written job descriptions, experience of incumbents or those in similar positions, and actual tasks performed, in the context of the entire work unit.  Give more weight to what people actually do than to what is in standard job descriptions.<br><br>Reviewing essential functions of the job helps in determining whether the employee is a 'qualified individual with a disability': someone who can perform the essential functions either with or without an accommodation.    Recognize that essential functions, a person's ability to perform those functions, and the accommodation needed may change over time. | o What are your job responsibilities/duties?    Be familiar with your position description and your EDPAS Performance Agreement.<br>o Will you be able to perform all of the essential functions of your job if you receive accommodation? |

## CHECKLIST FOR REASONABLE ACCOMMODATION REQUESTS

| 3. Request and evaluate documentation or medical information if necessary | |
|---|---|
| **SUPERVISOR'S RESPONSIBILITIES** | **EMPLOYEE'S RESPONSIBILITIES** |
| o  If the disability or the need for accommodation is not obvious, request documentation or medical information.<br><br>o  Have the employee sign a limited release for medical information.<br><br>o  If you have questions or need assistance evaluating the documents, contact the Section 504/Disability Policy Coordinator.  If the employee has a performance or conduct-related problem related to the accommodation request, contact the HRS Employee Relations Team or Regional Resources Services Representative.  These offices can arrange for a consultation with ED's Medical Review Officer (MRO) through the Public Health Service.<br><br>o  If the employee has submitted his/her documentation through the Section 504/Coordinator, the Employee Relations Team, or the Regional Human Resources Services Representative, you must contact that office for assistance in evaluating the documentation.<br><br>o  Notify the employee if a medical review is necessary and provide him/her with a copy of the MRO report if one is generated.<br><br>o  Keep all medical information strictly confidential, and share it with others only in accordance with the Rehabilitation Act and the Privacy Act. | o  If your disability or the need for accommodation is not obvious, provide documentation or medical information to verify the existence and nature of your disability.   This can include diagnosis; prognosis; relationship between medical condition and requested accommodation; major life activities substantially limited; the duration, nature, and severity of the limitation; and any other necessary documentation.<br><br>o  Sign a limited release for medical information.<br><br>o  You may submit your documentation through the Section 504/Disability Policy Coordinator or the Employee Relations Team or the Regional Human Resources Services Representative.  They will review it with your supervisor and provide guidance on evaluating it.<br><br>o  Obtain a copy of the MRO report if one is generated. |
| Request medical documentation **only** to establish whether the employee has a disability, the nature, severity, and duration of the impairment, the activities that it limits, and the extent to which it limits the employee's ability to perform those activities.  It may also help supervisors determine whether the requested accommodation is necessary or will be effective.  The determination of whether an accommodation poses an undue hardship is a management decision, not a medical one, and it should be handled separately.  Supervisors should request only the medical information necessary, and not the employee's complete medical records. | Please keep in mind that the documentation you provide must be detailed enough to enable your supervisor to determine whether or not you have a disability as defined by law, and to evaluate the effectiveness of the accommodation you requested. |

**CHECKLIST FOR REASONABLE ACCOMMODATION REQUESTS**

| 4. Request needs-assessments or collaboration with other offices | |
| --- | --- |
| **SUPERVISOR'S RESPONSIBILITIES** | **EMPLOYEE'S RESPONSIBILITIES** |
| o  Is it clear what type of accommodation the employee is requesting, or what will be effective? If not, contact the Section 504/Disability Policy Coordinator for help in setting up an internal or external needs-assessment.<br><br>o  Does the requested accommodation require funding or modifications to computers, telephones, furniture, or facilities?  If so, contact the appropriate office in ED for a needs-assessment, consultation, or accommodation services:<br><br>&bull;  ***OM WLPT Section 504/Disability Policy Coordinator:*** General consultation, funding for purchases, training, and external services such as needs-assessments, task analyses, ergonomic assessments, or other workplace evaluations.<br><br>&bull;  ***OCIO Assistive Technology Team:*** Computer or telephone accommodations.<br><br>&bull;  ***OM Facility Services:*** Furniture or facility alterations.<br><br>&bull;  ***OM Management Services, Health and Environmental Safety:*** Ergonomic assessments or environmental alterations. | o  Provide any additional information and suggestions to the supervisor on how this accommodation can be provided.<br><br>o  Include names, addresses and telephone numbers of possible vendors, and if possible, model numbers of any equipment you are specifying.<br><br>o  If you are not sure what you need, try to narrow down the information to help determine the most effective accommodation.<br><br><br>Remember-- this is an interactive process where the employee and supervisor should collaborate to determine the best accommodation. |

