UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
333 Constitution Avenue, N.W.
Washington, D.C. 20001

---

Susan E. Johnson
5902 Mt. Eagle Drive, # 1601
Alexandria, Virginia 22303

    Plaintiff

        v.                CIVIL ACTION NO. 06-0321 (GK)

Margaret Spellings, Secretary
U.S. Department of Education
400 Maryland Avenue, S.W.
Washington, D.C. 20202

    Defendant

**SUBMISSION IN SUPPORT OF PLAINTIFF'S TRUTHFULNESS
ON APPLICATION TO WAIVE PREPAYMENT OF FEE**

**Background**

    Section 107(a) of the Rehabilitation Act of 1973, as amended (42 U.S.C. §12117(a)), authorizes persons alleging discrimination on the basis of disability in violation of such Act to have the powers, remedies, and procedures available under section 706 of the Civil Rights of 1964, as amended (42 U.S.C. §2000e-5(f)(1)), which authorizes persons whose claims to be aggrieved have been dismissed by the Equal Employment Opportunity Commission (EEOC) to bring civil actions in the appropriate United States district courts.  As a Federal employee, Susan E. Johnson's claim was submitted to the EEOC under section 501 of the Rehabilitation Act of 1973, as amended (29 U.S.C. §791 et seq.) which prohibits Federal agencies from discriminating

1

in employment against individuals with disabilities. On November 10, 2005, the EEOC dismissed the Plaintiff's appeal in the case of *Susan E. Johnson, Complainant, v. Department of Education, Agency*; and provided the notice required by the law and regulation that the Plaintiff is entitled to file a civil action in United States District Court within 90 days of the receipt date of the notice of the Commission's final decision *(EEOC Appeal No. 01A45737)*.

This court's jurisdiction to take this civil action was derived from the right given to the Plaintiff to file a civil action directly in the United States District Court upon the EEOC's denial of her discrimination complaint.

In denying the Plaintiff's appeal, the EEOC provided her with a right-to-sue notice, which also provided the following required notice:

"RIGHT TO REQUEST COUNSEL
"If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without the prepayment of fees, costs, or other security. See Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c)."

Such 42 U.S.C. 2000e provides:

"Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security."

In her "Application to Proceed Without Prepayment of Fees and Affidavit", the Plaintiff, in support of her request to proceed without prepayment of fees or costs, averred that "I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint".

The inability to "pay the costs of these proceedings" refers first -- in the language of EEOC's right-to-sue notice of, and under the heading of, the right to request counsel -- to affording the costs of a private attorney, and additionally to costs and fees.  This is the crucial criterion.  With her own limited resources, she could not afford both a private attorney and additional costs of proceedings -- so she met the criterion set forth in the legal framework.

Accordingly, the Plaintiff's declaration in her application is consistent with the legal framework combining relief from both private attorney's costs (through the authorization of this pro bono attorney) as well as from prepayment of court fees under 42 U.S.C. 2000e.

Accordingly, together with the submission of the Plaintiff's Complaint and her application to request waiver of prepayment of the filing fee, a "Certificate of Representation as Counsel for Plaintiff Pro Bono Without Compensation" was certified and signed by the undersigned counsel, Richard E. Johnson, in order to provide such representation pursuant to Rule LCvR 83.2g of the Local Civil Rules of the United States District Court for the District of Columbia.  (Certificate at page 7 of the docketed Complaint filed at the initiation of this civil action.)

The Plaintiff's right to request waiver of the prepayment of fees was based on the antidiscrimination statute, not just on 28 U.S.C. §1915, which sets forth the general procedures for such requests in civil and criminal (in detail, prisoners) cases.

The Plaintiff understood that she could, at some time, in the course of the proceedings before conclusion, be required to pay fees as part of the costs of proceedings. That was clearly stated in her response to questions in the hearing on September 4.

**Question on Pensions and Annuities**

The only question about pensions and annuities, in the application form requesting waiver of prepayment of fees, occurred in Question #3, which asked:

> "3. In the past 12 twelve months, have you received any money from any of the following sources?
> "c. Pensions, annuities, or life insurance payments".

The Plaintiff truly and correctly answered "No".

**Plaintiff's Retirement Disability Benefits Under FERS**

Although the Plaintiff had applied for Federal Employees Retirement System (FERS) retirement disability benefits just prior to the one-year deadline after her separation from employment by the Department of Education, there had been no action on her application for FERS retirement disability benefits when she filed and submitted the fee waiver application. In fact, the Office of Personnel Management (OPM) initially denied her application ten days after this civil action and waiver request were filed. That initial denial was subsequently appealed, and then reversed by OPM, many months thereafter. Thus, there had been no money received from FERS retirement disability benefits or any pensions (she was denied eligibility for Social Security disability benefits) at the time when she filed this civil action and the waiver application.

