## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SUSAN E. JOHNSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action 06-321 (GK)** |
| | : | |
| **MARGARET SPELLINGS,** | : | |
| **Secretary of Education,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

Plaintiff filed this Complaint on February 23, 2006 against the Secretary of the Department of Education, alleging that she was discriminated against on the basis of disability when she was denied a career ladder promotion to GS-12, was required to obtain approval of work credit hours, and was not approved for 72 hours of leave without pay in order to take a vacation to the Galapagos Islands with her husband.  Plaintiff charges that such conduct violated the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*.  Plaintiff also alleges that she was retaliated against for her participation in protected activity and that she was subject to a hostile work environment on the basis of her disability.  Defendant has filed a Motion for Summary Judgment.  Upon consideration of the Motion, Plaintiff's Opposition, Defendant's Reply, the evidentiary hearing held on September 4, 2008, and the applicable case law, the Court concludes that the Motion should be **granted**.

Defendant has argued in her Memorandum in Support of Summary Judgment that Plaintiff's Complaint should be dismissed because she gave false and misleading statements in her affidavit in support of her application for *in forma pauperis* status.  The Government allegations are very serious, as well as unusual, and the remedy suggested by Defendant is draconian.

In order to assess the validity of the Government's claims, the Court held an evidentiary hearing on September 4, 2008 at which Ms. Johnson was the only witness. The Government called no witnesses. Ms. Johnson is an accountant who began her employment with the Department of Education on October 18, 1993 as a GS-5 Secretary in the Office of the Chief Financial Officer. In this capacity, she performed clerical duties.

On May 12, 1996, Plaintiff applied for and received a promotion to a GS-7 Accountant position within the Office of the Chief Financial Officer. This was a career ladder position with a promotion potential to the GS-12 level. On July 5, 1998, Plaintiff was promoted to a GS-9 level after more than two years as a GS-7. On November 19, 2000, Plaintiff received another career ladder promotion to a GS-11 level after more than two years as a GS-9. She was separated from the Department on August 6, 2004.

Plaintiff studied accounting in college and received a Bachelor of Science degree with a major in business and a concentration in accounting. Her duties in the Office of the Chief Financial officer involved working on budgets and financial statements. The Plaintiff's husband is a GS-15 accountant and has worked for the Department of Education for a substantial period of time. Neither the Plaintiff nor her husband are certified public accountants.

Prior to filing her complaint in this lawsuit, Plaintiff applied for *in forma pauperis* status. At that time, and continuing to the present, Plaintiff has been represented by counsel.[1] On February

---

[1] Plaintiff's counsel is her father. The Court has held at least two bench conferences with Mr. Johnson. During those conferences, the Court warned Mr. Johnson about the dangers and disadvantages of representing a family member, especially one as close as a daughter, and especially in a lawsuit of this nature where plaintiffs often tend to feel very emotionally involved in their claims. Mr. Johnson has indicated that he will handle the case in a totally professional manner and that his client wishes to have him represent her.

23, 2006, Plaintiff obtained permission from the Court to proceed without prepayment of costs as allowed under 28 U.S.C. § 1915.  In the affidavit of financial status required to obtain *in forma pauperis* status, Plaintiff declared the only "real estate, stocks, bonds, securities, other financial investments, automobiles, or any other thing of value" she owned was a 1992 Saturn automobile, which she valued at approximately $300.  This answer was not accurate.

In fact, at her deposition, Plaintiff admitted that she maintained two different investment accounts at T. Rowe Price.  She and her husband owned a joint non-retirement account which, at the time of her deposition, was valued at approximately $170,000.  In addition, she admitted at her deposition that she also owned a retirement account at T. Rowe Price that she opened in December 2005.  That account, at the time of her deposition, was valued at approximately $27,000.