**CHECKLIST FOR REASONABLE ACCOMMODATION REQUESTS**

| **5. Evaluate the accommodation request** |
|---|

**SUPERVISOR'S RESPONSIBILITIES**

> **REMEMBER:**
> You have up to 15 days to make a decision after you receive the accommodation request <u>or</u> after you receive the last piece of supplemental information or expert consultation.

Review the request and related documentation for completeness, and consult with experts if necessary to make a decision. As the supervisor and decision-maker, you should:

o  Understand the legal definition of disability and be able to explain how you determine whether or not the employee is a 'qualified individual with a disability.'
o  Understand the job-related functional limitations imposed by the employee's disability, how those limitations affect job performance, and how they can be addressed by a reasonable accommodation.
o  Evaluate the effectiveness of the proposed accommodation in enabling the employee to perform the functions of his/her position or to enjoy other benefits of employment.
o  Evaluate whether the proposed accommodation would affect other employees' conditions of employment or would require a variance from the Collective Bargaining Agreement or changes to agency policy. If so, it may require negotiation with the union. You are encouraged to consult with OM's Labor Relations Team or Regional Human Resources Services Representative for assistance.
o  Consider how disruptive the accommodation would be, its effect on the overall performance of the work unit, and whether the requested accommodation would create an undue hardship to the Department's operations.
o  If the requested accommodation would create an undue hardship, attempt to find alternative accommodations that would meet the employee's needs. You are encouraged to consult with the Section 504 Coordinator about alternative accommodations.

Consider how the essential functions of the employee's job (determined in Step 2) are affected by the proposed accommodation. Remember that reasonable accommodation must be provided to an otherwise qualified employee with a disability, unless doing so creates an undue hardship for the Department. Cost alone generally does not constitute undue hardship, though fundamental alteration of the nature or operation of the business may.

If union negotiations are required, they may have to occur either before or after you officially inform the employee of your decision, depending on the circumstances. Contact OM's Labor Relations Team or Regional Human Resources Services Representative for assistance.

### CHECKLIST FOR REASONABLE ACCOMMODATION REQUESTS

| 6. Supervisor's Decision Point |
|---|

**After the supervisor and employee complete steps 1-5, the supervisor is now ready to make a decision.**

**i.**      *Does the employee have a disability as defined by law?*

- Does the employee have a physical or mental impairment that, taking into account mitigating measures used by the employee, substantially limits one or more major life activities?
- Note: if the employee has a record of, or is regarded as having a disability, he or she is protected from discrimination on that basis, but is not entitled to a reasonable accommodation unless he or she also currently has a disability as defined above.

Steps 1, 3, and 4 above gave you the information to answer these questions. If the employee has an impairment but is not disabled, refer him/her to other workplace services. Do not use the reasonable accommodation process for employees who do not have a disability as defined by law.

- If the answer is no, deny the request (see 6C).
- If the answer is yes, continue below (*ii*).

**ii.**      *Can the employee perform the essential functions of his or her position, with or without accommodation?*

- If the answer is no, deny the request (see 6C).
- If the answer is yes, continue below.