4

**Plaintiff's TSP Rolled Over to T. Rowe Price IRA**

The Thrift Savings Plan (TSP) sum to which she was entitled after her termination by the Department of Education was rolled over by the Plaintiff into an Individual Retirement Account (IRA) CD at Chevy Chase Bank and then rolled over into an IRA investment account at T. Rowe Price.

The Plaintiff's IRA investments cannot be accessed until the Plaintiff reaches the age of 70 years old. Obviously, payments of money were not received in the 12 months preceding the filing of the fee waiver application, in the terms of the question asked whether in "the past 12 twelve months, have you received any money" from the specified sources.

**Question on Ownership of Real Estate or Financial Instruments**

Question #5 on the waiver application form asked, as of the time when the Plaintiff filed the fee waiver application: "Do you own any real estate, stocks, bonds, securities, or other financial instruments, automobiles, or any other thing of value?"

Aside from her 1992 Saturn automobile which she specifically described in her response to the question, the Plaintiff had no knowledge that she had any ownership of real estate, stocks, bonds, securities, or other financial instruments.

The Plaintiff understood the question as to whether she owned those specified items of

5

property to be asking whether she owned any such property as an individual. The application form did not ask a single question about property owned by her husband, her father or mother, or anyone else.

Indeed she answered the question as to what she "owns" as ordinary people answer the question normally.

With a Google Internet search for the term "ownership", the top item retrieved is the following definition: "Ownership is the state or fact of exclusive rights and control over property" (linked to Wikipedia).

The Plaintiff certainly did not have "exclusive rights and control" over any such property other than her automobile.

Her answer to the question was true to the best of her knowledge.

**Real Estate - Condominium Residence**

Concerning the question asking whether the Plaintiff owned real estate, the condominium occupied by the Plaintiff and her husband was bought by her husband. She paid nothing from her own money at the time of its purchase, and did not use any of her money to make any of the mortgage payments. Her husband's funds made all of those payments and also paid all of the taxes on the property.

After purchase, the deed and title were originally in the name of the Plaintiff's husband solely. Her husband subsequently determined to establish the title to the condominium in both his name and the name of his wife, the Plaintiff, as joint tenants. In the event of her husband's death, the passing of the property to the Plaintiff as the surviving spouse would thereby be facilitated, avoiding the necessity of involving it in the probate process.

The application form signed by the Plaintiff asked no question whether she was a joint tenant of any real property. In fact, she did not know that she was a joint tenant or was named on the title of any real property.

The Plaintiff had no knowledge that her name was nominally on the deed as a joint tenant, until after the issue was raised during the deposition.

**Plaintiff's Husband's Investment Account with T. Rowe Price**

The investment account at T. Rowe Price, referenced by the Plaintiff in the hearing on September 4 and the deposition, was an account under the sole exclusive control of her husband.

The "sweep" money funds element of the account was the single point for directing (or sweeping) funds into various types of investments. These were the investments that the Plaintiff referred to in the court's hearing on September 4.

The Plaintiff's husband's arrangements for establishing this T. Rowe Price investment account constituted his desired estate planning, to assure upon his death that his financial assets

7

would go to the Plaintiff.

As stated by the Plaintiff in the hearing on September 4, her husband has an adult daughter by his previous marriage.

The Plaintiff's husband arranged this account at T. Rowe Price so as to avoid, after his death, the risk of a challenge in the probate of his estate, which might happen if he left the disposition of these funds to a will. While it would have been hoped that there would be no such challenge if a will were executed, it was only realistic to anticipate a potential challenge to any such will in the probate process from the Plaintiff's husband's daughter.

As the information before this court in the record in this case shows, while she had substantial periods of productive work in her professional career, the Plaintiff also has suffered from mental illnesses of periodic episodes of major depression and of chronic anxiety disorder (with several major life-threatening suicidal episodes) over the years since college.

In view of the Plaintiff's disabilities, her husband's primary concern in making the investment arrangements was to reduce, to the maximum possible extent, the kinds of tensions and strains that his death could evoke by passing resources on to his wife immediately without compelling her to confront unnecessary probate challenges and delays which could be devastating to the Plaintiff.

The incontrovertible evidence in this case shows that there was a valid oral contractual

agreement that the Plaintiff shall not access T. Rowe Price investment account until the death of her husband,  It is well-established law that oral agreements are as valid as written contracts.

This agreement was testified to by the Plaintiff in her response to questions at the deposition and in the court's hearing on September 4, and is supported by the accompanying sworn statement of Paul Valentic, her husband.

**<u>Conclusion</u>**

There is no doubt that the information provided by the Plaintiff in this proceeding is true and correct to the best of her knowledge and intent.

Respectively submitted,


\_\_\_\_\_s/_____
Richard E. Johnson
District of Columbia Bar Member No. 86686
3522 Majestic Lane
Bowie, Maryland 20715-1604
Phone and fax number: 301-262-9658
E-mail: richard-johnson@verizon.net

Counsel for the Plaintiff

September 12, 2008