Plaintiff testified in open court that she and her husband had a verbal agreement that she would have no access to any of the proceeds of these accounts until after  his death.  She also claimed that she did not understand that she had a legal right to these accounts which were joint tenancy accounts.  She admitted that she had absolutely no evidence, written or otherwise, to demonstrate the existence of such a "verbal agreement."  Nor did her husband (or anyone else) testify to corroborate her story.  As to her own retirement account, which she opened with a rollover from her Government TSP account, she explained that she did not list that account in her affidavit because her understanding was that she could not withdraw the money out of the account.  Nor did she list on her affidavit that she and her husband owned their condominium home as joint tenants.  She claims that it was only after the deposition that she found out that she was listed on the deed of this property.  That condominium has an assessed value of $366,060.

The Court finds the Plaintiff's testimony patently incredible.  She is an accountant.  She has worked as an accountant for a number of years.  She majored in business administration with a concentration in accounting in college.  She has received three promotions for the accounting work she has done at the Department of Education.  It is just not credible that she would not understand and/or know that she had joint tenancy rights in these very substantial assets.  On the witness stand, she was vague and evasive in her answers.  Indeed, it was very difficult to obtain a straight answer to the questions asked of her.  She first denied that she was trying to avoid paying the filing fee, but later admitted that was exactly what she was doing.  While it is understandable that people may not be absolutely accurate in the amounts they list on the affidavit in support of the application for *in forma pauperis* status; it is hard to believe that an accountant, represented by counsel, whose husband is a GS-15 accountant, can underestimate her assets by more than $562,000.[2]

The *in forma pauperis* status reads as follows:

> Notwithstanding any filing fee or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue.

28 U.S.C. § 1915(e)(2)(A).

While it is extremely difficult to understand why the Plaintiff would have misrepresented her assets in order to avoid paying a modest $250 filing fee, the fact of the matter is that is exactly what she did.  What is more, it is clear that her standard of living is nowhere near the Government's established poverty level.

---

[2]   The investment accounts themselves (retirement and non-retirement) totaled, at the time, approximately $197,000, the car in question was valued at $300, and the parties jointly own a condominium in Alexandria, Virginia assessed at $366,060.

The application to proceed *in forma pauperis* requires that an applicant answer a series of questions and declare, under penalty of perjury, that the answers to those questions are true and correct. In this case, as the Court has already explained, Plaintiff did not truthfully answer question 5, which asks, "Do you own any real estate, stocks, bonds, securities, other financial instrument, automobile, or any other thing of value?" In response, Plaintiff listed only her 1992 Saturn automobile, which she valued at approximately $300. As noted, *supra*, she failed to list the condominium in which she held a joint tenancy with her husband, the T. Rowe Price investment account of which she was joint owner with her husband, and a retirement account at T. Rowe Price which she owned in her own name. See Mathis v. New York Life Insurance Co., 133 F.3d 546, 547-48 (7th Cir. 1998) (plaintiff failed to disclose that he owned a home with approximately $14,000 of equity); Romesburg v. Trickey, 908 F.2d 258, 259-60 (8th Cir. 1990) (plaintiff failed to disclose that he owned at least four apparently unencumbered lots); Dawson v. Lennon, 797 F.2d 934, 935-36 (11th Cir. 1986) (*per curiam*) (plaintiff failed to inform the court of previous judicial determinations that he had substantial assets); Thompson v. Carlson, 705 F.2d 868, 869 (6th Cir. 1983) (*per curiam*); see also Harris v. Cuyler, 664 F.2d 388, 389-91 (3d Cir. 1981). These omissions were deliberate, intentional and conscious actions.

The *in forma pauperis* statute, 28 U.S.C. § 1915e(2)(A), states that "the Court shall dismiss the case at any time if the Court determines that the allegation of poverty is untrue." This Court has determined that the allegation of poverty is untrue, and, therefore, the Complaint must be **dismissed**.

For these reasons, the Motion to Dismiss must be **granted**.[3]


October 1, 2008                                    /s/_____
                                                   Gladys Kessler
                                                   United States District Judge

---

[3]         It is particularly disturbing that Plaintiff was represented by counsel when she filed her Complaint.  What is of even more concern, is Plaintiff's testimony that her counsel helped her fill out the affidavit in support of her application for *in forma pauperis* status.