**iii.**      *Make your decision:*

Once you have determined that the employee is a 'qualified individual with a disability,' decide which of the following three actions is appropriate:
A. Grant the accommodation requested
B. Offer an alternative accommodation
C. Deny the accommodation request

**CHECKLIST FOR REASONABLE ACCOMMODATION REQUESTS**

| **6. SUPERVISOR'S Decision Point - continued** |
|---|

**A.  Granting an accommodation**

If you determine that an employee is a 'qualified individual with a disability' and if you and the employee agree that the requested accommodation or an alternative accommodation is reasonable and effective, then grant the request.  Make sure to identify the expectations of all parties.

o   Notify the employee in writing of your decision to grant the accommodation.
o   If purchases or workplace alterations are needed, set these in motion immediately.
o   Coordinate with other offices in ED as necessary.
o   Establish a timetable for implementation, and follow up until work is complete.

Failure to implement an accommodation is equivalent to not providing one.  Once the accommodation is implemented, check back with the employee periodically to ensure that it remains effective.  The employee also should keep you informed about the effectiveness of the accommodation.

**B.  Offering an alternative accommodation**

If you determine that there is another accommodation that would better serve the Department's legitimate organizational needs and still meet the employee's needs, you can deny the requested accommodation and provide an alternative.  You should always seek input from the employee before making this decision, though his/her agreement is not required.

o   Does the alternative address the barriers that make it difficult for the employee to perform job-related tasks because of the disability?
o   Is the alternative effective in meeting the employee's needs?
o   Does the alternative allow the employee to perform the functions of his/her job and/or enjoy other benefits of employment at ED?
o   Is your choice of an alternative based on the sound medical judgment of professionals, and/or expert knowledge of accommodation technology?

Once you have made this decision, notify the employee in writing, and follow the steps for granting an accommodation.  If the employee does not accept the alternative accommodation, you may consult with the Section 504 Coordinator, Employee Relations Team or Regional Human Resources Services Representative as appropriate.

**CHECKLIST FOR REASONABLE ACCOMMODATION REQUESTS**

| 6. SUPERVISOR'S Decision Point - continued |
|---|

**C.  Denying an accommodation**

You may deny an accommodation request if you determine that:

- the employee does not have a disability as defined by law;
- the employee is not a 'qualified individual with a disability' (i.e., because neither the requested accommodation nor any other reasonable accommodation would enable the employee to perform the essential functions of the job); or
- providing the requested accommodation would cause an undue hardship.

The employee does not have to prove that the requested accommodation will not cause an undue hardship.   Rather, the burden of proof is upon the Department to demonstrate that accommodating a qualified individual with a disability would cause undue hardship.

o  In what way does the requested accommodation create an undue hardship for the Department?
o  Does the accommodation fundamentally alter the operation of the office?
o  If cost is a factor, what resources have you considered beyond your immediate office's budget?
o  What alternative accommodations have you considered, and why are they not acceptable or feasible?

Improperly denying an accommodation can expose the Department to legal liability and may be unfair to the employee.   You are strongly encouraged to consult with the Section 504 Coordinator and/or Employee Relations Team or Regional Human Resources Services Representative before denying an accommodation request.

If you deny the request:

o  Notify the employee in writing that you are denying the accommodation request.
o  Detail in writing the reasons for denying the request.
o  Inform the employee of his/her right to request that the second-line supervisor review the decision or to consult a counselor in the IDR Center.

## G.    REASONABLE ACCOMMODATION REQUEST FORM

### Reasonable Accommodation Request Form – Page 1

This form is designed to assist employees in requesting reasonable accommodation. The employee fills out the first three pages, and the supervisor uses the remaining three pages to track his/her handling of the request.

***Instructions:*** This form should be completed whenever an employee or applicant requests an accommodation, or it is apparent that a reasonable accommodation may enable an individual with a disability to perform the essential duties of a position or to participate in the employment process. Copies of the completed form should be forwarded to the Office of Management's Section 504/Disability Access Resources staff, Room 2E234. If you require any assistance in completing this form, call 202-401-8545 (v), or 202-260-8874 (TTY)

### Individual Requesting/Needing Reasonable Accommodation (Type or Print)

| |
|---|
| **Employee name:** |
| **Position title and grade:** |
| **Principal Office:** |
| **Phone/TTY number:** |
| **Fax number:** |
| **Home phone (optional):** |
| **Building and room location:** |
| **Supervisor's name:** |
| **Phone/TTY number:** |
| **Building and room location:** |

**Reasonable Accommodation Request Form – Page 2**

***Note to employee or applicant:*** *A disability is defined by law as "a physical or mental impairment that substantially limits one or more major life activities." The information you provide here will help the Department of Education evaluate whether or not your impairment meets this legal definition of disability. If the answers you provide below are not sufficient to determine this, you may be asked to provide more information, including medical or other documentation if necessary.*

*Is this a request for a new accommodation, or is it a change/upgrade to a previous accommodation? If it is a simple upgrade or replacement of an existing accommodation, you do not need to re-establish that you have a disability. If the change of accommodation is prompted by a change in your disability, you may need to provide documentation of how your disability has changed and how the change affects your job.*

**THE IMPAIRMENT**

**What is your impairment? Please explain the functional limitations that your disability or impairment causes (e.g., cannot hear, difficulty walking, fatigue).**

**How do these limitations affect your ability to perform the essential functions of your job or your ability to enjoy other benefits and privileges of employment?**

**Please attach documentation of your impairment if the limitations it causes or the ways in which it affects your ability to perform your job are not obvious to an observer. Your supervisor may request additional documentation, including medical information, if necessary, to evaluate your request for accommodation.**

**Reasonable Accommodation Request Form – Page 3**

**THE ACCOMMODATION**

**What accommodation are you requesting?  If you are requesting equipment or changes to the work environment, please provide as much information as possible about the exact type of equipment or change to the environment (e.g., provide screen-reading software, widen doors).  If you are requesting a change in the way your job is performed, please be as specific as possible about what type of change you are requesting (e.g., adjust schedule/hours, work at home, trade minor duties with another employee).  If you are not sure what accommodation will help you, please provide as much information as you can about equipment or strategies that have been effective in similar situations.  If you believe that a professional assessment (e.g., for assistive technology, range or motion, seating/positioning, job analysis) may be useful, please state that and describe what aspect of your impairment, work environment, equipment, or job duties would benefit from assessment.**

**How will this accommodation reduce or eliminate the barriers described above?**

**If this is a telecommunications or computer-related accommodation, please contact the Assistive Technology Team to schedule a needs-assessment.  Please go to your Microsoft Outlook e-mail.  From the Inbox, click on Tools, Forms, Choose Form, then open the AT Service Request Form.  Be sure to include your name and phone number on the form. Once a team member completes the assessment, please forward the needs-assessment report to the Section 504 Coordinator.**

**Employee signature**:_____          **Date**:_____

**Supervisor signature**:_____          **Date**:_____

## Privacy Act Statement

We request this information under the authority of 29 USC 791. Furnishing the information on this form is voluntary, but failure to do so may result in the denial of your request for a reasonable accommodation. The purpose of this information is to facilitate timely processing of your application and to determine your eligibility for a reasonable accommodation. The Department may make disclosures pursuant to the routine uses listed in the Employee Medical File System of Records (OPM GOVT-10). Generally, these routine uses permit the following kinds of disclosures. The Department may disclose information that you provide to Federal, state or local agencies in connection with adjudication of claims under retirement, insurance or health benefit programs, violations of laws or regulations, private relief legislation, reporting of communicable diseases, epidemiological research, or compliance with work health and safety laws; to the Department of Justice (DOJ), other Federal agencies, courts, witnesses, or parties in connection with litigation before a court or administrative body; to a Federal agency in connection with employee retention, security clearance, suitability or security investigation, or other statutory, administrative, or investigative purposes; to disclose the results of a drug test pursuant to an order of a court of competent jurisdiction where required to defend against any challenge of any adverse personnel action; to authorized agencies to ensure that privacy and information limitations are enforced or as required by those agencies to carry out their authorized duties; to a Congressional office in response to an inquiry made at the request of the individual who is the subject of the information; to appropriate individuals, agencies or entities in connection with health research, surveys or studies, accreditation reviews, records management and retention, insurance eligibility, or exposure to a health hazard; to a person responsible for the care of an individual when the individual is mentally incompetent or under any other legal disability; to the agency-appointed representative of an employee in connection with an agency-ordered examination; to labor organizations for limited purposes under the records access rules of the Department of Labor's OSHA and subject to the limitations at 29 CFR 1910.20(e)(2)(iii)(B); to a contractor or grantee pursuant to a valid contract, grant or cooperative agreement with the Department. Consult the system notice for further details on the routine uses for the system.

*U.S. Department of Education Reasonable Accommodation Handbook*                    *Page 71*

Reasonable Accommodation Request Form - Response Checklist
# For use of supervisor/person receiving accommodation request:

Employee Name:_____

Supervisor Name:_____ Date request received:_____

*Intake and decision:*

| *Date:* | *Action taken:* |
|---|---|
| _____ | Confirm receipt of request |
| _____ | Request reviewed for completeness of information |
| _____ | Essential functions of employee's job reviewed |
| _____ | Documentation of disability/functional limitations requested if necessary |
| _____ | Determination that employee has disability as defined under law |
| _____ | Evaluation of effectiveness and feasibility of requested accommodation |
| _____ | Decision on accommodation request: grant, provide alternative, or deny? |
| _____ | Written notice to employee of decision |
| _____ | Decision of second-line supervisor (if applicable) |

*Implementing accommodation:*

| *Date:* | *Action taken:* |
|---|---|
| _____ | Equipment purchased |
| _____ | Workplace modifications |
| _____ | Agreement about change in how job is performed |

*Further questions:*

- **Is accommodation permanent or will it need to be reviewed or updated periodically?**
- **If equipment is needed, how will employee/supervisor know when upgrades are available or necessary?**
- **If change to how the job is performed, what conditions would prompt review or re-evaluation?**

-----------------------------------------------------------------------------------------------------------------

For additional information or assistance in completing this form, call the Section 504/Disability Policy Coordinator, Office of Management, Work/Life Programs Team, 202-401-0964 (V), 202-260-8893 (TTY).  Please return copy of completed form to Section 504/Disability Policy, Office of Management-Work/Life Programs Team, Federal Building #6, 400 Maryland Avenue, SW, Room 2E208, Washington, DC  20202.

Upon request, this form is available in alternate formats.  Contact the Section 504/Disability Policy staff to request it.

## Record of Meeting with Individual Requesting a Reasonable Accommodation
### *(optional form for record-keeping purposes)*

A meeting was held on (date) _____to discuss the accommodation request.

Accommodation(s) identified by the individual were: _____

_____

_____

_____

_____

Meeting attended by: _____

_____

_____

-------------------------------------------------------------------------------------------------------

Selection of Accommodation(s)
The following accommodation(s)/modifications(s) have/will take place:

Accommodation/modification: _____

_____

_____

Date of action: _____

Approximate cost of accommodation(s) requested $: _____

## H.      RELEASE OF MEDICAL INFORMATION FORM

**U.S. Department of Education**
**RELEASE OF MEDICAL INFORMATION FORM**


I, _____(print full name), authorize my physician to release the medical records and/or any information pertaining to my medical condition(s) that is needed to address questions related to my request for reasonable accommodation, to my supervisor,_____ _____(print full name); to the Office of Management, Human Resources Services' Employee Relations Team; Regional Human Resources Services Representative; to the Office of Management, Work/Life Programs Team's Section 504/Disability Policy; to the Office of the General Counsel; to other appropriate management officials with a need to know; and/or to the Department's Medical Review Officer (MRO).

I understand that this release also authorizes my physician to orally discuss these matters with the above officials as necessary in addition to providing a written record.  I understand that the MRO may review the information, and that this release authorizes the MRO to provide a summary and evaluation.

I understand that this information is being provided to the Department of Education for it to assess my medical condition and determine whether I have a disability as defined by law and what accommodation, if appropriate, can be made.  The information provided to the officials above is to include the diagnosis, prognosis, relationship between medical condition and requested accommodation, what major life activities are substantially limited, the nature, severity and impact of the limitation, mitigating measures, such as eye glasses and hearing aids, etc., used by the employee and their effect, and any other necessary documentation.



_____
Employee Signature


_____
Date